## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

---

THE TERMINIX INTERNATIONAL
COMPANY, L.P. and TERMINIX
INTERNATIONAL, INC.,

       **Plaintiffs,**

**vs.**

BROAD AND CASSEL, P.A. and
MICHAEL P. BENNETT, Individually,

       **Defendants.**

**00-6108** CIV-ZLOCH

No. _____

NIGHT BOX
FILED

JAN 2 1 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

---

### COMPLAINT and DEMAND FOR JURY TRIAL

---

The Plaintiffs, The Terminix International Company, L.P. and Terminix International, Inc. (collectively "Terminix"), file this Complaint against Broad and Cassel, P.A. and Michael P. Bennett, Individually, and for their cause of action state as follows.

1.    The Terminix International Company, L.P. is a Delaware limited partnership that is authorized to conduct business in the State of Tennessee and which maintains its executive offices at 860 Ridgelake Blvd., Memphis, Tennessee 38120.

2.    Terminix International, Inc. is a Delaware corporation that is authorized to conduct business in the State of Tennessee and which maintains its executive offices at 860 Ridgelake Blvd., Memphis, Tennessee 38120. Terminix International, Inc. is the general partner of The Terminix International Company, L.P.

3.      Upon information and belief, Broad and Cassel, P.A. ("Broad and Cassel") is a Florida law firm, currently organized as a professional services corporation, with offices located in Boca Raton, Fort Lauderdale, Miami, Orlando, Tallahassee, Tampa, and West Palm Beach, Florida.  Upon information and belief, the main office of Broad and Cassel is located at 390 N. Orange Ave., Suite 1100, Orlando, Florida 32801.

4.      Michael P. Bennett ("Bennett") is an attorney licensed and practicing within the State of Florida.  Bennett practiced with the Florida law firm Kubicki Draper from in or about January of 1994 until June of 1995 at which time Bennett began practicing with Broad and Cassel, where he is currently employed.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

6.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## FACTS

7.      On November 24, 1992, Benedicto San Pedro and Nancy San Pedro ("the San Pedros") filed suit against Terminix in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, No. 92-30589 ("State court action") alleging various claims relating to termite damage in their home located at 485 Glennbrook Drive, Lantana, Florida 33462.

8.      On February 16, 1995, the San Pedros voluntarily dismissed the State court action.

2

9.  On April 5, 1995, the San Pedros filed a virtually identical law suit against Terminix in the United States District Court for the Southern District of Florida, No. 95-8204-CIV (hereinafter "San Pedros litigation" or "San Pedros lawsuit").

10. On April 24, 1995, Terminix engaged Defendant Bennett and the Florida law firm, Kubicki Draper, to represent them and defend all of the claims filed against them in the San Pedros litigation.

11. In or about June of 1995, Defendant Bennett left Kubicki Draper and became employed by Defendant Broad and Cassel. When Defendant Bennett changed firms, Terminix continued its employment of Bennett, but dismissed Kubicki Draper and hired Broad and Cassel.

12. From June of 1995 until August of 1996, Terminix employed Defendants Bennett and Broad and Cassel to represent them and defend all of the claims filed against them in the San Pedros litigation and Terminix and the Defendants were engaged in an attorney-client relationship.

13. At all times relevant hereto, Defendant Broad and Cassel was a partnership and Defendant Bennett was either an employee, partner or managing agent of Broad and Cassel. (Defendants Bennett and Broad and Cassel shall hereinafter be referred to collectively as "Bennett" unless otherwise specified.)

14. On May 12, 1995, the San Pedros propounded their First Request for Production of Documents, First Set of Interrogatories to Defendant and First Set of Admissions to Defendant ("First Discovery"), and on May 22, 1995, the San Pedros served

3

a Second Set of Interrogatories to Defendant (collectively "initial discovery"), all of which were served on Bennett.

15.     Without having informed Terminix about the initial discovery, Bennett, just prior to the date responses to the First Discovery were due, on June 12, 1995, sought and received from opposing counsel a three week extension of time within which to respond to the initial discovery.

16.     By letter dated June 15, 1995, Bennett informed Terminix for the first time of the initial discovery stating that he had just "recently received" the discovery and informing Terminix the responses were due by July 3, 1995.

17.     Pursuant to Bennett's agreement with opposing counsel, Terminix's responses to the initial discovery were due on July 5, 1995.  On that same date, Bennett filed in the night box a motion for extension of time requesting that the court grant Terminix a further extension of time until July 26, 1995, which extension was granted by a court order dated July 14, 1995.

18.     Again on the date the discovery was due, Bennett on July 26, 1995 filed in the night box another motion for extension of time within which to respond to the discovery.  By order dated August 10, 1995 the court granted Terminix until September 1, 1995 within which to file its responses.

19.     On or about September 1, 1995, Bennett served responses to the San Pedros' initial discovery on behalf of Terminix.

