UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-6108-CIV-ZLOCH
Magistrate Judge Seltzer

THE TERMINIX INTERNATIONAL
COMPANY., L.P. and TERMINIX
INTERNATIONAL, INC.,

    Plaintiffs,

vs.

BROAD AND CASSEL, P.A. and
MICHAEL P. BENNETT, Individually,

    Defendants.

_____/



PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

    The Plaintiffs, The Terminix International Company, L.P. and Terminix International, Inc. (collectively "Terminix"), by and through counsel respectfully submit this Opposition to Defendants' Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.    **INTRODUCTION**

    Defendants were retained to defend Terminix in a suit brought by Benedicto San Pedro and Nancy San Pedro (hereinafter referred to collectively as " the San Pedros"), in the United States District Court for the Southern District of Florida. Terminix's claims against Defendants arise out of their entire want of care and attention to duty in the handling of that lawsuit, coupled with their intentional failure to disclose to Terminix the problems that had arisen with the case as a result of their misconduct and

misrepresentations. Although the complaint filed by the San Pedros was legally insufficient and could have been dismissed in early 1995, as a result of the Defendants' actions and omissions, Terminix was involved in over three (3) years of protracted litigation highlighted by numerous orders compelling Terminix to produce hundreds of thousands of irrelevant documents and orders granting sanctions, including the ultimate sanction of default.

## II.  STANDARD OF REVIEW

Terminix's Complaint should not be dismissed under Rule 12(b)(6) unless it appears to a certainty that Terminix can prove no set of facts in support of its claim that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957); Ancata v. Prison Health Services, Inc., 769 F.2d 700, 702 (11th Cir. 1985). The Court must also accept the facts as pleaded to be true and resolve them in the light most favorable to the Plaintiff. Ancata, 769 F.2d at 702. This includes giving plaintiff the benefit of all legitimate inferences from the facts alleged in the Complaint. Id. at 703.

The scope of review is limited to "the allegations contained in the four corners of the Complaint." Rickman v. Precisionaire, Inc., 902 F. Supp. 232, 233 (M.D. Fla. 1995); accord Kissimmee River Valley Sportsman Association v. City of Lakeland, 60 F. Supp. 2d 1289, 1291 (M.D. Fla. 1999) ("In deciding a motion to dismiss, a court can examine only the four corners of the complaint.") Moreover, as the 11th Circuit has made clear, "[t]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss or failure to state a claim is, as we have stated previously, 'exceedingly low.'" Ancata, 762 F.2d at 703.

## III.  THE COMPLAINT STATES A CLAIM FOR LEGAL MALPRACTICE

Defendants first argue that the Complaint fails to state a claim for legal malpractice, contending that their failure to object to the San Pedros' Motion for Leave to Amend was not negligent and caused no damage to Terminix, and that their failure to timely respond to discovery requests and to comply with the court's discovery orders did

not proximately damage Terminix. However, accepting the allegations of the Complaint as true, and giving Terminix the benefit of all legitimate inferences from the Complaint, it clearly establishes that Defendants' conduct was negligent and resulted in damage to Terminix.

### A. Defendants' Failure to Object to the Motion for Leave to Amend was Negligent and Caused Terminix Damage.

On April 5, 1995, the San Pedros commenced their federal action against Terminix alleging claims for negligent and fraudulent provision of exterminating services and claiming punitive damages. (Complaint ¶¶ 7-9) On October 5, 1995, the San Pedros filed a Motion for Leave to File an Amended Complaint in which they sought to add allegations that Terminix engaged in a "nationwide scheme to defraud" its customers. (Complaint ¶ 23) On November 3, 1995, Defendants notified Terminix of the proposed First Amended Complaint and represented to Terminix: "Obviously, we will oppose the amendment." (Complaint ¶ 24) Instead, Defendants, without Terminix's knowledge or approval, sought and received seven (7) extensions of time to file a response to the Motion to Amend and ultimately failed to file any opposition. (Complaint ¶¶ 26-27) On April 3, 1996, the court entered an order granting the Motion to Amend by default because of Terminix's failure to respond. (Complaint ¶ 35) On February 9, 1996, the San Pedros served Terminix with a set of Requests for Production, which requests were sought to support the allegations of the First Amended Complaint. (Complaint ¶ 29) Defendants did not transmit to nor even notify Terminix of the Requests for Production, and despite correspondence from opposing counsel that the responses were overdue, failed to ever respond to the requests. (Complaint ¶¶ 30-33) On April 1, 1996 the San Pedros filed a Motion to Compel Terminix to provide all the documents responsive to their Requests without objection, contending Terminix's objections had been waived due to its failure to timely respond. (Complaint ¶ 34) Again, Defendants failed to inform Terminix of the Motion to Compel, and failed to file

