**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

THE TERMINIX INTERNATIONAL
COMPANY, L.P. and TERMINIX
INTERNATIONAL, INC.,

**CASE NO. 00-6108-CIV-ZLOCH**
**MAGISTRATE JUDGE SELTZER**

      **Plaintiffs,**

vs.

BROAD AND CASSEL, P.A. and
MICHAEL P. BENNETT, Individually,

      **Defendants.**

_____/

NIGHT BOX
AUG 7 2000

CLK, U.S. DIST. CT.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR PROTECTIVE ORDER**

      The Plaintiffs, terminix International Company, L.P. and Terminix International, Inc. (hereinafter collectively referred to as "Terminix") seek a Protective Order relieving them from any obligation to respond to Defendants' Second Request for Production of Documents ("Second Requests") and precluding Defendants from discovery of the documents sought therein. In support of its Motion for Protective Order, Terminix submits the following Memorandum of Law.

## I.   INTRODUCTION

      In 1995, Defendants were retained to defend Terminix in a suit brought by Benedicto San Pedro and Nancy San Pedro (collectively "the San Pedros"), San Pedro v. Terminix, in the United States District Court for the Southern District of Florida, Fort Lauderdale Division, No. 95-8204-CIV ("San Pedros Litigation"). Terminix's instant claims against Defendants arise out of their entire want of care and attention to duty in the handling of the San Pedros Litigation, coupled with their intentional failure to

disclose to Terminix the problems that had arisen with the case as a result of their misconduct and misrepresentations. Although the San Pedros Litigation could have been dismissed in early 1995, as a result of the Defendants' acts and omissions, Terminix was involved in over three (3) years of protracted litigation highlighted by numerous Orders compelling Terminix to produce hundreds of thousands irrelevant and privileged documents and Orders granting sanctions against Terminix, including the ultimate sanction of default. In the instant law suit, Terminix seeks compensatory damages in the amount of $128,459.27. Terminix contends it was damaged by being required, in the San Pedros Litigation, to pay monetary sanctions which the court ultimately ordered as a result of Defendants' conduct ($5,020.00), by having to hire new counsel to represent them and attempt to undo the damage caused by the Defendants' wrongful acts and to properly defend itself after its position had been severely compromised by the Defendants, thus incurring extensive attorneys' fees ($68,439.27), ultimately resulting in a settlement of the case for an amount higher than the case was worth ($60,000.00).

## II.    FACTS

### A.    The San Pedros Litigation

In order to properly evaluate Terminix's Motion for Protective Order, an understanding of the underlying San Pedros Litigation and Defendants' wrongful conduct in connection with representing Terminix in that litigation is necessary. In 1992 the San Pedros originally sued Terminix in state court alleging that Terminix had failed to properly conduct termite inspections of their residence, resulting in property damage to their home. The state court case was voluntarily dismissed by the San Pedros in February of 1995 after their experts failed to conclude that Terminix had improperly performed any termite inspection. Thereafter, in April of 1995, the San Pedros again instituted suit against Terminix, this time in federal court, alleging fraud and negligence

2

on Terminix's part in connection with its conducting of termite inspections at their residence.    Defendant Bennett, who had represented Terminix in the state court litigation, was again retained by Terminix to represent it in the federal court suit.

As ultimately found by Judge Jose A. Gonzalez, Jr., the San Pedros' federal court complaint against Terminix was legally deficient and subject to being dismissed on the grounds that the Florida Economic Loss Rule precludes tort recovery, such as for negligence and fraud, for damages that arise from or are incident to the parties' contractual relationship.    However, Defendants failed to file a motion to dismiss or otherwise challenge the San Pedros' complaint. Instead, they allowed the San Pedros to further amend their complaint to allege that Terminix had engaged in a nationwide conspiracy to defraud its customers. Although Defendants represented to Terminix that they would oppose the amendment to the complaint, they intentionally failed to file any opposition, and in fact represented to the court that the San Pedros were entitled to file the amendment. The court permitted the amendment by default.

