IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6108 CIV-HUCK-BROWN

THE TERMINIX INTERNATIONAL
COMPANY, L.P. and TERMINIX
INTERNATIONAL, INC.,

      Plaintiffs,

v.

BROAD AND CASSEL, P.A. and
MICHAEL P. BENNETT, individually,

      Defendants.

_____/



## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Defendants Broad and Cassel, P.A. (hereinafter "Broad") and Michael P. Bennett (hereinafter "Bennett") hereby respond to the plaintiffs' motion for protective order.

> **REQUEST NO. 1: All documents relating to the investigation of Terminix by the State of Florida that resulted in a settlement between Terminix and the State in May 1997**
>
> **REQUEST NO. 2: All transcripts of hearings conducted by the State of Florida in connection with its investigation of Terminix that resulted in a settlement in May 1997**
>
> **REQUEST NO. 3: All documents relating to the settlement between Terminix and the State of Florida in May 1997**

The documents requested by Broad's and Bennett's requests number 1 through 3 are clearly relevant and discoverable in this case. During the time that the San Pedro v. Terminix action was pending, Terminix was the subject of an investigation by the State of Florida involving numerous allegedly fraudulent termite inspections or treatments conducted in Florida. According to published

Case No. 00-6108-CIV-HUCK-BROWN

news reports, the investigation was prompted by "hundreds of complaints about re-infestation" received by State agencies. [Sun-Sentinel, May 1, 1997, attached hereto as part of composite Exhibit A]. As part of the settlement, Terminix was reported to have offered refunds or free reinspections to 5,300 Florida customers, as well as paying $200,000 in investigative costs to the State. [Id.; The Florida Times-Union, May 1, 1997; Orlando Sentinel, May 1, 1997, attached hereto as part of Composit Exhibit A].

Obviously, the pendency of the investigation by Florida officials provided a backdrop to the San Pedro litigation which may well have influenced Terminix's litigation and settlement strategy in that case. Robert Josefsberg, one of the attorneys retained by Terminix to represent it in the San Pedro case after Broad and Bennett were discharged, was also representing Terminix in connection with the State investigation. [See Plaintiffs' Objections of Robert C. Josefsberg to Subpoena Duces Tecum Without Deposition, p. 3, Exhibit B hereto].

Additionally, during the time period that Broad and Bennett were representing Terminix in the San Pedro litigation, the Florida investigation, along with investigations and class actions pending in other states, had explicitly been raised by the San Pedros as a factor in their settlement proposal. In a December 22, 1995 letter to Terminix general counsel W. Barton Mallory III, Bennett reported on an unsuccessful mediation conference the week previously, and stated that the San Pedros were demanding $1,000,000. [Letter attached as Exhibit C hereto]. The San Pedros' counsel had "mentioned that he has been approached by other attorneys from California, Georgia, and Texas who want to form a nationwide class action against Terminix." At that conference, the San Pedros' lawyer "stated also that he is aware of an Attorney General's criminal investigation as to Terminix's

activities within the state of Florida, and that he is providing the Attorney General with some of the information he has discovered. Additionally, he is aware of the consent judgment entered in the State of Kentucky regarding Terminix's activity in that state." Id.

It is noteworthy that the settlement agreement between Terminix and the San Pedros contains a confidentiality clause, inserted at Terminix's request, thus effectively silencing the San Pedros and their attorney. Terminix has refused to produce the settlement agreement with the San Pedros, and with other similarly-situated claimants, citing those very confidentiality clauses. [See Terminix's Response to Defendants First Request for Production, pp. 1-3, attached as Exhibit D hereto].[1]

The Florida investigation and settlement were ongoing at the same time as the San Pedro litigation was pending. Terminix was represented by Mr. Josefsberg in both the San Pedro case and the state investigatory proceedings. The San Pedros had explicitly injected the state investigation as a factor in the settlement negotiations in the San Pedro v. Terminix case. Given those facts, it is highly likely that the Florida investigation, and information that had or might have been disclosed about Terminix as a result of that investigation or as a result of a trial in the San Pedro case, may have affected Terminix's decision to settle the San Pedro case.

While the settlement between Terminix and the State of Florida was reached in May 1997, the state's scrutiny of Terminix's Florida operations was not over. According to published news reports, the state was continuing to monitor Terminix's performance of re-treatments mandated by

---

[1]     Such confidentiality clauses are not a valid basis for a discovery objection. See Maris Distrib. Co v. Anheuser-Busch, Inc., 710 So.2d 1022, 1025 (Fla. 1st DCA 1998); Scott v. Nelson, 697 So.2d 1300, 1300 (Fla. 1st DCA 1997); Smith v. Bank of the Keys, 687 So.2d 895, 896 (Fla. 3d DCA 1997).

Case No. 00-6108-CIV-HUCK-BROWN

the settlement, and Terminix was subject to a $10,000 fine for each state follow-up inspection that indicated improper treatment. [Orlando Sentinel, May 1, 1997, part of Composite Exhibit A; (Daytona Beach) News Journal, May 1, 1997, part of Composite Exhibit A]. Terminix's performance under the settlement agreement with the State of Florida was thus only begun as of May 1997.

Information concerning the State of Florida's investigation of and the resulting settlement with Terminix is therefore highly relevant to the present case. It is Terminix's position that Broad's and Bennett's actions "resulted in Terminix's having to settle the [San Pedro] case for more than it was worth." [Terminix's Motion for Protective Order, p. 7]. Indeed, Terminix concedes that it was in part to avoid the necessity of producing documents concerning Florida's and other governmental investigations that it settled with the San Pedros. Id. Broad and Bennett are entitled to discover whether the documents related to the Florida investigation, if disclosed in the San Pedro case, would have materially harmed Terminix's position in that case. Without such discovery, it will be impossible for Broad and Bennett to defend against Terminix's claim that it was forced into an excessive settlement.

The documents relating to the State of Florida's investigation of Terminix are, as Terminix has disclosed in response to other discovery in this case, in the possession of Terminix's attorney Robert Josefsberg. [See Plaintiffs' Objection of Robert C. Josefsberg to Subpoena Duces Tecum, Exhibit B]. Therefore no undue burden would be involved in producing those documents. Whether or not certain of those documents are privileged is a matter that can only be addressed after Terminix has filed a proper response to the request, including the required privilege log. It is certain, however,

4

Case No. 00-6108-CIV-HUCK-BROWN

that there are many such documents that are not covered by any privilege and which are relevant and discoverable in this case.

### REQUEST NO. 4:  All documents relating to any investigations of or claims against Terminix by any state or local government agencies outside of Florida for any alleged deceptive consumer practices during the past ten years

The documents which Broad and Bennett have requested in their second request for production are clearly relevant to the issues raised by this malpractice claim.  Terminix asserts in its motion for protective order that "one of the reasons Terminix settled the San Pedro Litigation for more than it was worth was to avoid having to produce privileged documents relating to numerous other pieces of litigation, the production of which could have caused serious consequences in those other lawsuits." [Terminix's Motion for Protective Order, p. 9].  Broad and Bennett are entitled to explore that contention through discovery, including discovery of documents related to other governmental investigations or lawsuits in which Terminix was involved.

Contrary to Terminix's assertion in its motion for protective order, Broad and Bennett have not requested documents relating to "all ServiceMaster companies, which include companies that perform lawn service, maid service, health services, etc." [Terminix's Motion for Protective Order, p. 10].  Rather, the defendants' second request for production is directly only to the plaintiffs, Terminix International Company, L.P. and Terminix International, Inc., and defines the entities to whom the request is directed as "Terminix International Company, L.P. or Terminix International, Inc. and any directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of Terminix International Company, L.P. or Terminix International, Inc."

5

Case No. 00-6108-CIV-HUCK-BROWN

[Defendants' Second Request for Production of Documents, p. 1, attached as exh. A to Terminix's Motion for Protective Order]. Broad's and Bennett's request is thus tailored to reach only governmental investigations of the corporate plaintiffs, not their parent or affiliated companies that are not involved in the pest-control business.

As stated in the previous section of this memorandum of law, the issue of other pending governmental investigations of Terminix that were ongoing or contemplated at that time of the <u>San Pedro</u> case had been injected into that case by the San Pedros, and was being used by the San Pedros as part of their settlement strategy. Since the major item of damage being sought by Terminix in the present malpractice case is the allegedly excessive settlement amount Terminix paid to the San Pedros, any information that would tend to demonstrate the effectiveness or ineffectiveness of the San Pedros' settlement position is of the utmost relevancy. It may well be that one reason Terminix elected to settle rather than try the <u>San Pedro</u> case was its concern that the San Pedros would cooperate with government investigators or with consumer advocates or lawyers who were assisting those investigations in Florida and elsewhere. The documents requested by Broad and Bennett may potentially show that Terminix's decision to settle the <u>San Pedro</u> case was wholly unrelated to any conduct of Bennett and Broad, but was a business decision on the part of Terminix to attempt to avert any further scrutiny of its business operations by the government investigators, consumer advocates or the press.

Press accounts from before and during the time of the <u>San Pedro</u> litigation indicated that Terminix had been the subject of governmental and negative media exposure in Connecticut, Kentucky, Missouri, Colorado, Indiana, New Jersey and Washington, D.C. [See Composite Exhibit

6

Case No. 00-6108-CIV-HUCK-BROWN

E hereto]. It is reasonable to assume that a desire to avoid further such scrutiny and publicity played a role in Terminix's decision to settle with the San Pedros and obtain their agreement to keep the facts of their claim confidential. Broad and Bennett are entitled to discovery with respect to this defense, including discovery regarding governmental investigations of Terminix.

> **REQUEST NO. 5: All documents that you produced to or made available for inspection by the plaintiffs in the case of *San Pedro v. Terminix*, Case No. 95-8204-CIV-Gonzalez, whether in response to discovery requests, in compliance with court orders, or by agreement of the parties**

Contrary to what Terminix asserts in its motion, Broad and Bennett have not duplicated the San Pedros' discovery requests in this case, and are not "seeking to require Terminix to produce the hundreds of thousands of irrelevant and privileged documents which the court ordered them to produce in the San Pedros Litigation." [Terminix's Motion for Protective Order, p. 7]. Rather, Broad and Bennett have requested only those "documents that [Terminix] produced or made available for inspection" in the San Pedro case. [Defendants Second Request for Production, para. 5]. That is, what Broad and Bennett seek is only what Terminix *actually* produced or made available for inspection, not everything Terminix was requested or ordered to produce. Because of the limited nature of that request, it should entail no undue expense or burden the part of Terminix, since the requested documents have already been compiled or identified in the previous litigation.

Moreover, the record of the San Pedro case suggests that the number of documents Terminix in fact produced in that litigation was relatively small. There is no indication in the record that Terminix ever actually produced or made available "hundreds of thousands" of documents. Indeed,

7

Case No. 00-6108-CIV-HUCK-BROWN

at the time the <u>San Pedro</u> case was settled, Terminix had apparently never produced the vast majority of the documents which Judge Gonzalez had previously ordered produced. This is indicated by the fact that on June 12, 1997,[2] the San Pedros filed a motion to compel Terminix's response to the San Pedros' first and second requests for production of documents, asserting that Terminix had never produced the majority of the documents requested. [See Exhibit F hereto]. That motion was denied by Judge Gonzalez on January 22, 1998, in the same order in which the Court set aside the default against Terminix and granted Terminix's motion for summary judgment on the San Pedros' tort claims. [See Exhibit G hereto]. That motion was never renewed by the San Pedros, and the <u>San Pedro</u> case was settled at mediation on November 17, 1998. It thus appears that at the time of the settlement, Terminix had not a produced any voluminous amount of documents, and was no longer under any obligation to produce those documents. Terminix's argument that the production of the documents described in request number 5 would be unduly burdensome is not borne out by the record in the <u>San Pedro</u> case.

At any rate, no matter how voluminous the requested documents may be, they are nonetheless discoverable in this case. According to Terminix, "one of the reasons Terminix settled the San Pedros Litigation was to avoid the burden and expense of producing voluminous documents pursuant to those court orders." [Terminix's Motion for Protective Order, p. 10]. Broad and Bennett are entitled to test this assertion through discovery. Regardless of whether or not the documents produced by Terminix in the <u>San Pedro</u> case were relevant to *that* case, those documents clearly are

---

[2]        This was almost a year after Broad and Bennett had been discharged by Terminix.

Case No. 00-6108-CIV-HUCK-BROWN

relevant to Termnix's allegations of negligence in *this* case. Without the requested documents,

Broad and Bennett will be unable to defend against Terminix's claim that they negligently exposed

Terminix to improper discovery in the underlying case.

## LEGAL DISCUSSION

Rule 26 provides, in part:

> Parties may obtain discovery regarding any matter, not privileged,
> which is relevant to the subject matter involved in the pending action,
> whether it relates to the claim or defense of the party seeking
> discovery or to the claim or defense of any other party.

Fed. R. Civ. P. 26(b)(1). The discovery rules are to be "broadly and liberally construed." Burns v.