20.     On October 3, 1995, the San Pedros filed Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First Request for Production of Documents ("First

4

Motion to Compel") seeking to compel Terminix to respond further to the First Request for Production of Documents ("First Requests"), filed on May 12, 1995, alleging that the September 1, 1995 responses were deficient.

21.    Bennett did not inform Terminix that plaintiffs had filed the First Motion to Compel. Instead, without Terminix's knowledge or approval, Bennett sought and received seven (7) extensions of time to file a response to the First Motion to Compel. The last extension granted allowed Bennett until January 21, 1996 to respond.

22.    Despite having received seven (7) extensions of time, Bennett failed to respond to said First Motion to Compel by January 21, 1996 and in fact, never filed a response to the Motion. Moreover, Bennett never informed Terminix about the Motion.

23.    Meanwhile, on October 5, 1995, the San Pedros filed a Motion for Leave to File Amend Complaint ("Motion to Amend"), which attached as an exhibit a proposed First Amended Complaint. The San Pedros sought to amend their Complaint to add allegations that Terminix engaged in a "nation wide scheme to defraud" its customers, which allegations were unfounded and irrelevant to the Plaintiffs' case.

24.    Approximately 14 days later, on November 3, 1995, Bennett notified Terminix for the first time of the proposed First Amended Complaint. In the letter transmitting a copy of the proposed Amended Complaint Bennett told Terminix: "Obviously, we will oppose the amendment."

25.    Without Terminix's knowledge or approval, Bennett sought and received seven (7) extensions of time to file a response to the Motion to Amend. These extensions of time were sought simultaneously with the extensions of time which Bennett obtained in

5

connection with the First Motion to Compel. The response to the Motion to Amend was also due on January 21, 1996.

26.     Despite having received seven (7) extensions of time, Bennett failed to file a response to the Motion to Amend by January 21, 1996, and in fact, never filed any opposition to the Motion to Amend.

27.     Despite his explicit representation that he would oppose the Motion to Amend, on February 15, 1996, Bennett filed a Motion for Continuance in which he requested a continuance of the case, then set for trial on March 25, 1996, in light of the San Pedros' proposed First Amended Complaint. Without Terminix's knowledge or approval, in paragraph 4 of the Motion Bennett falsely stated "Defendants have reviewed the appropriate case law and determined that Plaintiffs [San Pedros] are entitled to an amendment of their Complaint." In truth and in fact the proposed amendment to the Complaint was without any legal support and could have been successfully opposed by Bennett.

28.     On February 26, 1996, the Court granted Terminix's Motion for Continuance.

29.     On February 9, 1996, the San Pedros served on Terminix a Second Set of Requests for Production of Documents ("Second Requests") by serving the requests on Bennett. The San Pedros represented that the Second Requests sought documents to support the allegations of their proposed First Amended Complaint.

30.     Bennett failed to notify Terminix of or transmit to Terminix a copy of the Second Requests.

6

31.    On March 13, 1996, counsel for the San Pedros wrote Bennett informing him that Terminix's responses to the Second Requests were due and requesting that the responses be forwarded as soon as possible. Bennett failed to respond to this letter.

32.    On March 26, 1996, counsel for the San Pedros again wrote Bennett advising him that the discovery was overdue and requesting responses by Friday, March 29th. Moreover, counsel for the San Pedros stated that if they did not receive responses from Bennett or hear from him by that date, they would file a motion to compel with the court. Again, Bennett failed to respond to this letter.

33.    Despite the fact that the Second Requests sought documents which were neither relevant to the issues in the case nor likely to lead to the discovery of admissible evidence, and were otherwise objectionable, Bennett failed to file any response to the Second Requests on behalf of Terminix.

34.    On or about April 1, 1996, the San Pedros filed a second Motion to Compel Responses to Discovery and Request for Order on Plaintiffs' Motion for Leave to Amend ("Second Motion to Compel"). In the Second Motion to Compel, the San Pedros stated that they had propounded the Second Requests on February 9, 1996, and that despite repeatedly contacting Bennett by telephone and letters, that he had failed to file any responses on behalf of Terminix. The San Pedros requested that the Court enter an order granting them leave to amend their complaint and compelling Terminix to provide all documents responsive to the San Pedros' Second Requests without objection, contending that Terminix's objections had been waived due to its failure to timely respond.

7

35.    On April 3, 1996, the Court entered an Order ("April 3, 1996 Order") granting both the First Motion to Compel and the Motion to Amend by default because of Terminix's failure to respond to either motion.

36.    On April 18, 1996, counsel for the San Pedros wrote Bennett requesting that he produce the documents required by the April 3, 1996 Order within the next two weeks.

37.    On May 3, 1996, counsel for the San Pedros again wrote Bennett stating that despite the April 3, 1996 Order, Bennett had still not produced any of the documents required.  The San Pedros' counsel also informed Bennett that he had not received a response to the Second Requests, nor had he received a response to the Second Motion to Compel.