any response resulting in the granting of the Motion by default. (Complaint ¶¶ 39, 46)

Defendants first contend that their conduct in failing to object to the Motion for Leave to Amend was not negligent because "there was no good faith basis on which Bennett and Broad could object to the requested amendment." (Defendants' Memorandum p. 3) However, the very case law cited by Defendants to support this argument belies it. Citing McKinley v. Kaplan, 177 F. 3d 1253 (11th Cir. 1999), Defendants accurately state the rule that leave to amend should be freely given "in the absence of any apparent or declared reason such as . . . futility of amendment." Indeed, the Eleventh Circuit has repeatedly held that "the futility of a proposed amended complaint can be a justifiable reason for denying leave to amend." Motorcity of Jacksonville, Ltd. v. Southeast Bank, NA, 83 F.3d 1317, 1323 (11th Cir. 1996); Florida Power and Light Co. v. Allied Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir. 1996) (affirming district court's denial of Motion for Leave to Amend as futile since proposed claim would not withstand a motion to dismiss.); Halliburton & Associates, Inc. v. Henderson, Few & Co., 774 F.2d 441, 444 (11th Cir. 1985) (holding that the district court did not abuse its discretion in denying leave to amend since the amendment was futile.)

Defendants themselves point out that the San Pedros' Amended Complaint was not legally viable and was ultimately dismissed by the court on the basis that Florida's economic loss rule barred the San Pedros' claim. (Defendants' Memorandum p. 8; Complaint ¶ 76) Therefore, Defendants' failure to object to the Motion for Leave to Amend, and indeed their failure to file a motion to dismiss the original Complaint, was negligent. Moreover, their conduct in representing to Terminix that they were going to oppose the amendment, then intentionally failing to file any opposition, and in fact representing to the court that the San Pedros were entitled to file the amendment (Complaint ¶ 27), followed by their intentional failure to inform Terminix of any of these matters acted as a fraud upon Terminix.

Defendants next contend that opposing the Motion to Amend was not negligent

4

because a scheduling order was entered permitting the parties to amend their pleadings. This argument also fails. First, the amendment was permitted because Plaintiffs filed a Motion for Leave to Amend which was granted by default, not because of the scheduling order. (Complaint ¶ 35) Additionally, the scheduling order was entered as a result of an agreed order submitted by both counsel for Plaintiffs and Defendants. Moreover, the scheduling order itself permitted counsel to notify the court of any circumstances which might require amendment or modification to the scheduling order. Thus, Defendants' agreeing to this scheduling order and failing to raise any objection to the proposed Amended Complaint at the time can give them no solace here.

Finally, Defendants contend that, since the San Pedros would have been permitted to amend their Complaint whether Terminix objected or not, Defendants' failure to make such an objection did not cause any damage to Terminix. As set forth above, an objection by Terminix to the San Pedros' Motion to Amend would have been sustained since the proposed amendment was futile. Moreover, significant damages flowed from Defendants' failure to object to the legally insufficient Amended Complaint. Specifically, the San Pedros represented to the court that their Second Request for Production were submitted to support the allegations of the Amended Complaint. (Complaint ¶ 29) Had the proposed amendment never been permitted, those requests would likewise never have been filed. Instead, Defendants permitted the amendment, failed to object to or even respond to the Requests for Production, and failed to respond to the Motion to Compel filed in connection with those production requests, resulting in the court's ordering Terminix to produce the requested documents. Those requests called for Terminix to produce literally hundreds of thousands of documents including copies of all lawsuits filed against Terminix over a seven (7) year period containing any allegations of negligence, copies of all documents produced in connection with any such lawsuits, and copies of all consumer complaints filed against Terminix over a seven (7)

year period where the complaints maintain that Terminix acted fraudulently or negligently. (See Plaintiff's Second Request for Production of Documents attached hereto as Exhibit A.)