In order to support their legally insufficient claims, the San Pedros propounded voluminous discovery seeking both irrelevant and privileged information from Terminix. Of significance here, the San Pedros served two sets of requests for production seeking, for example, any documents related to lawsuits against Terminix or related entities which involved allegations of negligence and/or fraud, including all documents produced by Terminix during discovery in any such lawsuits and any documents related to government investigations of Terminix or related entities. The requests defined Terminix to include not only the named defendants, but any predecessor or successor corporation, any divisions, any parent, or any subsidiary corporation. Since Terminix is a large company that does business throughout the United States, even requests directed only to Terminix would call for production of hundreds of thousands of documents. However, the requests called for documents from all related entities. Since Terminix is part of the ServiceMaster Companies, which include companies that perform

3

lawn service, maid service, health services, etc., the request also sought documents which had nothing to do with termite exterminating services. Additionally, since the requests sought any documents related to lawsuits and government investigations, the requests sought communications between Terminix and its counsel relating to those lawsuits and investigations, documents which were clearly protected by the attorney-client privilege.

After obtaining a number of extensions, Defendants did serve responses to the San Pedros' First Request for Production of Documents. However, after receipt of those responses, the San Pedros filed a motion to compel alleging that the responses were deficient. Defendants did not inform Terminix that the San Pedros had filed a motion to compel, but instead, without Terminix's knowledge or approval sought and received seven (7) extensions of time within which to respond to the motion. Despite having received these numerous extensions, defendants never responded to the motion to compel, and in April of 1996, the federal court granted the motion by default. Thereafter, Defendants did not inform Terminix of the court's Order compelling production, and failed to take any steps to comply with that order.

Defendants' conduct in connection with the San Pedros' Second Request for Production of Documents was even more egregious. There, Defendants failed to even file any response to the requests for production, despite several letters from the counsel for the San Pedros asking for such responses. Following defendants' failure to respond, the San Pedros filed a motion to compel seeking an order from the court declaring that Terminix had waived its right to raise any objections to the requests for production and requiring Terminix to produce the requested documents. Although Defendants obtained four (4) extensions of time within which to respond to this motion to compel, they never filed any response, resulting in the court's granting the motion by default. Moreover, Defendants never informed Terminix about the existence of the second request for

4

production of documents much less the motion to compel production of those documents and the court's order compelling production.

When Defendants failed to take any steps to comply with yet another court Order, the San Pedros filed a motion for sanctions against Terminix. This motion resulted in the court's July 16, 1996 Scheduling Order granting all of the San Pedros' pending motions, and ordering Terminix to produce all the requested documents within thirty (30) days, warning that failure to do so would result in the entry of a default.

Four (4) business days before the court-ordered deadline for producing the documents required by the San Pedros' first and second requests for production, Defendants for the first time informed Terminix that the court had ordered them to produce the documents called for in those requests. Defendants however failed to inform Terminix of the history leading up to the court's Order, of any of the court's prior orders compelling production, and that this Order resulted from a motion for sanctions filed by the San Pedros. Based solely on Defendants' wrongful conduct in failing to inform Terminix of the required production until four (4) business days before the deadline, and without full knowledge of the extent of the Defendants' wrongful conduct and fraud, Terminix fired the Defendants and hired new counsel to represent them in the San Pedros Litigation. After a year and a half of battling to undo the damage caused by Defendants, new counsel for Terminix were ultimately successful in having the San Pedros' amended complaint dismissed based on Florida's Economic Loss Rule. However, the court permitted the San Pedros to file a second amended complaint alleging a cause of action for breach of contract. The San Pedros then filed an amended complaint alleging breach of contract, negligent breach of contract, and violations of the Florida Deceptive and Unfair Trade Practices Act. Based on Terminix's motion to dismiss, the court dismissed the claims for negligent breach of contract and violation of the Florida statute finding that the substance of those counts were the torts of negligence and fraud which were barred by the Florida Economic Loss Rule. The

5

court also found that the San Pedros' claims for breach of contract were not legally sufficient because they had failed to allege that Terminix had successor liability for the Atlantic Exterminating Company, the company with whom the San Pedros had contracted. However, the court again permitted the San Pedros leave to file an amended complaint to properly allege successor liability.

With the complaint reduced to one for breach of contract based on the successor liability of Terminix, and with numerous issues still outstanding regarding the production of documents by Terminix, the parties settled the litigation in November of 1998.

**B.    Defendants' Second Requests**

On April 12, 2000, the Defendants propounded to Terminix their Second Requests which are the subject of the instant Motion for Protective Order. Pursuant to an agreement between the parties, discovery was tolled pending the August 2, 2000 mediation of this matter. That mediation ended in an impasse. Consequently, the Motion for Protective Order filed by Terminix is timely and is now ripe.