Thiokol Chem. Corp., 483 F.2d 300, 304 (5th Cir. 1973) (citing Hickman v. Taylor, 329 U.S. 495

(1947)). "[O]pen disclosure of all potentially relevant information is the keynote of the Federal

Discovery Rules." Id. at 307. In particular, the concept of "relevancy" is to be broadly construed

for discovery purposes. Roseman v. Sports and Recreation, 165 F.R.D. 108, 110 (M.D. Fla. 1996).

Fairness dictates that both sides have access to relevant information in the possession of each

other. As stated by the Supreme Court:

> Mutual knowledge of all the relevant facts gathered by both parties is
> essential to proper litigation. To that end, either party may compel
> the other to disgorge whatever facts he has in his possession.

Hickman v. Taylor, 329 U.S. at 507; also Rozier v. Ford Motor Co., 573 F.2d 1332, 1345-46 (5th

Cir. 1978) (citing Hickman).

In this case, Terminix has alleged that Broad's and Bennett's conduct caused Terminix to

Case No. 00-6108-CIV-HUCK-BROWN

settle the San Pedro case for an excessive sum. Clearly, the pendency of governmental investigations

at the time of the San Pedro litigation may have been a factor in inducing Terminix to settle that case,

rather than try it before a jury with possible attendant negative publicity. Particularly where the San

Pedros had explicitly stated that if the case were not settled they may contact governmental

investigators regarding their claim, the scope and content of the Florida and other governmental

investigations is relevant to the issue of what in fact caused Terminix to settle the San Pedro case.

Broad and Bennett are entitled to attempt to prove that factors beyond and unrelated to their handling

of the San Pedro litigation influenced Terminix's settlement decision, and are certainly entitled to

discovery of documents that may constitute, or lead to, admissible evidence in support of that

defense.

Similarly, with respect to Broad's and Bennett's discovery of documents produced or made

available by Terminix in the San Pedro case, the only way for Broad and Bennett to defend against

Terminix's claim in this case is by obtaining the documents that Terminix contends forced it to settle

the San Pedro case for an excessive sum. The documents produced by Terminix in the San Pedro

case are thus critical both to Terminix's claim and Broad's and Bennett's defense to that claim.


## CONCLUSION

The documents sought by the defendants in their second request for production are relevant

to the issues raised by the claims and defenses in this case. Broad and Bennett therefore request that

the Court deny Terminix's motion for protective order.

10

Case No. 00-6108-CIV-HUCK-BROWN

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served by first-class U.S. Mail this **21** day of
_Aug._, 2000, upon the following:

Myles H. Malman, Esq.
Malman & Associates
12955 Biscayne Blvd., Ste. 202
N. Miami FL 33181
Attorneys for Plaintiffs

Mary L. Wolff, Esq.
Wolff Ardis, P.C.
6055 Primacy Pkwy., Ste. 360
Memphis TN 38119
Attorneys for Plaintiffs

MITRANI, RYNOR, ADAMSKY,
MACAULAY & ZORRILLA, P.A.
2200 SunTrust International Center
One Southeast Third Avenue
Miami, Florida 33131
(305) 358-0050; (305) 358-0550 fax

By: _____
PAMELA A. CHAMBERLIN
Fla. Bar No. 444006
Attorneys for Defendants
Broad and Cassel, P.A. and
Michael P. Bennett

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

5/1/97 SUNSENT 1D
5/1/97 Sun-Sentinel (Ft. Lauderdale Fla.) 1D
1997 WL 3100656

Sun-Sentinel  Ft. Lauderdale
Copyright 1997

Thursday, May 1, 1997

BUSINESS

50,000 BUGGED CUSTOMERS GET DEAL   EXTERMINATOR ACCUSED OF POOR
SERVICE OFFERS
REFUND OR FREE TERMITE WORK
ROBIN FIELDS Staff Writer

The state's largest pest exterminator agreed Wednesday to
give refunds or free termite treatments to as many as 50,000
Florida customers whose homes were improperly serviced within the
past four years.

The settlement with Terminix International Co. Limited
Partnership ends a two-year investigation by the state Attorney
General's Office and the Department of Agriculture and Consumer
Services. The probe was triggered when the agencies received
hundreds of complaints about re-infestation.

"We found that as many as 25 percent of the holes drilled for
chemical injection were in effect dummy holes with no chemicals
applied," Florida Attorney General Bob Butterworth said. "We also
found supposedly treated areas where the company had drilled no
holes at all."

Assistant Attorney General Robert Buchner said the agreement
may cover as many as 50,000 customers whose homes were fumigated by
nine Terminix branch offices in Miami, Plantation, Port St. Lucie,
Deland, Orlando, Longwood and Jacksonville.

Norman Goldenberger, Terminix's vice president for
governmental affairs in Miami, put the number at less than 6,000 _
not many, he said, considering that the Memphis-based chain has 42
Florida offices and about 250,000 clients statewide.

EXHIBIT A

Goldenberger said Terminix agreed to the settlement to avoid
a drawn-out, counter-productive court battle.

"We have a responsibility to these people," Goldenberger
said. "We thought long and hard about fighting this thing, but we
concluded our customers would be better served by this agreement."

In a similar case brought by the Kentucky Attorney General's
Office in 1994, Terminix also denied the allegations, but settled
by paying a $200,000 fine and $750,000 in consumer refunds.

Terminix will inspect all homes treated by the nine
agreed-upon offices since 1993. If the company determines a home
did not receive adequate service, the customer can choose between a
refund or free treatment.

State inspectors will double-check at random 10 percent of
the homes Terminix deems properly treated. If agency officials
discover problems, the company will be subject to fines of $10,000
per home. Terminix also has agreed to pay the state $200,000 to
cover investigative costs.

Consumers with questions about the settlement can call
Terminix's toll-free number, 800-358-2101.

State regulators said the Terminix settlement shows their
intent to address widespread problems in the pest-control business.
The Attorney General's office is still investigating Orlando-based
All America termite and Pest Control, a licensed business of Sears,
Roebuck & Co.

"This settlement could be a wake-up call for the whole
industry," Buchner said.

---- INDEX REFERENCES ----

EDITION:        FINAL

Word Count: 403
5/1/97 SUNSENT 1D
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works
5/1/97 FLA-TU B6
5/1/97 Fla. Times Union (Jacksonville) B6
1997 WL 10565439

The Florida Times-Union
Copyright 1997

Thursday, May 1, 1997

METRO

Terminix, Florida reach settlement
Asssociated Press

TALLAHASSEE -- Terminix International has agreed to provide
refunds or termite retreatments in seven Florida cities after
state investigators found some consumers had been cheated.

The investigation involved nine Terminix offices in DeLand,
Jacksonville, Longwood, Miami, Orlando, Plantation and Port St.
Lucie.

"We found that as many as 25 percent of the holes drilled for
chemical injection were in effect dummy holes with no chemicals
applied," Attorney General Bob Butterworth said. "We also found
supposedly treated areas where the company had drilled no holes
at all."

The Memphis, Tenn.-based extermination company issued a
statement saying about 5,300 customers would be affected.
Agriculture Commissioner Bob Crawford's office estimated the
number could be up to 50,000.

Customers covered by the agreement will be contacted in writing.
People seeking more information can call the Terminix consumer
hot line at 1-800-358-2101.

---- INDEX REFERENCES ----

KEY WORDS:       FRAUD; FLORIDA
EDITION:       GEORGIA
Word Count: 137
5/1/97 FLA-TU B6
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

5/1/97 ORLDSTL D1
5/1/97 Orlando Sentinel D1
1997 WL 2772418

Orlando Sentinel
Copyright 1997

Thursday, May 1, 1997

LOCAL & STATE

STATE SAYS TERMITE TREATMENTS WERE BOGUS TERMINIX MAY MAKE
REFUNDS TO
HOMEOWNERS
Jerry Jackson of The Sentinel Staff

When Luis and Jenifer Barrosa finished repairing the termite
damage to their cedar home in Orlando, they were out $20,000.

They settled out of court to recoup some of that money from the
pest-control company that failed to keep the wood-chomping critters
at bay.

Now thousands of Florida homeowners in the same fix as the
Barrosas may be owed refunds from that company - Terminix
International - as the result of a settlement announced Wednesday
by state officials.

Moreover, homeowners now know why repeated termite treatments
of their homes often failed: Investigators found that, in many
cases, the chemical treatments were bogus.

The extermination company agreed to the settlement with
Attorney General Bob Butterworth and Agriculture Commissioner Bob
Crawford.

"Our joint investigation revealed that, in many instances,
Terminix failed to fully treat properties for subterranean termites
despite its promise to lay down a complete protective barrier,"
Crawford said in a written statement.

The investigation involved nine Terminix offices that had
generated a high number of complaints from seven cities: Orlando,

Longwood, DeLand, Jacksonville, Miami, Plantation and Port St.
Lucie.

"We found that as many as 25 percent of the holes drilled for
chemical injection were, in effect, dummy holes with no chemicals
applied," Butterworth said. "We also found supposedly treated areas
where the company had drilled no holes at all."

Terminix, based in Memphis, Tenn., admitted no wrongdoing but
agreed to offer reinspections to customers who purchased termite
protection from the nine offices within the past four years.
There was some confusion about the number of affected homeowners:
The state initially said as many as 50,000, but when Terminix
disputed the figure, the state said it had obtained its information
from the company.

"It's between 5,300 to 5,400," said Norman Goldenberg, vice
president for governmental relations. "We cooperated fully and
opened our books for them. These are our existing customers, and
we're going to take care of them."

State officials said they also are investigating the
termite-control services of Sears, Roebuck and Co., the giant
retailer.

Terminix customers covered by Wednesday's agreement will be
contacted in writing. People seeking more information can call
Terminix toll-free at 1-800-358-2101.

If reinspections show the properties have been improperly
treated, Termimix will let consumers choose refunds or a second
retreatment at no charge.

The company also will repair or replace materials damaged by
termites on improperly treated structures.

Terminix will pay the state $200,000 to cover investigative
expenses and the cost of hiring independent contractors to do
follow-up inspections.

The contractors will be trained and supervised by the
Department of Agriculture and Consumer Services to check 10 percent
of the properties Terminix reinspects.

The company would be fined $10,000 for each follow-up

inspection that indicates improper treatment.

Homeowners in the Orlando area who have had nightmarish battles with termites said the settlement appears to be a good start to a massive problem.

"I think this is just the tip of the iceberg," said Tom Andre, a southwest Orange County homeowner who has had Terminix treat his property nine times in the past three years.

Terminix said the Orlando district accounted for the single largest group of affected homeowners with repeat problems - about 2,300, three times more than the Jacksonville area.

"The Orlando area has a pretty bad problem with subterranean termites," Goldenberg said.
SEQN: 71201299

---- INDEX REFERENCES ----

REGION:          Florida; United States; North America (FL US NME)

EDITION:        METRO

Word Count: 552
5/1/97 ORLDSTL D1
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

5/1/97 BSX-NWSJ A1
5/1/97 News J. (Daytona Beach Fla.) A1
1997 WL 9359945

News Journal
Copyright News Journal 1997

Thursday, May 1, 1997

### Terminix to reinspect termite treatments
By Krys Fluker

Tallahassee, FL, US, South Atlantic --

TALLAHASSEE--A pest-control company has agreed to reinspect homes it treated for termites over the last four years under an agreement with state regulators.

State Agricultural Commissioner Bob Crawford announced the settlement with the Terminix International Company on Wednesday. It covers Terminix offices in nine Florida cities, including one in DeLand which has been closed.

The agreement covers 178 customers in Volusia County, who are now being serviced out of the company's Ormond Beach office, according to Norm Goldenberg, vice president of governmental and public affairs.

Cities with a high number of complaints include Jacksonville, Orlando, Longwood, Miami, Plantation and Port St. Lucie.

Terminix issued a statement saying about 5,300 customers would be affected. Crawford's office estimated the number could he as high as 50,000.

The company was the target of a joint investigation by the state Department of Agriculture and the Attorney General. The investigation was triggered by consumer complaints about termite damage in homes that were supposedly termite-proofed by Terminix.

The treatment involves drilling holes in the foundation of home so that chemicals can be inserted.

"We found that as many as 25 percent of the holes drilled for chemical injection were in effect dummy holes with no chemicals applied," Attorney General Bob Butterworth said.

The investigation also found supposedly treated areas where the company had drilled no holes at all, he said.

"Our joint investigation revealed that in many in. stances, Terminix failed to fully treat properties for subterranean termites despite its promise to lay down a complete protective barrier," Crawford said.

That's a contention Terminix authorities contest vigorously. Goldenberg says the treatment is often hard to detect after it's been done, and that Terminix's own officials had to search long and hard before ascertaining that some buildings had been properly treated.

"We have the strongest guarantee in the industry, and we're pretty proud of it," Goldenberg said. "But we thought the best thing we could do would be to get this over with."