38.    On May 7, 1996, the San Pedros' counsel again wrote Bennett stating that Bennett had failed to provide the documents which the court had ordered, had failed to respond to the Second Requests, and had failed to respond to the Second Motion to Compel.  The San Pedros' counsel requested that all documents due be provided no later than Friday or he would be forced to file another motion to compel and seek recovery of his fees.

39.    Bennett failed to respond to any of the repeated requests of the San Pedros' counsel, failed to comply with the April 3, 1996 Order, failed to file any response to the Second Requests, and failed to file any response to the Second Motion to Compel.  Moreover, at no time did Bennett inform Terminix of the April 3, 1996 Order or the Second Motion to Compel.

8

40.     On May 10, 1996, the San Pedros filed a Motion to Compel Defendant's Compliance with Court Order and Production of Documents pursuant to Plaintiffs' Second Request to Produce ("Third Motion to Compel") and requested that the Court compel Terminix to comply with the April 3, 1996 Order, grant their Second Motion to Compel by default, and require Terminix to produce all documents responsive to the First and Second Requests within 10 days at Terminix's expense.

41.     On May 31, 1996, the date Terminix's response to the Third Motion to Compel was due, instead of responding Bennett moved for an extension of time to respond until and including June 10, 1996.  On June 6, 1996, the Court granted the Motion for Enlargement of Time.

42.     On June 10, 1996, the date Bennett's extension expired, Bennett filed a Second Motion for Enlargement of Time and requested through and including June 24, 1996 to respond to the Third Motion to Compel, which the Court granted on June 12, 1996.

43.     On June 27, 1996, three days after Bennett's second extension had expired, Bennett filed a Third Motion for Enlargement of Time which was granted by the Court on June 28, 1996, and gave Terminix an extension through and including July 8, 1996.

44.     Again, waiting until his extension had expired, on July 9, 1996, Bennett filed a Fourth Motion for Enlargement of Time, which was denied by the Court on or about July 12, 1996.

45.     At no time did Bennett inform Terminix of the Third Motion to Compel, nor was Terminix notified about nor did they approve of the four requests for extensions of time to respond to that motion.

9

46.    Meanwhile, on June 6, 1996, the Court entered an order granting by default Plaintiffs' Third Motion to Compel ("June 6, 1996 Order").

47.    On July 2, 1996, the San Pedros filed a Motion for Sanctions against Terminix, requesting that the Court enter a default judgment against Terminix and require Terminix to pay the San Pedros' costs and attorneys' fees expended in filing the various motions to compel. The San Pedros' motion for sanctions was based upon Bennett's failure to respond to the First Motion to Compel; Bennett's failure to comply with the April 3, 1996 Order; Bennett's failure to respond to the Second Requests, the Second Motion to Compel and the Third Motion to Compel; and Bennett's failure to comply with the June 6, 1996 Order contending that the repeated failure to respond to discovery or comply with Court orders was wilful and in bad faith.

48.    On July 12, 1996, the Court held a Scheduling Conference at which time the Court heard argument on Plaintiffs' Motion for Sanctions and their pending motions to compel. During the course of that hearing the Court stated in open Court that it found that Bennett had acted in bad faith in delaying discovery in this matter. It granted Plaintiffs' motions to compel, and it warned that it would not tolerate any such conduct in the future.

49.    The July 12, 1996 Scheduling Conference resulted in a written order dated July 16, 1996 ("July 16, 1996 Order"). The July 16, 1996 Order stated: "As stated by this Court at the scheduling conference, the Court's patience with regard to granting extensions of time to defendant has been exhausted. Accordingly, defendant's pending motion for extension of time is **DENIED**, and plaintiff's pending motions to compel are **GRANTED**. Defendant is accordingly **ORDERED** to fulfil its discovery obligations within thirty (30) days

10

from the date of this order's entry.  Failure to do so will result in the entry of a default."  The July 16, 1996 Order also denied Plaintiffs' Motion for Sanctions "without prejudice to renew the motion should the present order not be complied with."

50.    To comply with the July 16, 1996 Order, Bennett, on behalf of Terminix, was required to produce all documents requested by the First Requests and Second Requests on or before August 15, 1996.

51.    Bennett knew that it would be virtually impossible for Terminix to produce all the requested documents within the thirty days given the extensive and broad nature of the document requests.  For instance, Terminix was being ordered to produce a list of the names, last known addresses and phone numbers of both its present employees and past employees for the last ten years.  Terminix provides pest control services throughout the United States, and in 1996 had in excess of 7,000 employees and 1,300,000 customers. Assembling the requested information would have taken an enormous amount of time. Similarly, Terminix was to produce documents "relating to the finances of [Terminix] and related entities" for the past ten years, a request conceivably calling for every document ever generated by Terminix.

52.    Despite the Court's statement that failure of Terminix to comply <u>will</u> result in the entry of default, and despite Bennett's knowledge that timely responses would require a hurculean effort on Terminix's part, Bennett failed to provide Terminix with a copy of the July 16, 1996 Order, and did not even inform Terminix that they had been ordered to produce documents until four business days before the production was due.