Moreover, Defendants intentionally failed to inform Terminix about the court's Order compelling them to produce the requested documents and failed themselves to take any steps to comply with that Order. The San Pedros filed a Motion for Sanctions against Terminix as a result of Defendants' conduct, and at the hearing on the San Pedros' Motion for Sanctions the court found that, based on Defendants' conduct, Terminix had acted in bad faith.

### B. Defendants' Failure to Timely Respond to Discovery Requests and Comply with the Court's Orders Resulted in Extensive Damage to Terminix.

As set forth above, neither the Complaint nor Amended Complaint stated viable causes against Terminix, yet Defendants never questioned the San Pedros' insufficient pleadings. To support their insufficient pleadings, the San Pedros propounded voluminous discovery seeking both irrelevant and privileged documents from Terminix. On May 12, 1995, the San Pedros propounded their First Request for Production of Documents along with other discovery. (Complaint ¶ 14) (A copy of Plaintiff's First Request for Production of Documents is attached hereto as Exhibit B.)

Even if the San Pedros' Complaint had stated a cause of action, the documents sought were not relevant to the issues raised by the complaint. Additionally, they sought hundreds of thousands of documents many of which were clearly protected by the attorney-client privilege. For instance, the San Pedros requested:

> 14. Any documents relating to lawsuits against the Defendant or related entities which involved allegations of negligence and/or fraud for the past ten years, up, to and including the date of production.

The requests defined "Defendant" to include not only Terminix but any predecessor or

LAW OFFICES • MALMAN & ASSOCIATES • 12955 BISCAYNE BOULEVARD • SUITE 202 • NORTH MIAMI, FLORIDA 33181 • (305) 891-0066

successor corporation, any divisions, any parent, or any subsidiary corporation. Since Terminix is a large company that does business throughout the United States, this request alone called for production of hundreds of thousands of documents even if it were only directed to Terminix. (Complaint ¶ 51) However, since Terminix is a part of the ServiceMaster Companies, which includes companies that perform lawn service, maid service, health services, etc., the request sought documents which had nothing to do with termite exterminating services. Additionally, since it sought <u>any</u> documents related to lawsuits, the request sought communications between Terminix and its counsel relating to those lawsuits, documents which were clearly subject to the attorney-client privilege. Thus, producing the documents demanded by this request alone would have been impossible.

After obtaining a number of extensions of time, Defendants did serve responses to these document requests, interposing objections on Terminix's behalf. However, on October 3, 1995, the San Pedros filed a Motion to Compel alleging that the responses were deficient. Defendants did not inform Terminix that the San Pedros had filed a Motion to Compel, but instead, without Terminix's knowledge or approval, sought and received seven (7) extensions of time within which to respond to the Motion. (Complaint ¶ 21) Despite having received these seven (7) extensions, Defendants never responded to the Motion to Compel, and on April 3, 1996, the court granted the Motion by default. (Complaint ¶¶ 22, 35) Defendants did not inform Terminix of the court's Order compelling production, and failed to take any steps to comply with that order. As it became apparent that Defendants would not question or otherwise reply to the San Pedros' pleadings, motions or discovery requests, the San Pedros propounded additional voluminous discovery which again was ignored by Defendants in total disregard of Terminix's rights. (See discussion regarding Second Request for Production above.)