Defendants' Second Requests seek three (3) categories of documents. First, Defendants seek "all documents" relating to the investigation of Terminix by the State of Florida which investigation was resolved in May of 1997. Secondly, Defendants seek documents relating to "any investigations of or claims against Terminix by any state or local government agencies outside of Florida for any alleged deceptive consumer practices during the past ten (10) years". Finally, Defendants seek all documents required to be produced or made available for inspection by Terminix in the San Pedros Litigation.

The first two categories of documents which defendants seek have no relevance to the issues presented in this litigation. However, these requests clearly call for the production of numerous documents protected by the attorney-client privilege and/or work product doctrine. Pursuant to S.D. Fla. L.R. 26.1.G.6(b), in order to properly respond to these requests for production Terminix is required to prepare a detailed

6

privilege log enumerating each document as to which it claims privilege.   Under circumstances such as these where the documents called for are numerous and are clearly not relevant to the issues, requiring Terminix to prepare such a privilege log imposes on it undue burden and expense.   With their third category of requested documents, defendants are seeking to require Terminix to produce the hundreds of thousands of irrelevant and privileged documents which the court ordered them to produce in the San Pedros Litigation.   Requiring Terminix to produce these documents would recreate for Terminix the very burden and problems which Defendants' wrongful conduct created in the San Pedros Litigation and which resulted in Terminix's having to settle the case for more than it was worth.

## III. ARGUMENT

### A.   Law Relating to Protective Orders

Discovery and motions for Protective Orders are governed by Rule 26 of the Federal Rules of Civil Procedure.   Under that Rule parties may seek:

> discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of another party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.   The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).   Although relevance for discovery purposes is liberally construed, the trial court is given wide discretion in setting limits on discovery to protect a party from annoyance, embarrassment, oppression and undue burden or expense. Farnsworth v. Proctor and Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985).   In fact, Fed. R. Civ. P. 26(c) provides that:

7

> Upon motion by a party or by the person from whom
> discovery is sought, accompanied by a certification that the
> movant has in good faith conferred or attempted to confer
> with other affected parties in an effort to resolve the dispute
> without court action, and for good cause shown, the court in
> which the action is pending . . . may make any order which
> justice requires to protect a party or person from annoyance,
> embarrassment, oppression, or undue burden or expenses. .
> . .

Under this Rule if the court determines that good cause exists, then it can determine
that the discovery should not be had or that the discovery be had only in a certain
manner.

As the Supreme Court has noted, it is clear from experience that pretrial
discovery has the significant potential for abuse. Seattle Times Co. v. Rhineheart, 467
U.S. 20, 34 (1984). Thus, the Court has stated that Rule 26(c) is an integral part of
Rule 26:

> Rule 26, however, must be viewed in its entirety. Liberal
> discovery is provided for the sole purpose of assisting in the
> preparation and trial, or the settlement, of litigated disputes.
> Because of the liberality of pretrial discovery permitted by
> Rule 26(b)(1), it is necessary for the trial court to have the
> authority to issue protective orders conferred by Rule 26(c).

467 U.S. at 34.

## B.    The Documents Sought are not Relevant

As set forth above, two of the categories of documents sought by Defendants in
their Second Requests are documents relating to any investigation of Terminix by the
State of Florida or by any state or local government agency outside of Florida for any
alleged deceptive consumer practices. Clearly, the substance of any investigation of
Terminix by any governmental agency has nothing to do with whether Defendants
committed malpractice and fraud in connection with their representation of Terminix in
the San Pedros Litigation. Nor can Defendants contend that these documents are
relevant even to the underlying San Pedros Litigation itself. As set forth above, Judge
Gonzalez ultimately determined in June of 1998 that the San Pedros' only viable cause

8

of action against Terminix was for breach of contract, assuming the San Pedros could establish successor liability. Whether Terminix was investigated by various state or local governments for alleged deceptive consumer practices before, during or after the San Pedros Litigation, is not relevant to whether Terminix breached its contract with the San Pedros. Nor can Defendants contend that the investigation by the State of Florida is what caused Terminix to settle the San Pedros Litigation for more than it was actually worth. Defendants' Second Requests acknowledge that the investigation of Terminix by the State of Florida was resolved in May of 1997. (See Requests numbered 1-3.) However, the San Pedros Litigation was not settled until November of 1998, a year and a half after the State of Florida's investigation of Terminix was resolved. Therefore, that investigation has no relevance to the reasons underlying Terminix's settlement of the San Pedros Litigation.