Terminix has agreed to re-inspect any of their customers who bought termite protection from April 1993 to April 1997. If the inspection shows improper or incomplete treatment, customers have the option of canceling their contract--for a full refund--or having their homes re-treated at no charge.

If the homes have been damaged by termites in the interim, Terminix will pay to repair the damage. That offer is already included in the warranty given to any Terminix customer, company officials say.

The company also will hire independent contractors who will take another look at 10 percent of the properties Terminix has re-inspected. For any home that is still improperly treated, Terminix will pay a $10,000 penalty.

The company will also pay $200,000 to the state to cover the cost of the investigation.

Under the agreement, Terminix is supposed to contact all customers covered by the agreement with the state.

Consumers can call the company with questions at 1-800-358-2101.

They can also contact Crawford's office at 1-800-HELP-FLA (435-7352).

---- INDEX REFERENCES ----

KEY WORDS:     PEST CONTROL; AGREEMENTS; INVESTIGATIONS; GOVERNMENT AGENCIES     ; INSPECTIONS; TERMINIX INTERNATIONAL INC; DEPARTMENT OF          AGRICULTURE-FLORIDA

SIC:          6794; 7342; 9641

REGION:       Florida (FL)

Word Count: 500
5/1/97 BSX-NWSJ A1
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

7/2/96 SUNSENT 1D
7/2/96 Sun-Sentinel (Ft. Lauderdale Fla.) 1D
1996 WL 10672610
(Publication page references are not available for this document.)

Sun-Sentinel  Ft. Lauderdale
Copyright 1996

Tuesday, July 2, 1996

BUSINESS

## TWO PEST CONTROL FIRMS ARE UNDER INVESTIGATION
ROBIN FIELDS Staff Writer  Business Writer L.A. Lorek contributed to this report.

Bernard Gartner hired Terminix International to tent his Fort Lauderdale home to rid it of termites.

The bugs came back.

Terminix, however, did not for more than three months, even though Gartner paid an annual fee to guarantee the company would re-treat his home if the problem recurred.

Gartner had his home tented in 1990, with a five-year guarantee. When he saw termites in June of 1994, he started calling the company.

"I got the runaround," Gartner said. "We had this contract which they completely ignored. I'm still a litle teed off about it."

Complaints filed in the past two years by Gartner and up to 400 other disgruntled consumers have sparked an investigation by the state Attorney General's Office into two pest control companies.

The Attorney General's Office also is investigating Orlando-based All America Termite and Pest Control, a licensed business of Sears, Roebuck & Co.

"The overall flavor of the complaints is that they had termite re-infestation after the treatment, and in many cases

experienced damages from termites," Assistant Attorney General
Robert Buchner said.

Buchner expects to complete his inquiry, started late last
year, in the next few weeks.

Norman Goldenberg, Terminix' vice president for government
affairs in Miami, said the company had cooperated with the state's
investigation by providing access to client files.

All America Termite and Pest Control also has cooperated
fully with the Attorney General's investigation, said Bob Case, the
company's vice president.

Both companies said that the numbers of complaints against
them were minimal compared with the number of termite treatments
that they have done.

All America Termite and Pest Control has offices in nine
states, primarily in the Southeast. In Florida, it has 60 offices
and does more than 15,000 termite treatments a year.

Memphis-based Terminix has 40 branch offices in Florida and
said it has about 200,000 customers in the state. The company would
not have grown so large if it did not back up its warranties,
Goldenberg said.

"We honor our warranties and whatever we do," he said. "If
the termites come back, Terminix comes back."

The scrutiny derives in part from problems Terminix
experienced in Kentucky, Buchner said. The Kentucky Attorney
General's Office accused the company of faking termite treatments,
of using diluted chemicals, of failing to honor guarantees and of
billing customers for work not done.

Terminix denied the allegations, but settled the case in 1994
by paying a $200,000 fine, re-treating some consumers' homes and
and establishing a $750,000 fund to pay refunds to others.

Florida officials have focused their investigation on three
regions: South Florida, the Orlando area and the Jacksonville area.

Officials at the state Bureau of Entomology and Pest Control
have looked at a sampling of termite treatments in each area.

"We are looking at various structures to determine the completeness of the treatment done," said Phillip Helseth, administrator of the Bureau of Entomology and Pest Control.

In a typical treatment, the pest control company drills holes in a foundation and injects chemicals to create a barrier between the ground and the building.

Business Writer L.A. Lorek contributed to this report.

---- INDEX REFERENCES ----

KEY WORDS:    TERMINIX INTERNATIONAL    ALL AMERICA TERMITE AND PEST CONTROL INVESTIGATION    ISSUE

EDITION:    ALL

Word Count: 516
7/2/96 SUNSENT 1D
END OF DOCUMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

THE TERMINIX INTERNATIONAL
COMPANY., L.P. and TERMINIX
INTERNATIONAL, INC.,

        Plaintiffs,

vs.                        No. 00-6108-CIV-ZLOCH

BROAD AND CASSEL, P.A. and
MICHAEL P. BENNETT, Individually,

        Defendants.

---

OBJECTION OF ROBERT C. JOSEFSBERG
TO SUBPOENA DUCES TECUM WITHOUT DEPOSITION

---

Pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), Robert C. Josefsberg ("Respondent") hereby objects to the inspection and/or copying of all materials designated in the subpoena duces tecum served upon him by the Defendants to the extent any such documents are in his possession. Respondent specifically responds as follows:

1.      Respondent objects to producing the documents requested in paragraph 1 on the grounds that the request is overly broad, burdensome, seeks documents not calculated to lead to the discovery of admissible evidence, seeks documents already in the possession of Defendants, and seeks documents already requested from the Plaintiffs pursuant to Fed. R. Civ. P. 34 and to which request Plaintiffs have already responded. Defendant Bennett, not Respondent, handled the San Pedro v. Terminix, Case No. 92-30589 (17th Jud. Cir., Broward County, Florida) ("San Pedros' state court case"), and therefore all documents relating to that litigation are in the

EXHIBIT B

. 1/.

possession, custody or control of Defendants. Further, Defendants have submitted this identical request to Plaintiffs seeking the exact same documents since Respondent represented Plaintiffs in <u>San Pedro v. Terminix</u>, Case No. 95-8204-CIV (S.D. Fla.) (the "San Pedros' litigation"), thus this request is submitted to evade Fed. R. Civ P. 34 and is duplicative.

2.      Respondent objects to producing the documents requested in paragraph 2 of the subpoena on the grounds that the request is burdensome, seeks documents already in the possession of Defendants, and seeks documents already requested from the Plaintiffs pursuant to Fed. R. Civ. P. 34 and to which request Plaintiffs have already responded. Defendant Bennett, not Respondent, handled the San Pedros' state court case, and therefore all documents relating to that litigation are in the possession, custody or control of Defendants. Further, Defendants have submitted a request to Plaintiffs seeking the exact same documents sought by this request since Respondent represented Plaintiffs in San Pedros' litigation, thus this request is submitted to evade Fed. R. Civ P. 34 and is duplicative.

3.      Respondent objects to producing the documents requested in paragraph 3 of the subpoena on the grounds that the request is overly broad, burdensome, seeks documents not calculated to lead to the discovery of admissible evidence, seeks documents already in the possession of Defendants, and seeks documents already requested from the Plaintiffs pursuant to Fed. R. Civ. P. 34 and to which request Plaintiffs have already responded. Defendant Bennett, not Respondent, handled the San Pedros' state court case, and therefore all documents relating to that legal fees and expenses of that case are in the possession, custody or control of Defendants. Further, Defendants have submitted a request to Plaintiffs seeking the exact same documents sought by this request since Respondent represented Plaintiffs in San Pedros' litigation, thus this request is submitted to evade Fed. R. Civ P. 34 and is duplicative.

4.       Respondent objects to producing the documents requested in paragraph 4 of the subpoena on the grounds that the request is overly broad, burdensome, seeks documents not calculated to lead to the discovery of admissible evidence, seeks documents which Plaintiffs are contractually prohibited from producing and seeks documents already requested from the Plaintiffs pursuant to Fed. R. Civ. P. 34 and to which request Plaintiffs have already responded. Defendants have submitted a request to Plaintiffs seeking the exact same documents sought by this request, thus this request is submitted to evade Fed. R. Civ P. 34 and is duplicative.

5.       Respondent objects to producing the documents requested in paragraph 5 of the subpoena on the grounds that the request is overly broad, burdensome, seeks documents not calculated to lead to the discovery of admissible evidence, seeks documents protected by the attorney-client privilege and the work product doctrine, and seeks documents already requested from the Plaintiffs pursuant to Fed. R. Civ. P. 34. Defendants have submitted a request to Plaintiffs seeking the exact same documents sought by this request thus this request is submitted to evade Fed. R. Civ P. 34 and is duplicative. Respondent represented Terminix in connection with the investigation of Terminix by the State of Florida that resulted a settlement between Terminix and the State in May 1997, thus this request seeks correspondence with Terminix, memos and other documents containing legal advice provided to Terminix; discussions concerning legal theories and legal advice sought; and counsel's mental impressions, conclusions, opinions and legal theories concerning this matter and further seeks materials prepared in anticipation of litigation, all of which documents are protected by the attorney-client privilege and/or work product doctrine.

6.       Respondent has no such documents in his possession.

3

7.    Respondent objects to producing the documents requested in paragraph 7 of the subpoena on the grounds that the request is overly broad, burdensome, seeks documents not calculated to lead to the discovery of admissible evidence, seeks documents protected by the attorney-client privilege and the work product doctrine, and seeks documents already requested from the Plaintiffs pursuant to Fed. R. Civ. P. 34. Defendants have submitted a request to Plaintiffs seeking the exact same documents sought by this request thus this request is submitted to evade Fed. R. Civ P. 34 and is duplicative. Respondent represented Terminix in connection with the investigation of Terminix by the State of Florida that resulted a settlement between Terminix and the State in May 1997, thus this request seeks correspondence with Terminix, memos and other documents containing legal advice provided to Terminix; discussions concerning legal theories and legal advice sought; and counsel's mental impressions, conclusions, opinions and legal theories concerning this matter and further seeks materials prepared in anticipation of litigation, all of which documents are protected by the attorney-client privilege and/or work product doctrine.

8.    Respondent objects to producing the documents requested in paragraph 8 of the subpoena on the grounds that the request is overly broad, burdensome, seeks documents not calculated to lead to the discovery of admissible evidence, seeks documents protected by the attorney-client privilege and the work product doctrine, and seeks documents already requested from the Plaintiffs pursuant to Fed. R. Civ. P. 34. Defendants have submitted a request to Plaintiffs seeking the exact same documents sought by this request thus this request is submitted to evade Fed. R. Civ P. 34 and is duplicative. Respondent represented Terminix in connection with the investigation of Terminix by the State of Florida and any documents Respondent might have responsive to this paragraph would be in his possession as a result of that legal

4

representation, thus this request seeks correspondence with Terminix, memos and other documents containing legal advice provided to Terminix; discussions concerning legal theories and legal advice sought; and counsel's mental impressions, conclusions, opinions and legal theories concerning this matter and further seeks materials prepared in anticipation of litigation, all of which documents are protected by the attorney-client privilege and/or work product doctrine.

9.    Respondent objects to producing the documents requested in paragraph 9 of the subpoena on the grounds that the request is overly broad, burdensome, seeks documents not calculated to lead to the discovery of admissible evidence, and seeks documents already requested from the Plaintiffs pursuant to Fed. R. Civ. P. 34. Defendants have submitted a request to Plaintiffs seeking the exact same documents sought by this request thus this request is submitted to evade Fed. R. Civ P. 34 and is duplicative.

Respectfully submitted,

MALMAN & ASSOCIATES
Attorneys for Respondent
12955 Biscayne Boulevard #202
North Miami, Florida 33181
(305) 891-0066

By: _Myles H. Malman_ by npw
    Myles H. Malman
    Florida Bar No. 0776084

Of Counsel:

Mary L. Wolff
WOLFF ARDIS, P.C.
6055 Primacy Parkway, Suite 360
Memphis, Tennessee 38119
(901) 763-3336

5

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon:

        Isaac J. Mitrani
        Mitrani, Rynor, Adamsky, Macaulay & Zorrilla, P.A.
        2200 Suntrust International Center
        One Southeast Third Avenue
        Miami, FL 33131

via U.S. Mail, postage prepaid, this 27th day of April , 2000.