11

53.    Bennett first notified Terminix that they were required to produce documents at 4:06 p.m. on Friday, August 9, 1996, when Bennett faxed a letter to Elizabeth G. Rudolph, an attorney for Terminix, advising her that "the Court, at a recent scheduling conference, heard argument on plaintiff's first and second requests for production and is requiring production of the documents outlined in the attachments by no later than August 15, 1996." (Emphasis added.)  Bennett intentionally withheld from Terminix information relating to the true status of the case, including the Court's previous April 3, 1996 and June 6, 1996 Orders requiring Terminix to comply with production of documents, and the three separate motions to compel filed by the Plaintiffs.  Moreover, although the July 16, 1996 Order specifically warned that failure to comply "will result in entry of default," Bennett merely informed Terminix that "the court has indicated that the failure to comply with plaintiffs' discovery requests may result in a default." (Emphasis added.)  Although the massive discovery was due by the following Thursday, Bennett concluded his letter by stating he would contact Terminix "early next week to discuss this in greater detail."

54.    Ms. Rudolph did not receive Bennett's August 9, 1996 fax until Monday morning, August 12, 1996.  The receipt of Mr. Bennett's fax was the first knowledge that anyone at Terminix had that the plaintiffs had even served their Second Requests.

55.    At 8:18 a.m. on Monday, August 12, 1996, immediately upon reviewing Bennett's late Friday afternoon fax, Ms. Rudolph faxed Bennett requesting that he identify the date of the "recent" scheduling conference, and further requesting that he call Ms. Rudolph immediately.

12

56.    At 4:38 p.m. on Monday, August 12, 1996, Ms. Rudolph received a fax from "Diane Mattson, Secretary to Michael Bennett," which stated: "Michael Bennett is on vacation this week.  I am his new secretary and am unfamiliar with the details of the Terminix v. San Pedro case.  The letter was faxed and mailed on Friday, just before Michael left for vacation. I did speak to him via computer this morning to ask to determine which case the letter was pertaining to.  As you may know, I phoned your secretary with this information. I will try and reach Michael via the computer again and ask him about the 'scheduling conference' pursuant to your faxed request."

57.    Terminix did not receive a copy of the July 16, 1996 Order until August 15, 1996, the date production was due.  The July 16, 1996 Order was only sent by Bennett to Terminix after Terminix specifically requested a copy of the Order.

58.    On August 14, 1996, William B. Mallory ("Bart Mallory"), General Counsel for Terminix, fired Bennett as the attorney representing Terminix in the San Pedros lawsuit, and instructed Bennett to forward his entire file on the San Pedros litigation to James M. Nicholas, a Florida attorney.

59.    On August 15, 1996, Bart Mallory faxed Bennett confirming his instructions that he was to forward his entire file "ASAP" to Mr. Nicholas.

60.    On August 15, 1996, James M. Nicholas filed a Notice of Appearance on behalf of Terminix in the San Pedros litigation.

61.    On August 15, 1996, James M. Nicholas and Bennett filed a Stipulation for Substitution of Counsel pursuant to which James M. Nicholas was substituted as counsel of record for Terminix in the San Pedros lawsuit.

13

62.    On August 15, 1996, Terminix, through its new counsel, James M. Nicholas, filed a Petition for Rehearing on the July 16, 1996 Order ("Petition for Rehearing").

63.    On August 17, 1996, the San Pedros filed an Emergency Motion for Entry of Default, requesting that the Court enter a default judgment against Terminix because Terminix had failed to comply with the July 16, 1996 Order.

64.    By August 22, 1996, more than a week after he had requested that Bennett send the entire San Pedros litigation file to Terminix's new counsel, Bennett had failed to do so.  As a result, Terminix was unable to prepare viable responses to the various motions filed by the San Pedros.

65.    On August 22, 1996, Bart Mallory faxed Bennett advising him of the difficulties created by his failure to provide the San Pedros litigation file to Terminix's new counsel and demanding that the file be turned over immediately.

66.    On August 23, 1996, Bart Mallory faxed the managing partner at Broad and Cassel advising that his several requests to Bennett to turn over the San Pedros litigation file had not yet been complied with.  Bart Mallory stated: "Your firm's failure to turn over the file as requested of Mr. Bennett by me on August 14 and then again on August 15 and August 22 seriously jeopardizes the ability of our counsel to defend this matter.  We once again demand that your complete file in this matter be delivered to Mr. Nicholas."

67.    On August 29, 1996, the Court denied Terminix's Petition for Rehearing and ordered Terminix to comply with the July 16, 1996 Order within ten (10) days (6 business days) ("August 29, 1996 Order").  The August 29, 1996 Order stated in part:

14

> At that time, [the July 12, 1996 scheduling conference] the Court stated in open Court that it found that counsel for Defendants [Bennett] had acted in bad faith in delaying discovery in this matter, it granted Plaintiff's motion to compel compliance with this Court's earlier Order, and it warned that it would not tolerate any such conduct in the future. It is almost beyond belief that Defendants have *still* not complied with this Court's Orders, but instead have the chutzpa to seek reconsideration. It appears that Defendants have new counsel in this case. While the Court hopes that the proceedings in this matter will improve as a result, it *will not* allow a change in counsel to excuse Defendants' prior transgressions.