After writing Defendants several letters demanding that they comply with the

7

court's Order, the San Pedros, on May 10, 1996, filed a Motion to Compel Terminix's compliance with the court orders. (Complaint ¶¶ 37-40) gain, Defendants withheld from Terminix the fact that a Motion to Compel had been filed, and, without Terminix's knowledge or approval, sought four (4) extensions of time within which to respond to the Motion. As with their past pattern, despite obtaining extensions, they failed to ever respond to the Motion to Compel, and the court granted the Motion by default on June 6, 1996. (Complaint ¶¶ 41-46) When Defendants failed to take any steps to comply with yet another court Order, on July 2, 1996 the San Pedros filed a Motion for Sanctions against Terminix. (Complaint ¶ 47) This Motion resulted in the court's July 16, 1996 Order granting all of the San Pedros' pending Motions to Compel, ordering Terminix to produce all requested documents within thirty (30) days, and warning that failure to do so would result in the entry of a default. (Complaint ¶¶ 48-49) Despite knowing it would be impossible for Terminix to produce the requested documents within the thirty (30) days, Defendants did not provide Terminix with a copy of the July 16 Order, and did not even inform Terminix they had been ordered to produce the documents until four (4) business days before the production was due. (Complaint ¶¶ 50-52) Additionally, when Defendant Bennett finally notified Terminix that they had been ordered to produce documents, he did so by a facsimile on a Friday afternoon and promptly left town on vacation. (Complaint ¶¶ 53-56)

Not knowing the full extent of the fraud perpetrated on Terminix by Defendants based on their intentional withholding of information regarding the true status of the case, Terminix discharged Defendants on August 14, 1996, based solely on Defendants' failure to notify Terminix it had been ordered to produce documents until literally the day before the production was due. Terminix immediately hired new counsel and requested Defendants to forward their file to the new counsel "ASAP". (Complaint ¶¶ 58-59) However, Defendants failed to comply with Terminix's request and delayed in providing Terminix with the file until after August 23, 1996. (Complaint

¶¶ 63-66) Therefore, without access to the file, and without knowledge of the facts relating to Defendants' conduct, and indeed without even a copy of the July 16 Order, Terminix, through its new counsel, filed a Petition for Rehearing on August 15, 1996. (Complaint ¶ 62) On August 29, 1996, the court denied Terminix's Petition for Rehearing and ordered Terminix to comply with its July 16 Order "within ten (10) days from the date of this Order's entry, *including* weekends and mailing days, or default shall enter against them. Additionally, defendants are put on notice now that they shall be granted *no further extensions of time in this case!*" (Emphasis in original.) (Complaint ¶¶ 67-68)

Because of Defendants' failure to timely turn over the San Pedros' litigation file to Terminix's new counsel, the intentional withholding of information from Terminix regarding the true status of the case, and given the nature of the production requests with which Terminix had been ordered to comply, it was impossible for Terminix to comply with the August 29, 1996 Order of the court. (Complaint ¶ 69) Terminix, nevertheless, used its best efforts to comply and timely served on the San Pedros the best possible responses to all outstanding discovery on September 6, 1996. (Complaint ¶ 69) However, on September 10, 1996, the San Pedros filed an Emergency Motion for Entry of Default for Terminix's failure to comply with the August 29th Order. (Complaint ¶ 70) This Motion was not set for hearing until December 20, 1996, and, in the interim, Terminix's new counsel filed numerous motions, memoranda, and affidavits attempting to pull Terminix out of the deep hole into which Defendants had pushed them. Despite these efforts, on February 11, 1997, the court granted the San Pedros' Motion for Default and entered a default judgment against Terminix on all issues of liability. Continuing to attempt to undo the damage caused by Defendants, Terminix hired additional counsel and filed additional motions with the court, including a Motion to Reconsider its entry of default judgment and Motion for Partial Summary Judgment. Ultimately, almost a year later, on January 22, 1998, the court did set aside its previous

Order of Default, instead ordering money sanctions against Terminix. (Complaint ¶¶ 74-76)

Despite the obvious damage caused Terminix by the total disregard of Defendants' duties to Terminix and their wilful misrepresentations and withholding of information, Defendants contend that the instant Complaint should be dismissed because their actions did not proximately cause Terminix any damage. Defendants urge this illogical conclusion upon the court on two grounds: (1) that the entry of the default was not the result of Defendants' conduct, but of Terminix's and its new counsel's failure to comply with the court's orders despite "ample opportunity to do so"; and (2) at the time Defendants were dismissed by Terminix no sanctions had been entered against Terminix, "and such sanctions could have been avoided had Terminix, through its new counsel, provided the necessary discovery." Neither argument has any factual or legal basis.