The final category of documents requested by Defendants – all documents Terminix was required to produce or make available for inspection in the San Pedros Litigation – highlights the vexatiousness of Defendants' requests. Many of Terminix's allegations of wrongdoing against Defendants revolve around their mishandling of the San Pedros' document requests in the underlying litigation. Defendants' failure to move to dismiss the San Pedros' complaint, failure to oppose the amended complaint, failure to respond to document requests, failure to respond to motions to compel, failure to take any steps to comply with orders compelling production and/or failure to notify Terminix of the pending requests, motions and orders resulted in the court ordering Terminix to produce hundreds of thousands of documents which had no relevance to a breach of contract claim by the San Pedros, and many of which were protected by the attorney-client privilege and/or work product doctrine. Indeed, one of the reasons Terminix settled the San Pedros Litigation for more than it was worth was to avoid having to produce privileged documents relating to numerous other pieces of litigation, the production of which could have caused serious consequences in those other lawsuits.

9

Because Defendants have been sued for malpractice and fraud in connection with their allowing court orders to be entered against Terminix compelling production of these documents does not somehow make those documents relevant in this litigation.

## C.    A Protective Order is Appropriate Under the Circumstances Presented Here

As set forth above, Terminix is a large company that does business throughout the United States. Among other things, Defendants are seeking production of "any documents" related to all lawsuits against Terminix for the last ten (10) years which involved any allegations of negligence and/or fraud, along with all documents produced in any such lawsuits.    Moreover, Defendants are seeking production of the same documents from all ServiceMaster companies, which include companies that perform lawn service, maid service, health services, etc.    Clearly, these requests seek the production of hundreds of thousands of documents, including privileged communications relating to those lawsuits.    Requiring Terminix to produce these massive amounts of irrelevant documents would subject it to annoyance, oppression, undue burden, and undue expense.  This is particularly true in light of Defendants' thinly veiled motive in serving their Second Requests.  Defendants know that their wrongful conduct in the San Pedros Litigation resulted in the court ordering Terminix to produce hundreds of thousands of irrelevant documents, many of which were protected by the attorney-client privilege and/or work product doctrine.  Defendants further know that one of the reasons Terminix settled the San Pedros Litigation was to avoid the burden and expense of producing voluminous documents pursuant to those court orders.    Yet Defendants seek here to take advantage of their own wrongful conduct by saddling Terminix with the very burden which caused it damage in the first instance.

Moreover, even requiring Terminix to file responses to Defendants' Second Requests would impose upon Terminix substantial undue burden and expense.    In addition to seeking documents relating to all lawsuits against Terminix and its related

10

entities, Defendants also seek "all documents" relating to investigations of or claims against Terminix by the State of Florida or by any state or local government agency outside the state of Florida, requests which clearly encompass documents protected by the attorney-client privilege and work product doctrine. Pursuant to S.D. Fla. L.R. 26.1.G.6(b), to respond to these requests Terminix would have to prepare a detailed privilege log identifying each such document by date, type, general subject matter, and other information sufficient to identify the document for a subpoena duces tecum. Requiring Terminix to prepare such an extensive privilege log given the irrelevant nature of the requests would in and of itself impose an undue burden and expense on Terminix and would be oppressive.

Under the foregoing circumstances, justice requires that this Court enter an order protecting Terminix from the annoyance, oppression, undue burden and expense involved in responding to defendants' Second Requests and in requiring Terminix to produce the documents requested.

## IV. CONCLUSION

For the foregoing reasons, this Court should enter a protective order relieving Terminix of its obligation to respond to Defendants' Second Request for Production of Documents, and further ordering that the discovery requested not be had.

Respectfully submitted,

MALMAN & ASSOCIATES
Attorneys for Plaintiff
12955 Biscayne Boulevard #202
North Miami, Florida 33181
(305) 891-0066

By: 
Jonathan H. Rosenthal
Florida Bar No. 126764

11

Of Counsel:

Mary L. Wolff
WOLFF ARDIS, P.C.
6055 Primacy Parkway, Suite 360
Memphis, Tennessee 38119
(901) 763-3336

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was sent via United States mail to Isaac

J. Mitrani, Esquire, Mitrani, Rynor, Adamsky, Macaulay & Zorrilla, P.A., 2200 Suntrust

International Center, One Southeast Third Avenue, Miami, Florida 33131 this 7th day of

August, 2000.

BY: _____
Jonathan H. Rosenthal

12