G:\TERMINIX\BENNETT\DISCOVER\OBJ TO SUBPOE DUCES TECUM JOSEFSBERG.wpd

6

# BROAD AND CASSEL

## ATTORNEYS AT LAW

MURRAY D. SHEAR, P.A.
MIKE SEGAL, P.A.
JEFFREY A. DEUTCH, P.A.
PATRICIA LEBOW, P.A.
C. KEN BISHOP, P.A.
ROBERT D. GATTON, P.A.
RICHARD B. MacFARLAND, P.A.
C. DAVID BROWN, II, P.A.
F. VERNON BENNETT
MARWIN S. CASSEL, P.A.
JAMES S. CASSEL, P.A.
CLIFFORD I. HERTZ, P.A.
ARVIN J. JAFFE, P.A.
M. STEPHEN TURNER, P.A.
RALPH C. DATILLIO, P.A.
DOUGLAS L. MANNHEIMER, P.A.
MARTIN R. PRESS, P.A.
MICHAEL A. DRIBIN, P.A.
ANTHONY W. PALMA, P.A.
ANDREW D. RAFKIN
CHARLES S. STRATTON, P.A.
JAMES E. SLATER, P.A.
WILLIAM C. PHILLIPPI, P.A.

ALAN S. LEDERMAN, P. A.
GABRIEL L. IMPERATO, P.A.
DAVID K. MILLER, P.A.
ROBERT T. ROSEN, P.A.
ANDREW COTZIN, P.A.
KELLY OVERSTREET JOHNSON, P.A.
RANDAL M. ALLGOOD, P.A.
JAMES J. WHEELER, P.A.
JEFFREY F. GORDON
ANDREW B. THOMAS, P.A.
MARK D. TUCKER
THEODORE C. TAUB, P.A.
PETER M. CARDILLO, P.A.
JACK R. ELLIOTT, P.A.
ALAN H. ARONSON, P.A.
VIRGINIA EASLEY JOHNSON, P.A.
JOSE I. ROJAS, P.A.
JOSE A. SANTOS, JR., P.A.
DONNA R. BLAUSTEIN
JAY ADAMS
DAWN LANKFORD BOWLING
STEVEN ELLISON
AMY S. SCHLOSSER

PAUL AIELLO
DEBORAH H. JOHNSON
KATHLEEN L. DEUTSCH
RONALD M. GACHÉ
RICHARD N. MILIAN
LENORE SCHILLER
JEFFREY J. SUTER
BARBARA del CASTILLO
MICHAEL R. KERCHER
ANNE NOVICK BRANAN
ROY S. KOBERT
NICHOLAS P. HANSEN
MICHAEL P. BENNETT
ANDREW L. McINTOSH
C. CHRISTOPHER KILLER
CARA LEE MACDONALD
RICHARD M. BENRUBI
GARY E. LEHMAN
DAVID J. POWERS
JONATHAN J. ELLIS
ANDREW A. REICH
KATHERINE CASTOR
JAY P. BROCK

ROBERT ALFERT, JR.
JILL A. BARON
ROBERT F. MALLETT
KEITH F. WHITE
EDGAR A. BENES
ERIC J. MATHESON
TAMARA CARMICHAEL
SCOT PATRICK O'BRIEN
PETER M. BERNHARDT
MELISSA J. FIELDS
LEIGH ANN MURVIN
LINDA C. FRAZIER
STEVE WASERSTEIN
MARIA C. MONTENEGRO
MICHAEL MANTHEI
STEVEN MICHAEL STAES
T. KEVIN TAYLOR
LESTER J. PERLING
HOWARD M. HUGHES
CARL S. ROSEN
JENNIFER STEWARD

SUITE 3000
MIAMI CENTER
201 South Biscayne Boulevard
MIAMI, FLORIDA 33131
(305) 373-9400
FAX (305) 373-9443

—

OF COUNSEL
SHEPARD BROAD
ALVIN CASSEL
NORMAN BROAD, P.A.
I. BURTON SPRAKER
WILLIAM M. ROWLAND, JR., P.A.
WANDA L. BROWN
ALAN M. GERLACH
HOWARD M. RUDOLPH
KENNETH EDELMAN
LOUIS S. QUINN, JR.
JOHN H. FISHER II
WILLIAM P. BURNS

Writer's Direct Line: 373-9462

December 22, 1995

**VIA FACSIMILE**

W. Barton Mallory, III, Esquire
Terminix International Company L.P.
860 Ridge Lake Boulevard
Memphis, Tennessee  38120

     Re:    San Pedro vs. Terminix
             Our File No. 17645.0006

Dear Bart:

       The mediation in the captioned matter took place on December 15, 1995.  At mediation, plaintiff's counsel read off a laundry list of approximately 30 items Terminix should consider in determining the settlement value of the case.  Thereafter, plaintiff demanded $1,000,000.00 to settle the case.

       The most significant of the numerous items that plaintiff's counsel mentioned were that he has been approached by other attorneys from California, Georgia, and Texas who want to form a nationwide class action against Terminix.  In fact, he has placed a deadline for settlement of January 1, 1996 or else he will cooperate with the other attorneys and provide information he has uncovered.

       With respect to the information he has uncovered, he indicated that he would not disclose most of the information at mediation.  He stated that he had spoken with some ex-Terminix employees who had described training sessions, during which they were placed in a room to watch videos unsupervised.  Apparently, the employees treated the learning session as a party and engaged in the consumption of alcohol and marijuana.

EXHIBIT C

W. Barton Mallory, III, Esquire
Terminix International Company L.P.
December 22, 1995
Page 2


      Plaintiff's counsel stated also that he is aware of an Attorney General's criminal investigation as to Terminix's activities within the state of Florida, and that he is providing the Attorney General with some of the information he has discovered. Additionally, he is aware of the consent judgment entered in the State of Kentucky regarding Terminix's activity in that state.

      The remaining points that plaintiff's counsel raised were very case specific and do not deal with any areas not covered in the status report's damages and liabilities sections. Because of the threats of the formation of a class action and a statement regarding the providing of information to the Attorney General's office, I wanted to bring this matter to your immediate attention. Please call me once you have had an opportunity to review this letter so that we can discuss what effect, if any, it has on how you want me to proceed.

      I look forward to hearing from you. Please call me if you have any questions or comments.

      Very truly yours,

      Michael P. Bennett

MPB/jrb

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

THE TERMINIX INTERNATIONAL
COMPANY., L.P. and TERMINIX
INTERNATIONAL, INC.,

        Plaintiffs,

vs.                         No. 00-6108-CIV-ZLOCH

BROAD AND CASSEL, P.A. and
MICHAEL P. BENNETT, Individually,

        Defendants.

---

## PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

    All documents identified in your answers to Defendants' First Set of Rule 26.1.G Interrogatories.

**RESPONSE:**

    With the exception of the Settlement Agreement identified in Interrogatory No. 6, the documents requested will be produced at a mutually convenient time and place. The Settlement Agreement entered into in <u>San Pedro v. Terminix</u>, Case No. 95-8204-CIV (S.D. Fla.) (the "San Pedros' litigation") contains a confidentiality provision and thus cannot be produced without the San Pedros' consent or unless ordered by the Court. Terminix is currently seeking the San Pedros' consent so that the agreement can be produced.

EXHIBIT D

**REQUEST NO. 2**:

All documents prepared, received, obtained, maintained, or used by you or your agents and attorneys in connection with the litigation, trial preparation, negotiation or settlement of the suits entitled <u>San Pedro v. Terminix</u>, Case no. 92-30589 (17th Jud. Cir., Broward County, Fla.) And <u>San Pedro v. Terminix</u>, Case No. 95-8204-CIV (S.D. Fla.).

**RESPONSE:**

Terminix objects to Request No. 2 on the grounds that it is overly broad, burdensome, seeks documents not calculated to lead to the discovery of admissible evidence and seeks documents already in the possession of defendants.  Defendants handled the <u>San Pedro v. Terminix</u>, Case No. 92-30589 (17th Jud. Cir., Broward County, Florida) ("San Pedros' state court case"), and therefore all documents relating to that litigation are in the possession, custody or control of defendants.  Without waiving these objections, Terminix will produce the documents identified in response to Interrogatory No. 7.  The Settlement Agreement entered into in the San Pedros' litigation contains a confidentiality provision and thus cannot be produced without the San Pedros' consent or unless ordered by the Court.  Terminix is currently seeking the San Pedros' consent so that the agreement can be produced.


**REQUEST NO. 3:**

All documents relating to Terminix's evaluation or determination of a reasonable settlement amount for the San Pedros' claim.

**RESPONSE:**

The requested documents will be produced at a mutually convenient time and place.

**REQUEST NO. 4**:

All documents reflecting legal fees and expenses incurred, billed and/or paid by Terminix

in connection with the aforementioned lawsuits filed by the San Pedros.

**RESPONSE:**

Terminix objects to Request No. 4 on the ground that it is overly broad, burdensome, and

seeks documents not reasonably calculated to lead to the discovery of admissible evidence and

seeks documents already in the possession of defendants.  Defendants handled the San Pedros'

state court case, and therefore all documents relating to the legal fees and expenses of that case

are in the possession, custody or control of defendants.  Without waiving these objections,

Terminix will produce the bills for legal services and expenses in the San Pedros litigation, as

well as evidence of payment of those bills.


**REQUEST NO. 5**:

Copies of any settlement agreements or releases entered into between you and any

persons relating to the settlement or compromise of any claims or lawsuits by such persons based

on your alleged breach or negligent performance of any residential contract substantially similar

to that on which the San Pedros' claims in the aforementioned lawsuits were based, which

settlement agreements or releases were entered into during the past 5 years.

**RESPONSE:**

Terminix objects to Request No. 5 on the ground that it is overly broad, burdensome,

seeks documents not likely to lead to the discovery of admissible evidence, and seeks documents

which Terminix is contractually prohibited from producing.

3

Respectfully submitted,

MALMAN & ASSOCIATES
Attorneys for Plaintiff
12955 Biscayne Boulevard #202
North Miami, Florida 33181
(305) 891-0066

By: *Myles H. Malman* *by MW*
    Myles H. Malman
    Florida Bar No. 0776084

Of Counsel:

Mary L. Wolff
WOLFF ARDIS, P.C.
6055 Primacy Parkway, Suite 360
Memphis, Tennessee  38119
(901) 763-3336

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon:

    Isaac J. Mitrani
    Mitrani, Rynor, Adamsky, Macaulay & Zorrilla, P.A.
    2200 SunTrust International Center
    One Southeast Third Avenue
    Miami, FL 33131

via U.S. Mail, postage prepaid, this 24th day of April 2000.

*Mary L. Wolff*

4

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

11/11/99 APWIRES 01:18:00
(Publication page references are not available for this document.)

Associated Press Newswires
Copyright 1999. The Associated Press. All Rights Reserved.

Thursday, November 11, 1999

Attorney General, state DEP to sue Terminix
By NATASHA GURAL
Associated Press Writer

HARTFORD, Conn. (AP) - The state plans to sue the nation's largest pest-control firm, seeking fines for more than 5,000 alleged violations of Connecticut environmental laws since 1995.

Attorney General Richard Blumenthal announced the lawsuit against Terminix Wednesday, but said the state has yet to file papers in Hartford Superior Court.

Alleged violations include misuse of pesticides, falsifying records on the use of pesticides and refusing access to state inspectors. The bulk of those violations took place between 1997 and 1998, Blumenthal said.

"Such flagrant, blatant abuses ought to bring serious and swift sanctions," Blumenthal said. "Our investigation was lengthy and intensive because these violations were extraordinary in scope and severity. Terminix must make amends, not just apologies, for its egregious, repeated lawlessness."

Steve Good, vice president of Memphis, Tenn.-based Terminix International Company L.P., called the lawsuit "political grandstanding." He said the number of alleged violations was exaggerated.

"The regulations by which we are governed are very ambiguous and general," Good said. He said Terminix refers to the state's interpretation of the laws as "secret interpretations."

Blumenthal noted that Terminix has paid fines for violations dating back to 1988. The company also has paid hundreds of thousands of dollars to settle pesticide-law cases in other states, including Massachusetts

EXHIBIT E

and New York.

Terminix's pesticide application at the Deep River home of Mary Russell and Jeffrey Mehler was one reason for the lawsuit, Blumenthal said. Terminix drilled holes in a basement slab, causing a break in a heating fuel line which leaked into the soil and groundwater.

Good admitted the company's error in that case, saying it was the lone case involving any contamination of soil or water.

The state is seeking a court order requiring Terminix to hire qualified consultants to investigate the contamination in Deep River and submit a cleanup plan.

In its lawsuit, the state is seeking fines of up to $5,000 per day per violation, and up to $25,000 per day for the violations in the Deep River case, Blumenthal said.

The Department of Environmental Protection in March revoked the company's licenses in North Haven, Trumbull and Waterbury because of violations. The company's South Windsor office was not cited.

The company has appealed the DEP citations. All four offices can continue to operate while the appeal is pending.

Earlier this month, the commissioner of the state Department of Administrative Services, terminated a $676,000 three-year contract to treat more than 300 state buildings.

Terminix has 25,000 customers in Connecticut.

---- INDEX REFERENCES ----

KEY WORDS:        AP ALERT WIRES: ENVIRONMENT

NEWS SUBJECT:     Environmental News (ENV)

STORY ORIGIN:     HARTFORD, CONN.