68.     The August 29, 1996 Order expressly provided: "failure to comply with this order shall result in Default being entered against Defendants [Terminix]." Further, this August 29, 1996 Order admonished: "Defendants [Terminix] are put on notice now that they shall be granted *no further extensions of time in this case!*"

69.     Because of Bennett's failure to timely turn over the San Pedros litigation file to Terminix's new counsel and because of his intentional withholding of information from Terminix regarding the true status of the case, including the existence of the Second Requests, the three separate motions to compel filed by the Plaintiffs, and the Court's April 3, 1996, June 6, 1996, July 16, 1996  Orders requiring Terminix to comply with production of documents, it was impossible for Terminix to comply with the August 29, 1996 Order. Nevertheless, Terminix and its new counsel used their best efforts to comply with the August 29, 1996 Order and timely filed the best possible responses to all outstanding discovery on September 6, 1996 ("September 6, 1996 responses").

70.     On September 10, 1996, the San Pedros filed a second Emergency Motion for Entry of Default for Defendant's Failure to Comply with Court Order of August 29, 1996

15

("Second Motion for Default") requesting that the Court enter a default against Terminix, claiming that the September 6, 1996 responses were inadequate.

71.    On October 25, 1996, the San Pedros filed a Request for a Hearing on Plaintiffs' Motion for Extension of Time to Disclose Experts Due to Defendant's failure to Provide Discovery Documents and Renewed Motion for Default ("Third Motion for Default"). In that Motion, the San Pedros again sought a default judgment against Terminix, claiming that Terminix's conduct had prejudiced Plaintiffs' ability to prepare their case for trial.

72.    On November 5, 1996, the Court entered an Order setting Plaintiffs' Second Motion for Default and Third Motion for Default for hearing on December 20, 1996. Pursuant to this Order, a hearing was held on both of Plaintiffs' motions on December 20, 1996.

73.    On February 11, 1997, as a direct and proximate result of Bennett's conduct, the Court granted the Plaintiffs' Second Motion for Default and entered a default judgment against Terminix on all issues of liability in the San Pedros lawsuit.

74.    Faced now with a default judgment on liability, and given the amount of work required to attempt to undo the damage caused by Bennett's conduct, Terminix hired Robert C. Josefsberg to assist James M. Nicholas in the defense of the suit.  Mr. Josefsberg filed a notice of appearance on March 4, 1997.

75.    In an attempt to mitigate the damage caused by Bennett, on May 5, 1997, Terminix filed a Motion for Partial Summary Judgment with Supporting Memorandum of Law requesting that the Court reconsider its order of default or enter an order modifying the order of default contending that the Plaintiffs had failed to state claims in their

16

complaint capable of supporting a default judgment. Alternatively, Terminix asserted that even though the Court had ordered a default judgment on liability, the San Pedros' damages were still limited to those resulting from a breach of contract under the Florida Economic Loss Rule and/or Florida's Restoration Rule.

76.     On January 22, 1998, the Court set aside its previous order of default, entered on February 11, 1997, and instead ordered sanctions against Terminix in the form of reimbursing the San Pedros' attorney his fees for having had to bring the numerous motions to compel. Additionally, the Court granted Terminix's Motion for Partial Summary Judgment pursuant to the Economic Loss Rule and held that the San Pedros were precluded from tort recovery for damages arising from or incidental to the contractual relationship.

77.     Shortly thereafter, Terminix paid the San Pedros' attorney $5,020.00 pursuant to the Court's January 22, 1998 order.

78.     On November 17, 1998, the San Pedros litigation was settled through mediation, and Terminix paid the San Pedros $60,000 in settlement of their claims.

79.     After Bennett was terminated, Terminix paid its new counsel a total of $63,439.27 in attorney's fees for its representation in the San Pedros' litigation.

## COUNT I

### Legal Malpractice

80.     Terminix adopts, incorporates, and reiterates all of the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

17

81.    Terminix entered into an attorney-client relationship, with Bennett and Broad and Cassel in or about June of 1995.

82.    Broad and Cassel is vicariously liable for Bennett's actions under the doctrine of respondeat superior.

83.    In addition to or in the alternative to paragraph 82, Broad and Cassel is directly liable for Bennett's actions by virtue of Bennett's status as a partner or managing agent of Broad and Cassel.

84.    As a result of the attorney-client relationship between Terminix and the Defendants, the Defendants had a duty, expressed and implied, to represent Terminix with that applicable degree of care, skill and diligence possessed and exercised by an attorney in the same or similar circumstances.

85.    Terminix fully relied upon Defendants to represent and defend them with respect to all of the claims asserted in the San Pedros litigation and to represent and defend them consistently and in compliance with all applicable rules, procedures, laws, and Court orders including but not limited to, the Federal Rules of Civil Procedure, the Local Rules of the Southern District of Florida, and the substantive law applicable to the San Pedros' claims.