First, Terminix's new counsel was only given six (6) business days within which to comply with the court's Order compelling Terminix to produce hundreds of thousands of documents scattered throughout the United States, including numerous privileged documents which Terminix could not have produced without causing further extensive damage to Terminix. (Complaint ¶¶ 51, 67-69) Ignoring these compelling facts, Defendants contend that since three (3) months elapsed between the filing of the San Pedros' Motion for Default and the court's holding a hearing on that Motion, and then another six (6) weeks elapsed between the hearing and the date the court entered its Order of default, that Terminix's new counsel should have filed additional responses to the discovery requests. However, this argument simply ignores that the court's Order of default was based on Terminix's failure to provide the ordered discovery by September 8, 1996. Additionally, Defendants ignore the fact that, but for their misconduct Terminix would have never been ordered to produce any documents. Had Defendants filed a Motion to Dismiss when the Complaint was first filed, had Defendants objected to the

Motion for Leave to Amend, had Defendants filed responses to the discovery, had Defendants responded to any of the numerous discovery motions, or even responded to orders compelling them to provide discovery, the court would not have ordered full production of voluminous, totally irrelevant and privileged documents. Obviously, in being forced to hire new counsel who performed extensive services attempting to undo the position into which Defendants had put Terminix and by having to expend time, effort and money in attempting to respond to discovery which never would have been propounded had Defendants properly had the Complaint dismissed and/or opposed the Amended Complaint, Terminix was damaged by Defendants' actions.

Defendants next contend that since the court, on Terminix's Motion for Reconsideration, set aside the entry of default, Defendants cannot be deemed to have proximately caused the entry of default, citing Pennsylvania Ins. Guar. Ass'n v. Sikes, 590 So. 2d 1051 (Fla. 3d DCA 1991). The Sikes case does not support Defendants' argument nor do the facts of the case at bar. In Sikes, defendant lawyer was hired to defend the plaintiff insurance company's insureds who had been in a car accident. In the answer filed on behalf of the insureds, Sikes failed to specifically deny allegations of negligence but had denied negligence in his affirmative defense of comparative negligence. On the day of trial the court granted the plaintiffs' motion for judgment on liability, rejecting the defendant lawyer's argument that liability had always been contested and that alternatively he should be permitted to amend his answer. The insurance company settled the judgment against its insureds for twenty (20) cents on the dollar before an appeal was perfected. The insurance company then filed its legal malpractice claim for the amount of the settlement. The trial court granted summary judgment to defendant lawyer, finding that he had not acted negligently. On appeal, the insurance company argued that whether the lawyer's actions constituted malpractice and "whether that malpractice was the proximate cause of its loss are issues for the trier of fact to determine." 590 So. 2d at 1052. However, the appellate court stated that it

need not reach that issue, holding instead that on the facts of that case, the settlement of the underlying personal injury action while the appeal was pending constituted an abandonment of the claim that the insurance company's loss resulted from legal malpractice rather than judicial error. 590 So. 2d at 1053.

In the case at bar, Terminix is not suing Defendants because of a judgment entered as a result of the default. Instead, Terminix contends it was damaged by having to hire new counsel to represent them and attempt to undo the damage caused by the Defendants' wrongful acts and omissions, thus incurring extensive attorneys' fees, by being required to pay monetary sanctions which the court ultimately ordered as a result of Defendants' conduct, and by having to incur extensive monetary damages to properly defend itself after its position had been severely compromised by the Defendants, ultimately resulting in a settlement of the case for an amount higher than the case was worth. All of these damages resulted directly from Defendants' misconduct.

Finally, Defendants argue that they did not proximately cause Terminix to settle the San Pedros case for an excessive amount. Again accepting the facts as pleaded to be true, resolving them in the light most favorable to Terminix, and giving Terminix the benefit of all legitimate inferences from the Complaint as is required in evaluating Defendants' Motion, this contention must also fail. Had Defendants properly handled the San Pedros' litigation, it would have been dismissed within months of being filed, and Terminix would not have been ordered repeatedly to comply with the court orders nor found by the court to be acting in bad faith. Even if all of the San Pedros' factual allegations against Terminix were true, Terminix would have been liable for, at most, only several thousand dollars. Instead, based on the advice of its new counsel, and because its position had been so severely compromised by Defendants, Terminix ultimately settled the case for far more than it would have ever had to pay had it initially been properly handled by Defendants.