NEWS CATEGORY:    STATE AND REGIONAL

REGION:        Connecticut; Eastern U.S.; United States; North America (CT USE US NME)
Word Count: 410
11/11/99 APWIRES 01:18:00
END OF DOCUMENT

_Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

11/11/99 HRTFCNT A3
11/11/99 Hartford Courant A3
1999 WL 19958627
(Publication page references are not available for this document.)

The Hartford Courant
Copyright @ The Hartford Courant 1999

Thursday, November 11, 1999

MAIN (A)

## STATE SUING TERMINIX OVER ALLEGED VIOLATIONS
### DANIEL P. JONES; Courant Environment Writer

Terminix International flagrantly broke Connecticut's pesticide-safety laws more than 5,000 times in the past four years and should pay heavy fines and be forced to comply, the state attorney general said Wednesday.

The state announced it was filing a lawsuit against the nation's largest termite-control company after completing a months-long investigation into Terminix's practices in the state since September 1995.

"Terminix degraded the environment, defied the law and endangered Connecticut citizens," Attorney General Richard Blumenthal said. "Our investigation was lengthy and intensive because these violations were extraordinary in scope and severity."

The state is seeking tens of thousands of dollars in fines, Blumenthal said.

Terminix denies any wrongdoing.

Steve Good, a spokesman for Memphis-based Terminix, said the lawsuit is an attempt to "reinvigorate a weak case" that the attorney general and the Department of Environmental Protection are pursuing in a DEP hearing. He said Terminix will not be intimidated into a settlement and will "vigorously rebut the meritless allegations."

Blumenthal said that, on thousands of occasions since 1995, Terminix operated without having an employee present who had the

required supervisory pesticide-safety certification and failed to
give adequate written instructions for spraying pesticides. On
hundreds of occasions since 1995, Blumenthal said, Terminix knowingly
falsified records on pesticide use and supervision, and refused to
allow the state access to records.

---- INDEX REFERENCES ----

NAMED PERSON:    BLUMENTHAL, RICHARD

EDITION:        STATEWIDE

Word Count: 219
11/11/99 HRTFCNT A3
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

2/13/99 CINC-ENQ B02
2/13/99 Cin. Enquirer B02
1999 WL 9421844
(Publication page references are not available for this document.)

The Cincinnati Enquirer
Copyright 1999

Saturday, February 13, 1999

Metro

Whistleblowers win in court; Ky. agency demoted pair
CHARLES WOLFE
The Associated Press

The Kentucky Court of Appeals agreed Friday that two state
inspectors suffered reprisals for trying to enforce the law against
pest-control  companies that were politically connected.

In upholding a verdict from Franklin Circuit Court, a three-judge
panel rejected multiple attacks on Kentucky's "whistleblower" law.

The panel said the law gave Donald Vinson and Charles Anderson
exactly what the General Assembly intended: protection as public
employees who disclosed crimes or mismanagement.

Mr. Vinson and Mr. Anderson, who had supervisory positions in the
state Department of Agriculture, claimed Terminix and other companies
whose executives had been political contributors were allowed to
flout pesticide regulations.

The two filed suit in June 1993 after being demoted under a
reorganization by then-Agriculture Commissioner Ed Logsdon. They
were  awarded $500,000 and the department was ordered to restore
their jobs.

The department's appeal argued that the whistleblower law is too
vague to be constitutional and that the department itself was immune
from suit. It also claimed the trial court meddled in the
organization of an executive-branch agency.

The appeals court, in a lengthy opinion by Judge Sara Walter Combs

of Stanton, dismissed each criticism.

As for vagueness, "the act must necessarily use broad terms and descriptions," Judge Combs wrote. "Supervisors have engaged in creative means of retribution and have perpetrated a prolific variety of abuses against whistleblowers."

Nor did the constitutional doctrine of sovereign immunity bar the lawsuit against the department, Judge Combs said. Wording of the law holds "an overwhelming implication" that the General Assembly intended for the department's immunity to be waived in whistleblower cases.

If interpreted otherwise, "the purposes of the act would be essentially emasculated," Judge Combs wrote.

Judge R.W. Dyche III of London joined in the opinion. Judge Daniel T. Guidugli of Newport said he concurred only in the result, but he did not file a separate opinion.

A year after Mr. Vinson and Mr. Anderson sued, Terminix International Corp., the world's largest termite-control company, agreed in a settlement with the state to re-inspect as many as 17,000 homes and businesses. The company also agreed to pay a $200,000 penalty and establish a $750,000 fund to pay for repairs.

Mr. Vinson and Mr. Anderson claimed they reported violations by Terminix and five other companies, but the companies were not fined. The inspectors said they were told not to do further inspections.

---- INDEX REFERENCES ----

KEY WORDS:        POLITICS; COURTS

NEWS SUBJECT:     Local/Regional Section (LCR)

STORY ORIGIN:     FRANKFORT

EDITION:          KENTUCKY

Word Count: 389
2/13/99 CINC-ENQ B02
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

7/15/98 HRTFCNT A15
7/15/98 Hartford Courant A15
1998 WL 12416775
(Publication page references are not available for this document.)

The Hartford Courant
Copyright @ The Hartford Courant 1998

Wednesday, July 15, 1998

MAIN (A)

TERMINIX'S PRACTICES INVESTIGATING BY STATE
DANIEL P. JONES; Courant Environment Writer

State consumer-protection officials have begun an investigation into the business practices of the nation's largest termite-control company, Terminix International.

Mark A. Shiffrin, commissioner of the Department of Consumer Protection, last week signed an order requiring Terminix to answer questions and provide documents on its dealings with some of its residential customers in Connecticut.

"We have been and continue to look at this in a very serious way," Shiffrin said Tuesday.

Norman Goldenberg, a Terminix vice president, said the company couldn't comment without seeing the department's order. "We'll fully cooperate with the inquiry and answer any questions," he said.

The investigation was prompted by a complaint from a Deep River couple, Jeff Mehler and Mary Russell. They have filed a lawsuit in federal court against Terminix, accusing the company of fraud and negligence in connection with a July 1996 treatment of their home. The state attorney general also plans to pursue the company for pesticide law violations in the case.

The consumer protection department's investigation is focusing on whether Terminix treats customers unfairly by having them sign a service order that requires commercial arbitration if they seek damages.

Commercial arbitration normally is used for dealings between two businesses, rather than business- to-consumer dealings. It usually results in less generous compensation for consumers who seek damages, consumer-protection officials said.

"We are especially interested in restitution for consumers and whether opportunities for restitution are being unfairly limited in any way, by compelling consumers to deal with their claims as if they were businesses," Shiffrin said.

Goldenberg said the company "felt arbitration is a more speedy opportunity for the consumers to have resolution to their concerns."

Mehler welcomed the investigation.

"Terminix hides language on the back of their order form documents that significantly limits their liability and forces the consumer to give up their right to a jury trial," Mehler said.

---- INDEX REFERENCES ----

NEWS SUBJECT:    Cover Story/Front Page Section (CVR)

EDITION:        STATEWIDE

Word Count: 307
7/15/98 HRTFCNT A15
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

10/1/96 COURJ 01B
10/1/96 Courier-J. (Louisville Ky.) 01B
1996 WL 6364061
(Publication page references are not available for this document.)

The Courier-Journal  Louisville, KY
Copyright 1996

Tuesday, October 1, 1996

NEWS

State fines Paducah pest-control company Alleges violations of worker-safety
laws
JAMES MALONE, The Courier-Journal
STAFF

The Kentucky Labor Cabinet has fined a Paducah pest-control
company $25,550, charging willful violations of worker-safety laws.

It has ordered Terminix International Corp. L.P. to protect
employees from hazardous chemicals and to notify them of any
workplace hazards they may encounter.

The state directed the company to correct the most serious
deficiencies by Oct. 9 and the remainder by Oct. 31.

A Terminix spokesman said the company will contest the charges.

During inspections between May 21 and Sept. 18, cabinet
investigators determined that employees who applied chemicals -
including Dursban, a pesticide - for termite infestations were not
given protective clothing, eye shields, respirators or water for
drinking or flushing their eyes.

"There was no protection for exposed parts of the body such as
the face and eyes which were subject to splash or spray," the
citation said.

An employee complaint led the Labor Cabinet to investigate, said
cabinet spokesman Don Cooke.

Though Terminix had been monitoring employees' blood for two years

and was aware of health concerns before a worker was hospitalized for exposure, it did not take steps to shield employees from chemicals, the state alleges.

Charles Hromada, Terminix senior vice president for technical services in Memphis, Tenn., said, "We totally disagree" with the state's findings.

The worker, who Hromada said has fully recovered, did not have the chemical in his blood. The worker was "temporarily affected" from exposure due to his "work habits," Hromada said, but the condition was quickly corrected by doses of vitamin K.

Cooke said it is extremely uncommon for the cabinet to cite companies for showing "either an intentional violation of the law or plain indifference" to worker health and safety. "He knew enough to have his employees tested but did not provide them the equipment they needed."

State records did not identify the worker or the extent of his injuries.

Hromada said the worker "is no longer so affected" and called the incident "a very unusual and strange situation."

In 1994, Terminix International Corp., the world's largest pest-control company, agreed to pay a $200,000 fine and to re-inspect up to 17,000 homes and businesses in Kentucky as part of a consumer-protection settlement. Many of the problems, which included accusations of work not performed or work performed improperly, occurred at the company's Lexington and Owensboro offices.

---- INDEX REFERENCES ----

KEY WORDS:        GOVERNMENT; STATE; CHEMICAL

Word Count: 383
10/1/96 COURJ 01B
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

4/25/95 STLSPD 03D
4/25/95 St. Louis Post-Dispatch 03D
1995 WL 3317609
(Publication page references are not available for this document.)

St. Louis Post-Dispatch
Copyright 1995

Tuesday, April 25, 1995

EVERYDAY MAGAZINE

ELAINE VIETS COLUMN

'EVERY TERMITE IN TOWN CAME OVER TO EAT' YEARS OF THEIR FEASTING NEARLY
CONSUMED A HOME IN MANCHESTER
Elaine Viets

THE TERMITE company said it would take maybe two hours to fix the damage in my son's room," said Joyce Levin.

"When the carpenter removed the window frame, I saw thousands of termites. They were eating my home. I could hear them. It was like someone eating a Nestle's crunch bar.

"The contractor said, 'Lady, you got a problem.'

"My son BJ sleeps in that bedroom every night. I just freaked."

That was July, 1994. If Joyce could have seen the next six months, she would have started screaming. Termites would eat her life. Her house would be infested with workmen. Her family would live in a hotel for eight weeks.

Pay attention to their story. Spring is swarming season. This year, termites will cost us $750 million, according to the Department of Agriculture. Termites plague almost every state in the union.

Joyce and Benjy Levin have a handsome three-bedroom split-foyer home in Manchester. Their house is about 23 years old. Houses in their area sell for about $150,000, Joyce said.

In St. Louis, that buys a lot of house. And termites ate a lot of it. A Terminix spokesman said, "We spent a whole bunch of money. It was over $100,000."

"We believe termites ate almost two-thirds of our home," said Joyce. "My husband said every termite in town came over to eat at Ben's."

The first signs of the beastly feast were in 1988.

"Our neighbors had termites. We saw some swarmers in our home. Swarmers look like flying ants. We called Terminix. Some two-by-fours under the front stoop were affected. We had them treated.

"Terminix inspected our home every year after that, and sometimes more. After they treated our house, they guaranteed it for a period. Then we could extend the termite protection plan. Ours just came in the mail. It was $95. Believe me, we paid it."

Terminix paid for all the repairs, new paint and wallpaper, new carpet, cleanup, the Levins' hotel bills, and a food allowance while they lived in the hotel.

"Without the protection plan, I don't think we could have afforded to fix our house," she said.

That was the good side of the protection plan. There was a bad side, too.

"We had no choice of contractors. We had some good people. But we also had some really bad ones."

Joyce showed me photos of her house during the work. Big sections of the mansard roof were removed and covered with plastic.

"In the front of the house, workers had to dismantle the walls from the lower level to the roof line. In back, the termites ate everything from the garage to the master bedroom."

When the wallpaper and sheetrock were removed, some walls looked like they had been burned.

"In August, we thought it was almost over. Benjy and I started to repaper our bedroom, since almost every room had been redone,"

Joyce said. "We took down the wallpaper and saw streaks of mud. The termites were in our bedroom. They ate into the big support beam. It was amazing our bed didn't fall into the garage on my husband's prize Corvette. I don't know which would have upset him more."

After the bedroom fiasco, "we were out of the house for eight weeks. We lived in a hotel."

Didn't Joyce see any signs of termites?

"There are things I would recognize now," she said. "But I didn't then. One sign is pin-point holes in the wallpaper. I saw them in my son's room. But BJ had a dartboard. I blamed it on bad throwing."

She now knows what mud streaks on the outside of her house mean and why it's a "bad sign if you can push up the framing around the window and see dirt behind there. I know to look for separations and stress in the wood. I can tap on the wood to hear if it's solid."

But she learned these skills the hard way.

Along with the hungry bugs, the Levins had the horrors all homeowners face on a long remodeling project.