86.    Defendants failed to assert and pursue appropriate defenses in the San Pedros litigation either by motion or otherwise.

87.    Defendants intentionally failed to keep Terminix apprised of the status of the litigation and misrepresented and intentionally withheld from Terminix information regarding

18

motions to compel filed against Terminix and orders of the Court issued requiring Terminix to comply with discovery.

88.    Defendants failed to represent Terminix with that degree of care, skill and diligence possessed and exercised by an attorney in the same or similar circumstances.

89.    Defendants' conduct was intentional and grossly negligent in that Defendants knew or should have known that Bennett's conduct set forth above would result in damage to Terminix's interests in the San Pedros litigation.

90.    As a proximate result of Defendants' wilful misconduct and/or grossly negligent acts, failures to act, negligent acts, errors and omissions, Terminix was damaged by having to hire new counsel to represent them in the San Pedros litigation to attempt to undo the damage caused by Defendants' wrongful acts, thus incurring extensive attorneys' fees. Also as a proximate result of the Defendants' wilful misconduct, failures to act, negligence, omissions, and errors, Terminix was required to pay fees to the Plaintiffs' lawyer and incurred extensive monetary damages in attempting to properly defend itself in the San Pedros litigation after its position had been severely compromised by Defendants, which ultimately resulted in a settlement of the San Pedros lawsuit for a higher amount than the case was worth, for all of which Defendants are liable.

## COUNT II

### Breach of Fiduciary Duty/Constructive Fraud

91.    Terminix adopts, incorporates, and reiterates all the preceding paragraphs of this complaint as if fully set forth herein verbatim.

19

92.    Terminix entered into an attorney-client relationship, and thus a fiduciary relationship, with Bennett and Broad and Cassel in or about June of 1995.

93.    Broad and Cassel is vicariously liable for Bennett's actions under the doctrine of respondeat superior.

94.    In addition to or in the alternative to paragraph 93, Broad and Cassel is directly liable for Bennett's actions by virtue of Bennett's status as a partner or managing agent of Broad and Cassel.

95.    As a result of the attorney-client and fiduciary relationship between Terminix and the Defendants, the Defendants had fiduciary duties to represent Terminix with the utmost of good faith and with that degree of care, skill and diligence exercised by an attorney in the same or similar circumstances.

96.    Terminix fully relied upon Defendants to represent and defend them with respect to all of the claims asserted in the San Pedros litigation and to represent and defend them consistently and in compliance with all applicable rules, procedures, laws, and Court Orders including but not limited to, the Federal Rules of Civil Procedure, the Local Rules of the Southern District of Florida, and substantive law applicable to the San Pedros' claims.

97.    Terminix fully relied upon Defendants to fully disclose to them at all times the status of the litigation and keep them apprised of its responsibilities with respect to responding to discovery requests and complying with Court Orders.

20

98.    Defendants failed to assert and pursue appropriate defenses in the San Pedros litigation either by motion or otherwise, and thus breached their fiduciary duties owed to Terminix.

99.    Defendants failed to keep Terminix apprised of the status of the litigation and misrepresented and intentionally withheld from Terminix information regarding motions to compel filed against Terminix and orders of the Court issued requiring Terminix to comply with discovery, thereby breaching their fiduciary duties owed to Terminix.

100.    Further, Defendants failed to represent Terminix with that degree of care, skill and diligence possessed and exercised by an attorney in the same or similar circumstances, thus further breaching their fiduciary duties owed to Terminix.

101.    As a proximate result of Defendants' breach of their fiduciary duties, Terminix was damaged by having to hire new counsel to represent them in the San Pedros litigation to attempt to undo the damage caused by Defendants' wrongful acts, thus incurring extensive attorneys' fees.  Also as a proximate result of the Defendants' breach of their fiduciary duties, Terminix was required to pay fees to the Plaintiffs' lawyer and incurred extensive monetary damages in attempting to properly defend itself in the San Pedros litigation after its position had been severely compromised by Defendants, which ultimately resulted in a settlement of the San Pedros lawsuit for a higher amount than the case was worth, for all of which Defendants are liable.

102.    Defendants' breach of their fiduciary duties owed to Terminix set forth above operates as a constructive fraud upon Terminix pursuant to which Terminix was damaged by having to pay Plaintiffs' counsel's fees and by incurring extensive monetary damages

21

in attempting to properly defend itself, which ultimately resulted in the San Pedros lawsuit
being settled for a higher amount than the case was worth, for all of which Defendants are
liable.

## COUNT III

### Breach of Contract

103.    Terminix adopts, incorporates, and reiterates all the preceding paragraphs
as if fully set forth herein verbatim.

104.    Terminix and Bennett and Broad and Cassel entered into a contract through
which the Defendants undertook to represent Terminix in the San Pedros litigation.