12

LAW OFFICES • MALMAN & ASSOCIATES • 12955 BISCAYNE BOULEVARD • SUITE 202 • NORTH MIAMI, FLORIDA 33181 • (305) 891-0066

In <u>Bill Branch Chevrolet, Inc. v. Philip L. Burnett, P.A.</u>, 555 So. 2d 455 (Fla. 2d DCA 1990), a client sued his attorney and law firm contending that their failure to properly investigate the case or conduct adequate discovery forced the client to settle the case for a sum greater than its actual liability. The trial court granted defendants' Mtion to Dsmiss, and the appellate court reversed, finding that the required elements of legal malpractice were adequately alleged, including the element of proximate cause, stating that proximate cause was "a matter of proof for trial." 555 So. 2d at 456. The court also rejected the law firm's contention that its client's damage allegation was speculative, holding that whether the plaintiff can prove damages beyond speculation is an issue for the trier of fact. The court further noted that "as this issue is not found on the face of the complaint, it cannot be the subject of a motion to dismiss." 555 So. 2d at 456.

Similarly, in this case it cannot be said that "it appears to a certainty" that Terminix can prove no set of facts in support of its claim that would entitle it to relief. <u>Ancata</u> 769 F.2d at 702. Therefore, Defendants' Motion should be denied.

### IV.  THE COMPLAINT MEETS THE REQUIREMENTS OF RULE 9(b)

Defendants next contend that Terminix's cause of action for fraud should be dismissed because Terminix has failed to allege fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. The 11th Circuit has recognized the conflict that exists between the concept of "notice pleading" embodied in Fed. R. Civ. P. 8 and the particularity requirement of Fed. R. Civ. P. 9(b), holding:

> Rule 9(b) must not be read to abrogate Rule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with a broader policy of notice pleading.

Friedlander v. Nims, 755 F.2d 810, 813 n. 3 (11th Cir. 1985). The court also noted that the clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed. Id. "In short, the requirements of Rule 9(b) are satisfied if the complaint gives defendants fair notice of the nature of plaintiffs' claim and the grounds upon which it is based." Mobile Oil Corp. v. Dade County Esoil Management Co., Inc., 982 F. Supp. 873, 878 (1997). Additionally, the 11th Circuit has held that allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity. Durham v. Business Management Associates, 847 F.2d 1505, 1512 (11th Cir. 1988). Having set forth the precise details of Defendants' conduct constituting fraud, Terminix's Complaint clearly meets the requirements of Rule 9(b).

However, Defendants do not really complain about lack of specificity, instead they contend that Terminix's allegations only "describe a neglectful and inattentive course of conduct" which cannot be characterized as fraud. (Defendants' Memorandum, p. 10) In fact, though, Terminix's allegations of Defendants' conduct go far beyond mere inattention. Terminix alleges that Defendants intentionally withheld from Terminix information relating to the status of the case including Requests for Production that had been served, Motions to Compel that had been filed, court Orders that had been entered requiring Terminix to produce documents, and the court's Order threatening Terminix with the entry of default. (See e.g. Complaint ¶ 53)

Additionally, the facts of the Complaint clearly support that Defendants' conduct was intentional. Having requested numerous extensions of time to respond to the various Motions to Compel, it did not just slip Defendants' minds that a response was due. Having repeatedly been warned by opposing counsel that they were failing to comply with court Orders, such failure did not result from mere inattention. Having been ordered to comply with a previous Order requiring compliance with discovery, Defendants did not merely forget to let Terminix know what was going on. Indeed,