"There was dust everywhere. Our tub was scratched. Wallpaper was put in upside-down. There was a problem with the electricity and something happened to our alarm system. One contractor didn't show up when he said he would. We had to cancel vacations.

"Things were damaged and started disappearing, and there was no way in the disarray to know what was gone."

Joyce showed me a list of more than 26 items she said were lost or damaged. An oil painting, the legacy of a dead cousin, had a hole in it, she said, and a Belleek candy dish bought on her honeymoon was broken.

Terminix settled for $5,000 for these items, she said. "But we had to sign papers that we wouldn't sue them."

Now that it's over, Joyce has one big question:

"Why didn't Terminix detect this in one of their inspections?"

The Levins' problem was "a very unusual set of circumstances," said Charles Hromada, senior vice president for technical services for Terminix International.

"The reason we feel the termites persisted is there were roof leaks. This allowed the moisture they need.

"Normally, termites nest in the ground. They send out foraging workers to feed on the wood. We interpose a chemical barrier around and under the house. That's what we did in 1988 and repeatedly thereafter.

"But when termites have moisture above ground, from a roof leak or a plumbing leak, then the colony transfers its location to above-around areas. We believe that's what happened in the Levins' house. The termites were above the treated areas. They went merrily along, eating the house. Our man on the scene said he'd never seen anything like it.

"But you could only see the damage when the walls were opened up. Termites don't pop up in the open. They eat on the inside of the wall. They're not visible until they swarm or put up a mud tunnel.

"There was hidden damage going on for a long, long time," Hromada said. "I wouldn't be surprised if it was 10 years."

It's true, he said, that the Levins had no choice of contractors.

"I'm sorry they didn't like the first fellow, but we agreed to change him. We repaired all the damage. We're glad we were able to find the problem. We are sorry it couldn't be detected sooner. It just demonstrates to us the value of the termite protection plan."

The Levins worry their house may be hard to sell if they ever move.

"It's been brought back to its full value. We give it a clean bill of health," Hromada said.

Joyce Levin no longer has termite nightmares. Her days are not spent with termite thoughts. But when spring comes, she still remembers this is swarming season.

"Termites can happen to anyone," she said. "People need to know that. The problem is you can't kill the whole colony. They go somewhere else.

"While you're reading this story, they could be eating your house."

TABULAR OR GRAPHIC MATERIAL SET FORTH IN THIS DOCUMENT IS NOT DISPLAYABLE

PHOTO;
Caption: Photo By Jerry Naunheim Jr./Post-Dispatch - Much to the Levins' chagrin, they found it wasn't son BJ's darts that were causing pin-point holes in the wallpaper.

---- INDEX REFERENCES ----

KEY WORDS:       INFESTATION; PROBLEM; INSURANCE; COVERAGE; POLICY COST DAMAGE; LOSS

MARKET SECTOR:    Financial (FIN)

INDUSTRY:       Insurance (INS)

EDITION:       FIVE STAR

Word Count: 1170
4/25/95 STLSPD 03D
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

7/20/92 APN-GR 21
(Publication page references are not available for this document.)

American Political Network
Greenwire
Volume 2 No. 55
Copyright (c) 1992 by American Political Network, Inc.

July 20, 1992

STATE REPORTS - COLORADO:  STATE RECORD PESTICIDE FINE LEVIED

This morning's BOULDER DAILY CAMERA reports Colorado has levied a record fine on a pest control company, Terminix International, under the state's Pesticide Application Act.  Most of the $360,000 fine was suspended under an out-of-court settlement, but the remaining $30,000 is still a state record. Terminix will have to pay the full fine if it violates the act in the next two years.

The fines were imposed because Terminix failed to obtain proper licenses for four of its CO operations.  The state also charged that the company aired misleading advertisements suggesting that pharaoh ants spread disease and that carpenter ants are a threat to CO.  CAMERA's Jim Sheeler reports that Terminix has been "in trouble in other states," including an ongoing investigation by OH and NY for alleged questionable business practices.  The company was also recently named a potentially responsible party at a Tennessee Superfund site and has settled licensing problems similar to the ones in CO in four other states (7/20).

7/20/92 APN-GR 21
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

8/31/91 INDSTR B01
8/31/91 Indianapolis Star B01
1991 WL 3654379
**(Publication page references are not available for this document.)**

The Indianapolis Star
Copyright 1991

Saturday, August 31, 1991

CITY/STATE

State takes a bite out of pest firm after violations
LINDA GRAHAM CALECA

Termite companies that don't take enough care treating buildings under construction got a warning Friday:

Do the job right or pay the consequences.

In a crackdown by the State Chemist's Office, Terminix International was fined $4,500 and ordered to suspend an employee for 60 days for improperly treating two large Indianapolis construction projects.

Terminix spent too little time and used a "severely deficient" amount of pesticide at the two sites in December 1990, said George N. Saxton, pesticide investigator for the state chemist in West Lafayette.

Saxton also said standing water and near-frozen ground at one site _ that of Shorewalk Condominiums near Geist Reservoir _ made it environmentally unsafe to spray chemicals because of potential runoff.

At Shorewalk and the other site _ an Eastside business and insurance company complex on Washington Point Drive _ Saxton took soil samples after the Terminix treatment.

He also videotaped the Shorewalk job, which he said should have taken about 14 hours. The Terminix employee was there for only one hour.

Terminix officials in Indianapolis and at the company's headquarters in Memphis, Tenn., declined to comment.

Said Saxton, "Termites can't be prevented if the proper amount of chemicals aren't used. They didn't even come close."

Termites are voracious eaters of wood, cellulose and paper that cause about $800 million in damage annually to homes in the United States.

The bugs can best be prevented by spraying the soil during every phase of construction of a home or business, say officials of the State Chemist's Office, which licenses and regulates Indiana pest-control companies.

Improper construction treatments are all too common, said Saxton and State Chemist's Office administrator David E. Scott, because often no one is around to make sure the job is done right. Because pesticides are expensive, companies sometimes scrimp on their use.

Saxton said that while Terminix went back and retreated the Shorewalk development, it was too late to treat the soil at the Washington Point complex because "unfortunately, the slab had already been poured."

As part of its agreement with the state chemist, Terminix provided five-year warranties for both sites.

Terminix also will suspend for 60 days the license of Terminix employee Keith Holder, said a statement issued by Attorney General Linley Pearson. Holder also will be on probation for six months. Although Holder was not the employee who improperly treated the sites, he was supervising the work.

---- INDEX REFERENCES ----

KEY WORDS:       STATE GOVERNMENT; BUSINESS; CONSTRUCTION

EDITION:       FINAL MAKEOVER

Word Count: 397
8/31/91 INDSTR B01
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

5/2/91 STLGRN (No Page)
5/2/91 Star-Ledger (Newark N.J.) (Pg. Unavail. Online)
1991 WL 7960098
(Publication page references are not available for this document.)

The Star-Ledger  Newark, NJ
Copyright Newark Morning Ledger Co., 1991

Thursday, May 2, 1991

NEWS

Termite suit is settled

A national exterminating company; the owners of a landmark
Hunterdon C County home have reached an undisclosed settlement over a
lawsuit in which the company was blamed for damage from termite
infestation.

The plaintiffs, Andy and Mary Herdan, claimed that Terminix
International of Memphis, Tenn., failed to rid their home of the
pests before they caused structural damage to the former Mechlin's
Corner Tavern in Union Township.

The home, built in 1752, is on state and national historic
registers. It was a watering hole on a stagecoach run from Easton,
Pa., Andy Herdan said in court testimony on Monday.

A civil jury in Superior Court in Flemington began hearing the
case Monday. On Tuesday, an "amicable settlement" was reached
between the parties, according to Princeton attorney Marc Citron, who
represented Terminix.

As part of the settlement, no further details were to be released
by Terminix or the Herdans.

The Herdans' attorney, Margo Zemel, told jurors in her opening
remarks they would be "outraged" by the company's failure to meet its
agreement to provide periodic reinspections of the home for termites.

She said inspectors used only 20 gallons of an insecticide when
they should have used 600.

Citron said the company did reinspect the home several times. He said that much insecticide could have resulted in contamination of the home and possibly neighboring properties.

Citron said the house already had structural problems when the Herdans bought it for $157,500 in 1982.

Word Count: 240
5/2/91 STLGRN (No Page)
END OF DOCUMENT

Copr. (C) West 2000 No Claim to Orig. U.S. Govt. Works

11/29/84 WASHPOST (No
11/29/84 Wash. Post (Pg. Unavail. Online)
1984 WL 2005132
(Publication page references are not available for this document.)

The Washington Post
Copyright 1984

Thursday, November 29, 1984

Couple Suing Exterminator Wins $25,000 Jury Denies Claim Of $20 Million
---
By Leah Y. Latimer Washington Post Staff Writer

A federal court jury awarded $25,000 to an Arlington
couple yesterday for damage to their home by an exterminating
company, but rejected their claim for $20 million for
personal injuries that the couple claimed resulted from the
faulty application of pesticide.

The award by a U.S. District Court jury in Alexandria was
half the amount the company, Terminix International Inc., had
offered the couple last month in an unsuccessful effort to
settle the case out of court.

The suit by Steve and Anna Sami stemmed from the May 1982
application of a pesticide to control termites in the
basement of their home at 3900 N. 17th St.

The couple argued that as a result of the application of
the pesticide aldrin, their basement remains "unoccupied and
uninhabitable."

Sami, who operates an export-import business, also
testified that chemical contamination of the home makes him
experience vomiting, disorientation, depression, blurred
vision, lack of appetite and loss of sleep.

The couple sought $10 million each for damages and
personal injuries.

Fred Alexander, the attorney for Terminix, said yesterday:
"Our position from the start was that there was nothing

wrong" with the application.

   He also contended that the chemical involved was not
dangerous and "there couldn't have been the slightest injury"
to the couple.

   The Samis said they moved out of their $107,000 brick
house in June 1982 after a heavy rainstorm caused basement
flooding that dislodged plugs covering holes that were
drilled to apply pesticide in the walls.

   According to court papers, the Samis have been staying
with relatives in Falls Church.

---- INDEX REFERENCES ----

Word Count: 259
11/29/84 WASHPOST (No Page)
END OF DOCUMENT

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

BENEDICTO SAN PEDRO and
NANCY SAN PEDRO,

    Plaintiffs

vs.

THE TERMINIX INTERNATIONAL
COMPANY L.P., a limited
partnership, and TERMINIX
INTERNATIONAL, a Delaware
corporation,

    Defendants.

Case No. 95-8204 CIV-GONZALEZ
MAGISTRATE - JUDGE SNOW

ENVELOPES NOT PROVIDED

_____/

## PLAINTIFFS' MOTION AND INCORPORATED MEMORANDUM OF LAW TO COMPEL DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST AND SECOND REQUEST FOR PRODUCTION OF DOCUMENTS, MOTION FOR ATTORNEYS FEES, AND REQUEST FOR HEARING

COMES NOW the Plaintiffs, BENEDICTO SAN PEDRO and NANCY SAN PEDRO by and through their undersigned counsel, and file this Motion to Compel Defendant's Responses to Plaintiff's First and Second Request for production of documents. In support thereof the Plaintiff would show:

1) That this motion is made pursuant to Fed.R.Civ.P. 38.

2) That Defendant's conduct in this litigation up to the present date has been a text book example of obfuscation and avoidance in all matters concerning discovery.

3) On August 29, 1996, this Court entered a default judgement against the Defendant, TERMINIX INTERNATIONAL COMPANY L.P., and TERMINIX INTERNATIONAL on the issue of liability, and held that this cause would proceed solely on the issue of damages. In so

EXHIBIT F

doing this Court soundly criticized the following practices of the
Defendant:

    a) Filing responses which contain a disclaimer as to
privilege without including the required privilege log,
and;

    b) Filing responses which use disclaimers such as "to
the extent such documents exist and are not privileged"
without indicating whether such privileged documents are
indeed in existence.

    4) Subsequently, the Defendant continued to refuse to provide
documents as requested. Plaintiffs' Counsel repeatedly requested
that documents responsive to Plaintiffs' first and second request
for production of documents be provided as such documents were
necessary for Plaintiffs to prove up their damages.

    5) Despite multiple requests that the Defendant provide these
documents, the Defendant failed to do so, asserting that there were
pending motions which would impact the Defendant's obligations as
they related to the production of documents.

    6) Plaintiffs' counsel has no idea which motions Defendant is
referring to. Certainly there are no outstanding motions for
protective orders, nor were there any outstanding motions to
compel, as those had been resolved in the Plaintiffs' favor.

    7) Defendant did file a motion in limine and a motion for
summary judgement, both of which argued that the Plaintiffs were
not entitled to tort or punitive damages based upon Florida's
economic loss doctrine and "restoration rule".

    8) However, the Defendant's motion for summary judgement on
those grounds had been denied when the Court entered its default
judgment. It is worth noting that the Defendant has since refiled
a motion for summary judgement on the same grounds.