105.    Defendants breached that contract with Terminix by failing to perform specific
duties pursuant to the contract, namely (1) the duty to assert and pursue appropriate
defenses, including affirmative defenses, on behalf of Terminix, to the claims made by the
San Pedros; (2) the duty to diligently and timely file discovery responses; (3) the duty to
comply with the Federal Rules of Civil Procedure, the Local Rules of the United States
District Court for the Southern District of Florida, and other applicable laws, rules and
procedures, (4) the duty to comply with court orders; and (5) the duty to keep Terminix
properly advised of the progress of the San Pedros lawsuit.

106.    As a result of Defendants' breach of their contract, Terminix sustained
monetary damages by having to hire new counsel to properly represent them in the San
Pedros litigation to attempt to undo the damage caused by Defendants' wrongful acts, thus
incurring extensive attorneys fees.  Additionally because of Defendants' breach of their
contract, Terminix was required to pay fees to the Plaintiffs' lawyer and incurred extensive

22

monetary damages in attempting to properly defend itself in the San Pedros litigation after its position had been severely compromised by Defendants, which ultimately resulted in the San Pedros lawsuit being settled for an amount higher than the case was worth, for all of which Defendants are liable.

## COUNT IV

### Negligent Supervision

107.   Terminix adopts, incorporates, and reiterates all the preceding paragraphs as if fully set forth herein verbatim.

108.   Terminix entered into an attorney-client relationship with Bennett and Broad and Cassel in or about June of 1995.

109.   As a result of the attorney-client relationship between Terminix and the Defendant Broad and Cassel, Defendant Broad and Cassel had a duty, expressed and implied, to properly supervise Bennett to ensure that he represented Terminix with that applicable degree of care, skill and diligence possessed and exercised by an attorney in the same or similar circumstances, and to ensure that Bennett did not misrepresent or intentionally withhold from Terminix information regarding the status of the San Pedros lawsuit.

110.   Terminix fully relied upon Defendant Broad and Cassel to properly supervise Bennett's representation of and defense of Terminix with respect to all of the claims asserted in the San Pedros litigation and properly supervise Bennett's representation of and defense of Terminix consistently and in compliance with all applicable rules, procedures, laws, and Court orders including but not limited to, the Federal Rules of Civil

23

Procedure, the Local Rules of the Southern District of Florida, and the substantive law applicable to the San Pedros' claims.

111.    Defendant Broad and Cassel failed to properly supervise Bennett's representation of Terminix in the San Pedros litigation, failed to ensure that Bennett represented Terminix with that degree of care, skill and diligence possessed and exercised by an attorney in the same or similar circumstances, and failed to ensure that Bennett did not misrepresent and intentionally withhold from Terminix critical information regarding the status of the San Pedros lawsuit.

112.    Defendant Broad and Cassel's conduct was intentional and grossly negligent in that Defendant Broad and Cassel knew or should have known that Bennett's conduct set forth above would result in damage to Terminix's interests in the San Pedros litigation.

113.    As a proximate result of Defendant Broad and Cassel's wilful misconduct and/or grossly negligent acts, failures to act, negligent acts, errors and omissions, Terminix was damaged by having to hire new counsel to represent them in the San Pedros litigation to attempt to undo the damage caused by Defendants' wrongful acts, thus incurring extensive attorneys' fees.  Also as a proximate result of the Defendants' wilful misconduct, failures to act, negligence, omissions, and errors, Terminix was required to pay fees to the Plaintiffs' lawyer and incurred extensive monetary damages in attempting to properly defend itself in the San Pedros litigation after its position had been severely compromised by Defendants, which ultimately resulted in a settlement of the San Pedros lawsuit for a higher amount than the case was worth, for all of which Defendant Broad and Cassel is liable.

24

## COUNT V

### Fraud/Misrepresentation

114.    Terminix adopts, incorporates, and reiterates all of the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

115.    Terminix entered into an attorney-client relationship, with Bennett and Broad and Cassel in or about June of 1995.

116.    Broad and Cassel is vicariously liable for Bennett's actions under the doctrine of respondeat superior.

117.    In addition to or in the alternative to paragraph 116, Broad and Cassel is directly liable for Bennett's actions by virtue of Bennett's status as a partner or managing agent of Broad and Cassel.

118.    Defendants intentionally, or with reckless disregard, misrepresented the status of the San Pedros litigation by intentionally withholding from Terminix the fact that they were not asserting and pursuing appropriate defenses in the San Pedros litigation either by motion or otherwise, facts which Defendants were obligated to advise Terminix of by virtue of the attorney-client relationship.

119.    Defendants intentionally, or with reckless disregard, misrepresented the status of the litigation and intentionally withheld facts from Terminix regarding motions to compel filed against Terminix and orders of the Court issued requiring Terminix to comply with discovery, facts which Defendants were obligated to advise Terminix of by virtue of the attorney-client relationship.

25

120.    Terminix reasonably and fully relied upon Defendants' misrepresentations regarding the status of the San Pedros litigation, including but not limited to the misrepresentations regarding Terminix's defenses in the San Pedros litigation, the motions to compel, and the court's orders regarding the discovery by virtue of the attorney-client relationship between the Defendants and Terminix.