LAW OFFICES • MALMAN & ASSOCIATES • 12955 BISCAYNE BOULEVARD • SUITE 202 • NORTH MIAMI, FLORIDA 33181 • (305) 891-0066

Defendant Bennett intentionally misrepresented to Terminix what had occurred at the July 12, 1996 scheduling conference which resulted in the July 16, 1996 Order. At that scheduling conference, the court heard argument on the San Pedros' Motion for Sanctions which was based upon Defendants' failure to respond to three (3) Motions to Compel and failure to comply with the court's Order compelling production of documents. Instead of advising Terminix of the true status of the case, in his late Friday afternoon facsimile, Defendant Bennett misrepresented that "the court, at a recent scheduling conference, heard argument on plaintiffs' first and second requests for production." This conduct by Defendants clearly reflects that the withholding of information from Terminix was intentional.

Under Florida law, Defendants' conduct constitutes fraud. In <u>Blackhawk Tennessee Ltd. Partnership v. Waltemyer</u>, 900 F. Supp. 414 (N.D. Fla. 1995), the plaintiff brought an action for fraud and legal malpractice against the attorney and law firm which had represented a partner of the partnership. In denying the defendant law firm's Motion for Summary Judgment, the court stated "Under Florida law, false statements relied upon to one's detriment are actionable. Silence can be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." 900 F. Supp. at 418. Clearly, Defendants had a legal duty to inform Terminix of the status of its litigation. Holding that a lawyer has an implicit duty to inform the client of matters material to the representation, the court in <u>FDIC v. Martin</u>, 801 F. Supp. 617, 620 (N.D. Fla. 1992) stated:

> The attorney-client relationship does, as Plaintiff maintains, place a fiduciary duty on the part of the attorney. An attorney acting in a fiduciary or confidential capacity has the duty to make a full and fair disclosure of material facts to a person reposing confidence in him.

(citations omitted.)

Given Defendants' duty to keep Terminix informed of the status of its case, its

15

intentional failure to do so, and the resulting damage to Terminix, Terminix has stated with particularity a cause of action for fraud.

## IV.   THE COMPLAINT ALLEGES A SUFFICIENT BASIS FOR PUNITIVE DAMAGES

Defendants contend that Plaintiff's Complaint "alleges a series of lapses" by Defendants in their obligations to meet deadlines and to communicate with their client, which they contend, "even if" characterized as negligence do not rise to the level of conduct necessary for an award of punitive damages relying on White Construction Co. v. Dupont, 455 So. 2d 1026 (Fla. 1984).

However, this argument by Defendants misses the point.  The language quoted from White discusses "the character of negligence necessary to sustain an award of punitive damages." 455 So. 2d at 1029. (emphasis added).  Thus, Defendants ignore the fact that, as set out above, Terminix's Complaint alleges misrepresentations and intentional misconduct on Defendants' part constituting fraud.

Moreover, even if Terminix's Complaint only alleged negligence, it meets the standard set out in White; i.e., Defendants' conduct as alleged by Terminix evidences "that entire want of care which would raise the presumption of a conscious indifference to consequences."  In Dean Witter Reynolds, Inc. v. Leslie, 410 So. 2d 961 (Fla. 3d DCA 1982) stock investors sued a brokerage firm and branch manager for negligence based upon the mismanagement of stock options.  The defendant branch manager managed the subject stock options for the plaintiffs over a period of several months. When the market gradually dropped over a several month period, the options were rendered worthless.  The defendant failed to sell the options, although he had opportunity to do so, and made no effort during the months in which he managed the account to contact the plaintiffs and advise them of the gradual drop in the stock

LAW OFFICES • MALMAN & ASSOCIATES • 12955 BISCAYNE BOULEVARD • SUITE 202 • NORTH MIAMI, FLORIDA 33181 • (305) 891-0066

options. Based on this conduct the court held that the defendants had acted with that degree of gross negligence which indicated a wanton disregard of the rights of their clients, and stated:

> We deal here, in our view, with an "entire want of care or attention to duty," a "great indifference to the persons, property or rights of others" which has long been sufficient to justify a punitive damages award.

410 So. 2d at 964. Similarly, in the case at bar, Defendants totally neglected Terminix's case, intentionally failed to respond to Motions to Compel or Orders requiring production and made no effort to keep Terminix apprised of the status of the case, clearly evidencing an "entire want of care or attention to duty."