9)    Defendant continues to assert that the Plaintiffs' entitlement to tort and punitive damages (as opposed to the amounts of those damages) remains at issue, and refuses to complete production on the grounds that Plaintiffs are not entitled to those categories of damages.

10)   Plaintiffs still require documents responsive to the following requests, which are set out as required by S.D.Fla.L.R. 26.1(H):

### PLAINTIFF'S FIRST REQUEST

### REQUEST NUMBER TWO

Any documents which state the standards which the Defendant follows regarding its termite control service including, but not limited to, internal publications and advertisements.

### DEFENDANT'S RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses any type of "standard" and all of such items relating to every type of termite control service of every branch in every state that apparently ever existed. As the Defendant is not reasonably able to discern the scope of this request and due to the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much

specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

## ARGUMENT

The Defendant's assertions of privilege are too little too late. These objections were filed by the Defendant on September 6, 1996, more than fourteen months after the original discovery requests were sent out. As several commentators and Courts have noted, objections which are not timely asserted are waived. Since Local Rule 26.1(6)(a) states that any objection not raised within the time provided by the rules of procedure is waived, the Defendant should not be permitted to raise these objections almost two years after the initial discovery requests were served. See also; Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir.1992); Krewson v. City of Quincy, 120 F.R.D. 6, 7 (D.Mass.1988); Marx v. Kelly, Hart & Hallman, 929 F.2d 8, 12 (1st Cir.1991); Perry v. Golub, 74 F.R.D. 360, 363 (N.D.Ala.1976) and cases cited therein; 4A James W. Moore, Moore's Federal Practice, p 34.05[2] (1992). " 'Any other result would ... completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences.' "

Moreover, Defendant's practice of both objecting and offering to produce documents is inherently ambiguous. It is clear from the case law that such a response is improper. In, Burton Mechanical

<u>Contractors, Inc. v. Foremen</u>, 148 F.R.D. 230 (N.D. Ind. 1992), the Court held that a response which first raises an objection and then proceeds to answer is inherently ambiguous, since it cannot be determined whether the responding party has supplied a full answer in spite of the objection, or an impartial answer in reliance on the objection.

These documents remain relevant to this action despite the entry of default. Ordinarily, where fraud is established, punitive damages are appropriate. See, <u>Cruise v. Graham</u>, 622 So.2d 37, (Fla. 4th DCa 1993); <u>First Interstate Dev. Corp. v. Ablandedo</u>, 511 So.2d 536, (Fla. 1987). In determining the appropriate amount of damages, the finder of fact should consider the egregiousness of the Defendant's conduct, or as the Florida Supreme Court has stated, "the enormity of wrong". <u>Bankers Multiple Line Ins. Co. v. Farish</u>, 464 So.2d 530, (Fla. 1985); <u>Termite & Pest Control, Inc. v. Jenkins</u>, 409 So.2d 1039 (Fla.1982); and <u>St. Regis Paper Co. v. Watson</u>, 428 So.2d 243 (Fla.1983). Obviously, the Defendant's fraudulent practices were egregious, but the Plaintiffs assert that they are entitled to show the degree to which the Defendant deviated from its own "standard" in defrauding the Plaintiff, as well as its other customers.

Finally, Defendant's offer to produce these documents at "Corporate Headquarters" in Memphis Tennessee is unacceptable. Plaintiffs' Counsel has been required to file multiple motions to compel the Defendant's compliance in discovery matters. To date the Defendant's dilatory conduct has resulted in a tremendous burden on the resources of Plaintiffs' Counsel. Unless or until

the Defendant is able to support its claim that the number of documents makes it "objectively impossible", this Court should order that production take place somewhere within the Southern District. See, First City Developments of Florida, Inc., v. Hallmark of Hollywood Condominium Association, Inc., 545 So.2d 502 (Fla. 4th DCA 1989)(When making a claim regarding burden, it is incumbent upon the objecting party to present some quantitative factor showing extent of burden, blanket claim regarding burden insufficient).

### REQUEST NUMBER TEN

Any customer complaint files created within the last ten years.

### DEFENDANT'S RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses any type of "complaint" filed by any type of "customer" and all of such items relating to every type operation, related and unrelated to pest control, of the Defendant, of every branch in every state, for the past ten years. As the Defendant is not reasonably able to discern the scope of this request and due to the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much

specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

Robert Blevins, Defendant's Branch Manager gave his deposition on October 25, 1995. When examined as to the existence of customer complaint files, the Defendant's agent stated that his branch did not keep records of customer complaints, that Terminix keeps no records concerning how many customers in Palm Beach County complain, and that he has no way of obtaining such information. (See Composite Exhibit "A"). Contrary to Mr. Blevins' assertions the Defendants, or an insurance adjuster acting on the Defendants' behalf, clearly keep customer complaint files. In fact, Plaintiffs' Counsel has recently obtained documents produced by the Defendant in litigation in which the Defendant was sued by the Florida Attorney General's Office for consumer fraud. Attached to this memorandum is a random sampling of the customer complaint files kept by the Defendant. (Composite Exhibit "B"). It would appear from the attached documents that the Defendant has access to a computer data base which lists the Defendant's complaints by branch number and date. The data base includes a record of the customers complaints as well as the Defendants' response. At the very least, this Court should order the Defendant to obtain the complaint files for South Florida (i.e. the branches located between Vero Beach and Miami) for the past ten years. The Defendants' failure to be forthcoming as to the existence of these

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

### DEFENDANT'S SUPPLEMENTAL RESPONSE

On April 14, 1997, the Defendant filed the following supplemental response:

". . . pursuant to paragraph 21 of the Plaintiffs' First Request for Production of Documents, the Defendant hereby attaches hereto and submits the following financial information with respect to the Defendant reserving however, its prior objections to the relevancy, materiality, and admissibility of said documents set forth in the Defendant's initial response to the Plaintiff's production request, said response served September 1, 1995:

1)  The Annual Reports on Form-K filed by the Service Master, a Limited Partnership, with the Securities and Exchange Commission for the ten (10) year period 1986-1996;

2)  Service Master Annual Reports to shareholders for the years 1986-1996;

3)  Annual Report of The Terminix International Company, a Limited Partnership, (Terminix) for the years 19989-1997, inclusive;

4) The Defendant, TERMINIX, further states that the Terminix financial statements are consolidated with the enclosed financial statements and are merged with that of Service Master, which is not a party defendant to this action. Therefore, in addition to its objections to relevancy and materiality regarding said documents, the Defendant objects to the admissibility of these reports as service Master is not a party to this action and would

has already required the Plaintiff to obtain some of these documents from other sources at a cost of eight hundred ($800.00) dollars. The production should therefore be at the Defendant's own expense.

As to the Defendants' claims of privilege, they clearly do not apply to the documents at issue, which appear to have been kept in the ordinary course of business. Moreover, the Defendant's untimely assertions of privilege has waived these objections.

### REQUEST NUMBER ELEVEN

Any documents identifying the nature of the Defendant's operations, the physical locations, and the corporate organizational structure of the Defendant, including the owners, shareholders, directors, and all other individuals or entities who have any responsibility for the development of corporate policy.

### DEFENDANT'S RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses all types of "documents" and all of such items relating to every type operation, related and unrelated to pest control, of the Defendant, of every branch in every state, for the past ten years. As the Defendant is not reasonably able to discern the scope of this request and due to the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much

specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

## ARGUMENT

The Defendant's size and ability to pay are legitimate considerations for the finder fact when determining the appropriate amount of punitive damages. The Plaintiffs' otherwise adopt the arguments made above.

## REQUEST NUMBER FOURTEEN

Any documents related to lawsuits against the Defendant or related entities which involved allegations of negligence and/or fraud for the past ten years up, to and including the date of production.

## DEFENDANT'S RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses all types of "lawsuits" and all of such items relating to every type operation, related and unrelated to pest control, of the Defendant, of every branch in every state, for the past ten years. As the Defendant is not reasonably able to discern the scope of this request and due to the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers

privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

## ARGUMENT

If indeed there are so many documents responsive to this request that it is "objectively impossible" for the Defendant to produce them then perhaps the Defendant should settle this case. The requests are relevant. As to the Defendants' claims of privilege and burden, the Plaintiffs readopt the arguments made above.

## REQUEST NUMBER FIFTEEN

Any documents related to government investigations of the Defendant or related entities for the past ten years up, to and including the date of production.

## DEFENDANT'S RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses all types of "government investigation" and all of such items relating to every type operation, related and unrelated to pest control, of the Defendant and "related entities", of every branch in every state, for the past ten years. As the Defendant is not reasonably able to discern the scope of this request and due to the voluminous nature of this

request, it is objectively impossible to deliver such items to Plaintiff's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

## ARGUMENT

The Plaintiff readopts the arguments made above.

## REQUEST NUMBER TWENTY ONE

Documents relating to the finances of the Defendant and related entities, including, but not limited to annual reports, income statements, profit and loss statements and balance sheets for the past ten years up, to and including the date of production.

## DEFENDANT'S FIRST RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses all types of "finances" and all of such items relating to every type operation, related and unrelated to pest control, of the Defendant and "related entities", of every branch in every state, for the past ten years. As the Defendant is not reasonably able to discern the scope of this request and due to the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's office for inspection.

otherwise create confusion on behalf of the trier of fact, and would be highly prejudicial to the Defendant, TERMINIX, in view of the consolidated nature of the financial statements with the enclosed reports. These reports are being supplied in a good faith attempt to comply with the request for financial information although the Defendant maintains the Plaintiffs are not entitled to possession or disclosure of any such financial information absent a determination of entitlement to punitive damages to be determined, if at all, at a bifurcated trial.

If the Defendant's assertions of privilege in September of 1996 were untimely, the objections raised on April 14, 1997, more than seven months after the Court ordered these records produced, are doubly so. Quite simply, a Defendant cannot wait almost two years to raise objections to document requests.

Moreover, the substance of the Defendant's objections are without merit. Initially, there will be no bifurcated trial. The Defendant has not requested any such bifurcation by way of motion, and Plaintiff would submit that such a bifurcation is improper. There has already been a determination that the Defendant has committed fraud via this Court's entry of default. Contrary to the Defendant's assertions, there need not be any resolution of a question to Plaintiffs' entitlement of punitive damages. That occurred when the Defendant defaulted. This is because under Florida Law, allegations of fraud sufficient to support a claim for compensatory damages are sufficient to support a claim for punitive damages. See, The only question which is presently before this tribunal is the amount of punitive damages.

The Defendant's objections based on relevancy stem from the fact that the Defendant has produced the wrong documents. The Defendant has produced the Form-K's, Annual Reports to

Shareholders, and Annual Report for the State of Florida, for a company called "Service Master". As the Defendant points out, service master is not a party to this action. Having produced the documents for the wrong party, the Defendant now asserts that these documents are irrelevant. The Defendant's relevancy objections could be alleviated by producing responsive documents for the right entity. The Terminix International Company, L.P., and Terminix International are distinct entities, separate from Service Master. At the very least, these entities have to file state and federal tax returns. Moreover, these Defendants must keep separate balance sheets, income statements, and profit and loss statements. Finally, it should be noted that everything the Defendant has produced to date have been public records available to any stockholder, to anyone who contacts the Securities and Exchange Commission, or anyone who contacts Florida's Secretary of State. The Defendants have yet to produce one internal document, be it a bank account, balance sheet, or other internal accounting record relating to their financial condition.

### REQUEST NUMBER TWENTY TWO

Copies of any statements, reports and memoranda filed by employees of the Defendant and related entities regarding this case, including, but not limited to, reports prepared by service technicians and inspectors following each visit to the Plaintiff's residence for the past ten years up, to and including the date of production.

### DEFENDANT'S RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses anything filed by "employees" and "related entities" "regarding this case". The Defendant is not otherwise reasonably able to discern the scope of this request.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

### ARGUMENT

This response underscores the Defendants' lack of candor relating to the number of documents encompassed by these requests and the consequent burden arising from production. Even when a production request, such as this one, is directed toward a single residence the Defendant's response is the same: there are so many documents relating to the request that it is "objectively impossible" to produce the documents in question, and the only way Plaintiff's can review such documents is by traveling to Defendants' headquarters in Tennessee. The Defendants' objections are clearly based upon the Defendants' unwillingness to produce the documents, not upon any real burden. Plaintiffs' otherwise adopt the arguments made above.

## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION
### REQUEST NUMBER ONE

Copies of all lawsuits filed against Defendants between the period of February of 1984 to February of 1992 in each state in which Defendants conduct business where said lawsuit contains allegations that Defendants acted negligently in failing to inspect residences of customers of Defendants for the existence of termites and/or failing to notify customers of Defendants of the existence of termites and/or failing to maintain the residences of customers of Defendants against the infestation of termites and/or failing to provide exterminating services to rid the residences of customers of Defendants in the event of the existences of termites.