121.    As a proximate result of Defendants' misrepresentations, wilful and wanton misconduct, intentional or reckless errors and omissions, Terminix was damaged by having to hire new counsel to represent them in the San Pedros litigation to attempt to undo the damage caused by Defendants' wrongful acts, thus incurring extensive attorneys' fees. Also as a proximate result of the Defendants' misrepresentations, wilful and wanton misconduct, intentional or reckless errors and omissions, Terminix was required to pay fees to the Plaintiffs' lawyer and incurred extensive monetary damages in attempting to properly defend itself in the San Pedros litigation after its position had been severely compromised by Defendants, which ultimately resulted in a settlement of the San Pedros lawsuit for a higher amount than the case was worth, for all of which Defendants are liable.

WHEREFORE, PREMISES CONSIDERED, Terminix prays as follows:

(i)    That proper process issue and be served upon the Defendants, requiring the Defendants to Answer the Complaint;

(ii)    That the Defendants be ordered to pay Terminix compensatory damages in the amount of $128,459.27 for negligently failing to properly represent Terminix in the San Pedros litigation;

26

(iii)   That the Defendants be ordered to pay Terminix compensatory damages in the amount of $128,459.27 for constructively defrauding Terminix by breaching their fiduciary duties owed to Terminix in the San Pedros litigation;

(iv)   That the Defendants be ordered to pay Terminix compensatory damages in the amount of $128,459.27 for breaching their contract with Terminix to represent and defend Terminix in the San Pedros litigation;

(v)   That the Defendant Broad and Cassel be ordered to pay compensatory damages in the amount of $128,459.27 for its failure to properly supervise Bennett;

(vi)   That Defendants be ordered to pay Terminix compensatory damages in the amount of $128,459.27 for defrauding Terminix by misrepresenting and intentionally withholding critical information regarding the status of the San Pedros litigation;

(vii)   That the Defendants be ordered to pay Terminix punitive damages in the amount of $500,000 for their intentional misconduct and/or gross negligence for failing to properly represent Terminix in the San Pedros litigation and/or for breaching their fiduciary duties owed to Terminix in the San Pedros litigation and/or for defrauding Terminix;

(viii)   That Defendant Broad and Cassel be ordered to pay Terminix punitive damages in the amount of $500,000 for Bennett's wilful and wanton misconduct and gross negligence coupled with Defendant Broad & Cassel's failure to properly supervise Bennett;

(ix)   That a trial by jury be had on all issues set forth herein;

(x)   That the Defendants be ordered to pay reasonable attorneys' fees and costs pursuant to Fla. Stat. § 57.105 upon a finding by the Court that Defendants raised no justiciable issue of either law or fact, along with prejudgment interest;

27

(xi)    That Terminix be awarded such other general and specific relief as the Court deems appropriate.

Respectfully submitted:

MALMAN & ASSOCIATES
Attorneys for Plaintiff
12955 Biscayne Boulevard
Suite 202
North Miami, Florida 33181
Tel. (305) 891-0066
Fax. (305) 891-1015

By: _____
Myles H. Malman
Florida Bar No. 0776084

Of Counsel:

Mary L. Wolff
WOLFF ARDIS, P.C.
6055 Primacy Parkway
Suite 360
Memphis, Tennessee 38119
Tel. (901) 763-3336

28

# CIVIL COVER SHEET

00-6108   CIV-ZLOCH

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM)

## I. (a) PLAINTIFFS

THE TERMINIX INTERNATIONAL COMPANY, L.P. and
TERMINIX INTERNATIONAL, INC.

## DEFENDANTS

BROAD AND CASSEL, P.A. and
MICHAEL P. BENNETT, Individually

MY CISTRATE JUDGE
SELTZER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

A- NORTH-6108 - ZLOCH / BSS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE    IN LAND CONDEMNATION CASES  USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

NIGHT BOX
FILED

**(c)** ATTORNEYS (FIRM NAME ADDRESS AND TELEPHONE NUMBER)
Malman & Associates
12955 Biscayne Boulevard, Suite 202
North Miami, Florida 33181 (305) 891-0066

ATTORNEYS (IF KNOWN)

JAN 21 2000

CLARENCE MADDOX

**(d)** CIRCLE COUNTY WHERE ACTION AROSE   DADE,  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 365 Personal Injury Product Liability | | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| | ☐ 330 Federal Employers Liability | | B☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing Accommodations | B☐ 530 General | | A☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 240 Torts to Land | | B☐ 535 Death Penalty | ☐ 791 Empl Ret Inc Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | B☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. 1332
Plaintiffs were injured by Defendants legal malpractice.

LENGTH OF TRIAL
via _5_ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C P 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE
1-21-00

SIGNATURE OF ATTORNEY OF RECORD
My Malman

## FOR OFFICE USE ONLY

RECEIPT # 518341   AMOUNT $150.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

01-24-00