In Richards Company, Inc. v. Harrison, 262 So. 2d 258 (Fla. 1st DCA 1972), plaintiff, an 18- year-old encyclopedia salesman, sued his employer for damages arising out of his employer's breach of duty to furnish a reasonably safe place to work and for knowingly exposing him to personal danger not to be expected from the nature of his employment. The plaintiff's supervisor had driven the plaintiff and two other salesman to Valdosta, Georgia for the purposes of soliciting orders for encyclopedias. The supervisor knew that a permit was necessary to solicit such sales within the city limits, and, having arrived too late to obtain the proper permits, decided to work the crew outside the city limits. However, defendant was unfamiliar with the city and dropped the crew off without first checking a city map. The two other salesmen in the crew were dropped off outside the city limits, but plaintiff was let out inside the city limits and was arrested for soliciting without a permit. In upholding an award of punitive damages, the court held:

> Punitive damages need not flow from an intentional course

> of conduct or intent to inflict damages but may also be allowed in such cases where there is that entire want of care which would raise the presumption of a conscious indifference to the consequence of one's actions or inaction. In the case at bar, the jury might well have thought that the crew chief's failure to telephone the Valdosta Police Department in an attempt to arrange for his salesmen to canvas the area or the crew chief's failure to obtain a map of the city for each of the salesmen to carry and use as a reference guide to establish the location of their canvassing activities amounted to that degree of indifference to the fate of the crew members as to justify the imposition of punitive damages.

262 So. 2d at 262. A jury could clearly conclude that Defendants' conduct in this case amounted to "that degree of indifference to the fate of [Terminix] as to justify the imposition of punitive damages."

Additionally, the <u>Harrison</u> court further held that punitive damages are also appropriate where the acts complained of have been committed with malice. The court noted that malice as used in cases allowing for recovery of punitive damages does not necessarily mean anger or vindictive feelings toward the plaintiff. "A wrongful act without reasonable excuse is malicious within the legal meaning of the term." 262 So. 2d at 262. Clearly, Defendants' conduct in this case was without reasonable excuse, and as such is considered malicious of the nature justifying punitive damages.

## VI. DISMISSAL OF PLAINTIFFS' CLAIM FOR ATTORNEYS' FEES UNDER FLORIDA STATUTE 57.105(1) IS NOT APPROPRIATE AT THIS TIME

Finally, Defendants contend that the court should dismiss Plaintiff's claim for attorneys' fees under Florida Statute Section 57.105(1). Arguing that an award under this section requires a finding that Defendants' defenses are untenable factually and legally, Defendants argue that "it is overwhelmingly obvious" that Defendants have substantial defenses to Terminix's claims. Since no factual defenses have been raised at this stage of the pleadings, the question is whether or not Defendants have raised

LAW OFFICES • MALMAN & ASSOCIATES • 12955 BISCAYNE BOULEVARD • SUITE 202 • NORTH MIAMI, FLORIDA 33181 • (305) 891-0066

any legal defenses. As set forth above, they have not. Therefore, the court should withhold ruling on the viability of this cause of action until a more appropriate time.

## VII. CONCLUSION

On the basis of the arguments and authorities set forth above, Terminix respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

MALMAN & ASSOCIATES
Attorneys for Plaintiff
12955 Biscayne Boulevard #202
North Miami, Florida 33181
Tel. (305) 891-0066
Fax. (305) 891-1015

By: _____
    Myles H. Malman
    Florida Bar No. 0776084

Of Counsel:

Mary L. Wolff
WOLFF ARDIS, P.C.
6055 Primacy Parkway, Suite 360
Memphis, Tennessee 38119
(901) 763-3336

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was sent via facsimile and United States mail to Isaac J. Mitrani, Esquire, Mitrani, Rynor, Adamsky, Macaulay & Zorrilla, P.A., 2200 Suntrust International Center, One Southeast Third Avenue, Miami, Florida 33131 this 10th day of March 2000.

BY: _____
    Myles H. Malman

# ADDITIONAL ATTACHMENTS NOT SCANNED

PLEASE REFER TO COURT FILE