### DEFENDANT'S RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses "copies of all lawsuits" and all of such items relating to every such lawsuit filed against the filed against the Defendant in every state, for a period of eight years. As the Defendant is not reasonably able to discern the scope of this request, and due the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's counsel's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

## ARGUMENT

The objections are untimely and have been waived. Moreover, production in Memphis Tennessee is not production in a "reasonable" location, and the Defendant has failed to support its claims of regarding the burden associated with production. Indeed, in light of Defendants' identical claim of burden in regards to documents relating solely to the Plaintiff's residence, such objections must be viewed with extreme skepticism. Otherwise, Plaintiff readopts the arguments made above.

### REQUEST TWO

Copies of all documents produced by Defendants during discovery in the lawsuits referred to in paragraph 1 above.

### RESPONSE

See response to paragraph 1.

### ARGUMENT

Plaintiffs readopt the arguments made above.

### REQUEST

Copies of all lawsuits filed against Defendants between the period of February of 1984 to February of 1992 in each state in which Defendants conduct business where said lawsuits contain allegations that Defendants acted fraudulently in providing services to customers.

### RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses "copies of all lawsuits" and all of such items relating to every such lawsuit filed against the filed against the Defendant in

every state, for a period of eight years. As the
Defendant is not reasonably able to discern the scope of
this request, and due the voluminous nature of this
request, it is objectively impossible to deliver such
items to Plaintiff's counsel's office for inspection.

The scope of this request covers items which are
privileged as attorney work product and trial preparation
materials, to the extent that certain correspondence and
memoranda covered by the request were generated in
anticipation of litigation. This request also covers
privileged communications subject to the attorney client
privilege. This assertion of privilege is made in
reasonable compliance with Rule 34, and with as much
specificity as may reasonably be gleaned from the request
itself.

The scope of this request covers aspects of internal
company policy which are not disseminated to the public
and are protected as proprietary information and trade
secrets. This assertion of privilege is made in
reasonable compliance with Rule 34, and with as much
specificity as may reasonably be gleaned form the request
itself.

### ARGUMENT

Plaintiffs readopt the arguments made above.

### REQUEST

Copies of all documents produced by Defendants
during discovery in the lawsuits referred to in paragraph
3 above.

### RESPONSE

See response to paragraph 3 above

### ARGUMENT

Plaintiffs readopt the arguments made above.

### REQUEST

Copies of all lawsuits filed against Defendants
between the period of February of 1984 to February of
1992 in each state in which Defendants conduct business
where said lawsuits contain allegations that Defendants
breached the terms of their contract for servicing the
residences of Defendants' customer(s) because Defendant
failed to inspect the residences for the existence of
termites and/or Defendants failed to notify their
customer(s) of the existence of termites and/or

Defendants failed to maintain the residences of their customer(s) against the infestations of termites and/or the Defendants failed to provide exterminating services to rid the residences of their customer(s) of termites in the event of the existence of termites.

### RESPONSE

To the extent such documents exist, are not privileged, and are in the Defendant's possession, such documents are available for inspection at Terminix Headquarters.

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses "copies of all lawsuits" and all of such items relating to every such lawsuit filed against the filed against the Defendant in every state, for a period of eight years. As the Defendant is not reasonably able to discern the scope of this request, and due the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's counsel's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

### ARGUMENT

Plaintiffs readopt the arguments made above.

### REQUEST

Copies of all documents produced by Defendants during discovery in the lawsuits referred to in paragraph 5 above.

## RESPONSE

See response to paragraph 5 above.

## ARGUMENT

Plaintiffs readopt the arguments made above.

## REQUEST

Copies of all consumer complaints, consumer advocacy group complaints and/or complaints issued by the attorney general of any state filed against Defendants between the period of February of 1984 to February of 1992 in each state in which the Defendants conduct business where said complaints maintain that Defendants acted fraudulently or negligently.

## RESPONSE

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses every type of "complaint" and all of such items relating to every such every type of operation, related and unrelated to pest control, of the Defendant and "related entities" of every branch, in every state, for a period of eight years. As the Defendant is not reasonably able to discern the scope of this request, and due the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's counsel's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

## ARGUMENT

Plaintiffs readopt the arguments made above.

### REQUEST

Copies of all consumer complaints, consumer advocacy group complaints and/or complaints issued by the attorney general of any state filed against Defendants between the period of February of 1984 to February of 1992 in each state in which Defendants conduct business where said complaints maintain that Defendants breached the terms of their contracts for servicing the residences of Defendants customer(s).

### RESPONSE

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses every type of "complaint" and all of such items relating to every such every type of operation, related and unrelated to pest control, of the Defendant and "related entities" of every branch, in every state, for a period of eight years. As the Defendant is not reasonably able to discern the scope of this request, and due the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's counsel's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

### ARGUMENT

Plaintiffs readopt the arguments made above.

### REQUEST

Copies of any lawsuits of administrative complaints filed against the Defendants from February of 1984 to present which allege that either Defendants were negligent in the provision of services to customers or defrauded customers.

## RESPONSE

This request does not describe the items to be produced with "reasonable particularity" as required by Rule 34(b).

The scope of this request encompasses every type of "administrative complaint" and "copies of any lawsuits" relating to every type of service, related and unrelated to pest control, of the Defendant and "related entities", of every branch, in every state, for a period of eight years. As the Defendant is not reasonably able to discern the scope of this request, and due the voluminous nature of this request, it is objectively impossible to deliver such items to Plaintiff's counsel's office for inspection.

The scope of this request covers items which are privileged as attorney work product and trial preparation materials, to the extent that certain correspondence and memoranda covered by the request were generated in anticipation of litigation. This request also covers privileged communications subject to the attorney client privilege. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned from the request itself.

The scope of this request covers aspects of internal company policy which are not disseminated to the public and are protected as proprietary information and trade secrets. This assertion of privilege is made in reasonable compliance with Rule 34, and with as much specificity as may reasonably be gleaned form the request itself.

## ARGUMENT

Plaintiffs readopt the arguments made above.

## REQUEST

Copies of all documents produced by Defendants during discovery for the actions referenced in paragraph 9.

## RESPONSE

See Response to paragraph 9.

ARGUMENT

Plaintiffs readopt the arguments made above.

Wherefore Plaintiffs respectfully request that this Court enter an order compelling the production of all responsive documents within twenty days from the entry of its order at a place located within the Southern District of Florida.

Respectfully submitted,

Bernard Lebedeker
Fla. Bar No: 004295
Feingold and Kam
603 Village Blvd. ste. 302
West Palm Beach, Fla. 33409
Tel: (407) 686-1995

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail on James M. Nichols, Esq., 1815 S. Patrick Drive, Indian Harbour Beach, Fla., 32937, this 10th day of June, 1997.

Respectfully submitted,

Bernard Lebedeker
Fla. Bar No: 004295
Feingold and Kam
603 Village Blvd. ste. 302
West Palm Beach, Fla. 33409
Tel: (407) 686-1995

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED by _____ _____

JAN 2 2 1998

BENEDICTO SAN PEDRO and
NANCY SAN PEDRO,

    Plaintiffs,

v.                                    CASE NO.   95-8204-CIV-GONZALEZ

THE TERMINIX INTERNATIONAL
COMPANY, L.P., a limited
partnership and TERMINIX
INTERNATIONAL, a Delaware
corporation,

    Defendants.

_____

ORDER

    This Cause has come before the Court upon the following
motions:

    1.  Defendant's Motion for Partial Summary Judgment, filed
May 8, 1997.  A hearing was held on this motion on January 9,
1998;

    2.  Defendant's Motion to Compel, filed June 12, 1997;

    3.  Plaintiff's Motion to Compel Defendant's Responses to
Plaintiffs' First and Second Request for Production of Documents,
filed June 12, 1997;

    4.  Defendant's Motion for Sanctions, filed June 24, 1997;
and

    5.  Plaintiff's Motion for Reconsideration, filed November
21, 1997.

    This case has a complicated history.  Plaintiffs filed their
Complaint in April 1995, alleging tort claims of negligence and
fraud, and also claiming punitive damages.  Plaintiffs propounded

DE 124

124

EXHIBIT G

their first discovery requests in May 1995, and the parties stipulated twice for an extension of time for Defendants to respond.  When Defendants failed to respond after the two extensions of time, Plaintiffs filed a Motion to Compel Responses on October 6, 1995.  The parties again stipulated for three extensions of time for Defendants to respond, after which Defendants moved the Court three more times for an extension of time.  Although the Court granted all three of these motions for extensions of time, Defendants still did not respond to the Motion to Compel.  Finally, in April 1996, upon failure of Defendants to respond or move for another extension, this Court granted by default Plaintiffs' Motion to Compel (DE #43).

By May 13, 1996, Defendants had not complied with the Court's April 1996 Order compelling discovery, and Plaintiffs moved to compel compliance.  Again, Defendants moved for several extensions of time to respond to the Motion to Compel Compliance. This Court held a scheduling conference on July 12, 1996, during which it warned Defendant that its patience with regard to granting extensions of time had been exhausted.  In its Scheduling Order entered July 16, 1996 (DE #57), the Court denied the outstanding motion for extension of time, granted Plaintiff's Motion to Compel, and again ordered Defendant to comply with the earlier discovery order within thirty days of the entry of the Scheduling Order.

One month after this Court entered its Scheduling Order, Defendants terminated their relationship with its counsel.

Defendants' present counsel filed his appearance and promptly moved for a rehearing of the motions ruled upon by this Court during the Scheduling Conference.  On August 29, 1996, the Court denied Defendants' Motion for Re-Hearing, ordered Defendants to comply with the earlier discovery orders within ten days, and expressed the hope that Defendants' change in counsel would improve the proceedings in this action.

Defendants did file a Notice of Compliance on September 9, 1996, but on February 11, 1997, this Court granted Plaintiffs' Motion for Entry of Default Judgment, finding that Defendants' responses were insufficient, and stating that "the Court's patience with Terminix's disingenuous and delaying tactics has now been completely exhausted."  The Court further stated that trial would proceed at a later date on the issue of damages only.

Defendants have filed the instant motion for Partial Summary Judgment, or alternatively, Motion for Reconsideration of the Court's Order of Default, on the grounds that Plaintiffs' Complaint seeks damages in tort for an alleged breach of contract, a remedy barred by the Florida Economic Loss Rule. After considering the arguments set forth by both parties in the papers filed and at the hearing on January 9, 1998, the Court finds that it was indeed justified in sanctioning the Defendants as a result of their discovery abuses.  However, the Court further finds that the sanction of default is unduly harsh, and was improvidently imposed in this case.  The Court shall instead impose the less onerous sanction of ordering Defendant to pay to

3

Plaintiff reasonable attorney's fees and costs incurred in the various motions to compel, and the expenses incurred as a result of Defendant's failure to comply with the Court's discovery orders.

As for Defendants' Motion for Partial Summary Judgment, the Court finds that Defendants are correct in their assertion that the Florida Economic Loss Rule precludes tort recovery, such as for negligence and fraud, for damages that arise from or are incident to the parties' contractual relationship. See Hoseline, Inc. v. U.S.A. Diversified Products, Inc., 40 F.3d 1198 (11th Cir. 1994); BankAtlantic v. Blythe Eastman Paine-Webber, Inc., 955 F.2d 1467 (11th Cir. 1992), cert. denied, Paine Webber, Inc. v. Bank Atlantic, 113 S.Ct. 966. Because Plaintiffs' negligence and fraud claims rely upon the parties' contractual relationship, Plaintiffs are barred from collecting damages based on Counts I and II of their Complaint. However, in order to permit Plaintiffs to assert what may be a meritorious Complaint, the Court will allow Plaintiffs to file an amended Complaint under a breach of contract theory, at which point the instant action will proceed forward on that theory.

Accordingly, having reviewed the motions and the record, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Partial Summary Judgment, filed May 8, 1997, is **GRANTED**. Judgment is entered in favor of Defendants on Counts I and II, the negligence and fraud counts, of Plaintiffs' Complaint.

4

2.  Should Plaintiffs choose to do so, they may file an Amended Complaint, reflecting a breach of contract theory, within thirty (30) days of the date of this Order.

3.  As a sanction against Defendants for their failure to comply with the earlier discovery orders, Plaintiffs are **DIRECTED** to file a Motion for Attorney's Fees, setting forth a reasonable attorney's fee and costs for the expenses incurred in filing and presenting argument on the motions to compel and motion for default.

4.  Defendant's Motion to Compel, filed June 12, 1997, Plaintiff's Motion to Compel Defendant's Responses to Plaintiffs' First and Second Request for Production of Documents, filed June 12, 1997, Defendant's Motion for Sanctions, filed June 24, 1997, and Plaintiff's Motion for Reconsideration, filed November 21, 1997, are all **DENIED** without prejudice to be refiled if necessary upon the Plaintiff's filing of an amended complaint.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 22nd day of January, 1998.

JOSE A. GONZALEZ, JR.
UNITED STATES DISTRICT JUDGE

cc: Counsel

5