UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



NIGHT BOX
THE BOX
ILED
AUG 30 2000

CLARENCE MADDOX
CLEPK. USDC / SDFL / STL

THE TERMINIX INTERNATIONAL
COMPANY, L.P. and TERMINIX
INTERNATIONAL, INC.,

       Plaintiffs,

vs.                          **Case No. 00-6108-CIV-HUCK-BROWN**

BROAD AND CASSEL, P.A. and
MICHAEL P. BENNETT, Individually,

       Defendants.

_____/

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

      The Plaintiffs, Terminix International Company, L.P. and Terminix International, Inc. (hereinafter collectively referred to as "Terminix"), hereby reply to Defendants' Response to Plaintiffs' Motion for Protective Order (hereinafter "Defendants' Response").

### I.    REQUESTS SEEKING DOCUMENTS RELATING TO THE STATE OF FLORIDA INVESTIGATION

      Even though the State of Florida investigation of Terminix was concluded more than a year and a half before the San Pedro case was settled, Defendants contend that documents relating to that investigation are relevant herein because "information that had or might have been disclosed about Terminix as a result of that investigation . . . may have affected Terminix's decision to settle the San Pedro case." (Defendants' Response, p. 3.) Defendants posit three arguments to support this conclusion: (1) the

SEP - 1 2000

Rec'd in MIA Dkt

San Pedros had explicitly injected the state investigation as a factor in settlement negotiations; (2) Terminix was represented by Robert C. Josefsberg in both the San Pedro case and the state investigatory proceedings; and (3) the Florida investigation and settlement were ongoing at the same time as the San Pedro litigation was pending. (Defendants' Response, p. 3.)   These arguments do not support the conclusion Defendants argue.

### A.   Interjection of the State Investigation by the San Pedros

Defendants contend that because the San Pedros explicitly raised the Florida investigation as a factor in a settlement proposal in December 1995, this Court should conclude that such investigation affected Terminix's decision to settle the San Pedro case three years later in November 1998.  To support this argument, Defendants attach as Exhibit C to their response a December 22, 1995 letter from Defendant Michael Bennett to Terminix's general counsel, Bart Mallory.  That letter, which reports on a mediation which took place on December 15, 1995 when Defendant Bennett was representing Terminix, states that the plaintiffs' attorney has threatened to join forces with other attorneys who want to form a nationwide class action against Terminix; that he is aware of the Florida investigation; and that he "is providing" the Florida Attorney General with information.  Bennett further reports that the plaintiffs' attorney "has placed a deadline for settlement of January 1, 1996 or else he will cooperate with the other attorneys and provide information he has uncovered."

In addition to asking the Court to make the untenable leap of logic that a 1995 letter affected a settlement three years later, Defendants have failed to disclose to the Court Terminix's response to Bennett which reveals that Terminix's handling of the San Pedro case was in no way affected by the San Pedros' counsel's threats or the Florida investigation.  Immediately upon receipt of Bennett's letter, Mallory responded with a terse and direct memo dated December 28, 1995, bearing the heading "re: San Pedro v. Terminix and Florida Attorney General Investigation."   In this regard, Mr. Mallory

2

stated: "Thank you for your letter of December 22, 1995. We are not interested in making any changes in the defense of the San Pedro matter." (The December 28, 1995 memo is attached hereto as Exhibit 1.) Thus, Defendants have proffered no basis for arguing that the threat by counsel for the San Pedros in December of 1995 had any effect on the settlement of the San Pedro case three years later in November of 1998; indeed, the direct evidence is to the contrary.

### B.   Representation of Terminix by Robert C. Josefsberg

Defendants next contend that because Terminix was represented by Mr. Josefsberg in both the San Pedro case and in the Florida investigation, that the state's investigation affected Terminix's decision to settle the San Pedro case. Certainly logic would not lead one to conclude that because a client hires the same attorney to represent it in several matters that those matters must be related, and Defendants offer no basis to support this argument. Moreover, Defendants again fail to disclose to the Court pertinent facts.

When Terminix discharged Defendants, they hired James M. Nicholas to represent them in the San Pedro case. (See Nicholas Notice of Appearance attached hereto as Exhibit 2.) At the time Mr. Nicholas assumed the representation of Terminix, as a result of Defendants' conduct Terminix faced a court order requiring them to immediately produce all of the documents sought by the San Pedros' First and Second Requests for Production or face default. Although Mr. Nicholas pursued every avenue to attempt to reverse the damage done by Defendants, the Court nonetheless entered a default judgment against Terminix in February of 1997. As set forth in Terminix's Complaint, faced with a default judgment on liability, and given the amount of work required to attempt to undo the damage caused by Defendants' conduct, Terminix hired Mr. Josefsberg to assist Mr. Nicholas in the defense of the San Pedros suit. (See Complaint, ¶ 74.) Mr. Josefsberg filed a Notice of Appearance in the San Pedros case on March 4, 1997. (See Josefsberg Notice of Appearance attached hereto as Exhibit

3

3.) Thus, the entry of Mr. Josefsberg into the San Pedro case had nothing to do with the State of Florida investigation, and everything to do with the damage sustained by Terminix as a result of Defendants' conduct.[1]

### C.    The Overlap of the Florida Investigation and the San Pedro Litigation

Conceding that the Florida investigation was resolved by May 1, 1997, over a year and a half before the San Pedro litigation was settled, Defendants nevertheless contend that because the investigation was ongoing for part of the same time as the San Pedro litigation it affected Terminix's decision to settle the San Pedro case. Defendants further argue that Terminix's settlement with the state also affected the San Pedro settlement since the state was continuing to monitor "Terminix's performance of re-treatments mandated by the settlement." (Defendants' Response, pp. 3-4.) However, a simple review of the information provided by Defendants in Exhibit A to their Response reflects that neither the Florida investigation nor the settlement had anything to do with the San Pedro case, and that Defendants' description of Terminix's settlement with the State is not accurate.

The San Pedros alleged that between February of 1984 and February of 1992 Terminix provided annual termite inspections of their home located in Palm Beach County, Florida; that such inspections were not done properly and competently; that their residence became infested with termites during this period; and that Terminix failed to inform the San Pedros of such infestation.  (*See* San Pedro Complaint attached hereto as Exhibit 4.)  The San Pedros' residence was located in the area serviced by Terminix's Boynton Beach branch office.

---

[1]  If the hiring of Mr. Josefsberg reflected Terminix's concern about the impact of the San Pedro case on the Florida investigation as Defendants suggest, then certainly Terminix would have hired Mr. Josefsberg in December 1995 when the San Pedros' threats were made, or at least in August 1996 when Defendants were fired; it certainly would not have waited until the month before the Florida investigation was concluded.

4

As set forth in the news articles attached as Exhibit A to Defendant's Response, the Florida investigation was limited to the Terminix branch offices in Miami, Plantation, Port St. Lucie, Deland, Orlando, Longwood and Jacksonville; only dealt with termite protection purchased between April 1993 and April 1997; and related to whether chemicals were applied in holes drilled for chemical injection in the treatment of homes. (*See Sun-Sentinel* Ft. Lauderdale, May 1, 1997, at D1; *News Journal* Daytona Beach, May 1, 1997, at B6.)  The San Pedros' allegations relate to a Terminix branch office not included in the investigation; pertain to annual inspections, not the application of chemicals; and are based on conduct alleged to have occurred in or before February 1992, a time period predating the period investigated by the state.

Moreover, the settlement between Terminix and the State of Florida did not require the state to "continue to monitor Terminix's performance of re-treatments" and did not impose a fine when a state inspection "indicated improper treatment," contrary to Defendants' contentions. (Defendants' Response, pp. 3-4.)  Indeed, as clearly set forth in the *Sun-Sentinel* article, Terminix agreed to inspect all the homes treated by the named branch offices since 1993, and if Terminix determined a home did not receive adequate service, the customer could choose between a refund or free treatment.  The only monitoring to be done by the state was that "State inspectors will double-check at random 10 percent of the homes Terminix deems properly treated." (*See Sun-Sentinel* at D1.)

Thus, the materials submitted by Defendants demonstrate that the conduct investigated by the Florida Attorney General was unrelated to the allegations in the San Pedro case and that the May 1997 settlement with the state did not impact the settlement of the San Pedro litigation three years later.  However, in an attempt to buttress their argument, Defendants claim that "Terminix concedes that it was in part to avoid the necessity of producing documents concerning Florida's and other governmental investigations that it settled with the San Pedros." (Defendants'

5

Response, p. 4.) No such statement is made by Terminix. To the contrary, Terminix specifically states: "Indeed, one of the reasons Terminix settled the San Pedros Litigation for more than it was worth was to avoid having to produce privileged documents relating to numerous other pieces of litigation, the production of which could have caused serious consequences in those other lawsuits." (Plaintiffs' Memorandum in Support of Motion for Protective Order, p. 9, emphasis supplied.) Thus, this argument by Defendants is also without merit.

Finally, Defendants argue that the state investigation's relationship to the San Pedros settlement is evidenced by Terminix's insertion of a confidentiality clause in the settlement agreement with the San Pedros in order to "effectively silence" the San Pedros and their attorney, and that "Terminix has refused to produce the settlement agreement." (Defendants' Response, p. 3.) This argument is neither logical nor true. Terminix did not insert the confidentiality clause in the settlement agreement; the settlement agreement with the confidentiality clause was drafted by the mediator. Moreover, the confidentiality clause does not prohibit the San Pedros from disclosing any factual information related to their claims, only the terms of the settlement. Finally, as per Terminix's Response to Defendants' First Requests (Exhibit D to Defendants' Response), Terminix stated that the confidentiality provision prohibited it from producing the settlement agreement without the San Pedros' consent. However, Terminix went on to state, "Terminix is currently seeking the San Pedros' consent so that the agreement can be produced." Since that time Terminix has obtained the San Pedros' consent, and a copy of the settlement agreement is attached hereto as Exhibit 5.

## II.    REQUEST SEEKING DOCUMENTS RELATING TO GOVERNMENTAL INVESTIGATIONS OF TERMINIX

In their Request No. 4, Defendants seek all documents relating to any governmental claim or investigation of Terminix for alleged deceptive consumer practices during the past ten years. Even though they seek documents for the almost

two year period after Terminix's settlement of the <u>San Pedro</u> case, and do not relate their request to information either sought or received by the San Pedros, Defendants allege that the documents sought are relevant to Terminix's decision to settle the <u>San Pedro</u> litigation in November of 1998. The only basis proffered by Defendants for their argument is that "the issue of other pending governmental investigations of Terminix that were ongoing or contemplated at that time of the <u>San Pedro</u> case had been injected into that case by the San Pedros," again referring to Defendant Bennett's December 22, 1995 letter. (Defendants' Response, p. 6.) For the reasons set forth above, this argument fails.

Defendants further contend that documents relating to governmental investigations outside of Florida are relevant because "it may well be that one reason Terminix elected to settle rather than try the <u>San Pedro</u> case was its concern that the San Pedros would cooperate with government investigators or with consumer advocates or lawyers who were assisting those investigations in Florida and elsewhere." (Defendants' Response, p. 6.) A simple analysis of this argument reflects why it fails. First, the settlement with the San Pedros did not prevent them from cooperating with government investigators or with consumer advocates. Secondly, "all documents" relating to any governmental investigations outside of Florida would neither prove nor disprove whether Terminix's concern over the San Pedros' cooperating with government investigators impacted in any fashion its decision to settle the <u>San Pedros</u> case. In their First Request for Production of Documents Defendants requested that Terminix produce "All documents relating to Terminix's evaluation or determination of a reasonable settlement amount for the San Pedros' claim." (See Request No. 3, Exhibit D to Defendants' Response.) Terminix has agreed to produce these documents. It is these documents that will reveal Terminix's reasons for settling the <u>San Pedro</u> litigation, not

LAW OFFICES • MALMAN & ASSOCIATES • 12955 BISCAYNE BOULEVARD • SUITE 202 • NORTH MIAMI, FLORIDA 33181 • (305) 891-0066

documents relating to governmental investigations outside the state of Florida.[2]

## III.    REQUEST SEEKING DOCUMENTS PRODUCED OR MADE AVAILABLE IN THE SAN PEDRO CASE

Defendants' arguments regarding this request are inconsistent.   On the one hand, Defendants contend they are not seeking to require Terminix to produce the hundreds of thousands of irrelevant documents which the Court ordered them to produce in the San Pedro case, but are seeking only those documents that Terminix "actually produced or made available for inspection, not everything Terminix was requested or ordered to produce." (Defendants Response, p. 7.)  On the other hand, Defendants argue that regardless of how voluminous the requested documents are, they are discoverable in this case because Defendants are entitled to test Terminix's assertion that one of the reasons it settled the San Pedro case was to avoid the burden and expense of producing voluminous documents pursuant to court orders. (Defendants' Response, p. 8.)

Terminix agrees with Defendants' statement that the number of documents which were in fact produced to counsel for the San Pedros was relatively small.  In fact, the documents actually produced were documents produced by Defendant Bennett, copies of which Defendants already have in their possession.   However, Terminix "made available for inspection" hundreds of thousands of documents.  As a result of the court's orders, Terminix made available for inspection at its headquarters the documents requested by the San Pedros, including "any documents related to lawsuits against the Defendant or related entities which involved allegations of negligence and/or fraud for

---

[2]    Defendants' discussion of their Request No. 4 begins at p. 5 of their Response. However, the first two paragraphs of Defendants' argument is misdirected.  Terminix's arguments regarding the production of privileged documents relating to lawsuits against Terminix and all ServiceMaster companies are clearly directed to Defendants' Request No. 5 and refer to the Requests for Production submitted by the San Pedros in the underlying litigation and the damages incurred by Terminix as a result of Defendants' conduct in connection with those requests for production.

the past ten years up to and including the date of production"; copies of all lawsuits from February of 1984 to February 1992 which included allegations of failure to inspect and all documents produced during discovery in such lawsuits, and similar requests. (*See* Defendants' Response to Plaintiffs' First and Second Requests for Production filed in the San Pedro case, pp. 3-5, a copy of which is attached hereto as Exhibit 6.) Counsel for the San Pedros never took advantage of Terminix's offer and never came to Terminix's headquarters to review these documents, thus they were not "actually produced" to counsel for the San Pedros.

Defendants do not contest Terminix's position that these documents are irrelevant to the underlying San Pedro case. Instead, they argue they are entitled to see these documents in order to test Terminix's assertion that one of the reasons it settled the San Pedro case was to avoid the burden and expense of producing the voluminous documents. This argument is without merit. The information contained in the hundreds of thousands of irrelevant documents would neither prove nor disprove Terminix's contention that the burden and expense of producing those documents was one of the reasons it settled the San Pedro case. Moreover, actual production of the documents now is not necessary to establish that the requests called for the production of voluminous documents.

The lack of substance in Defendants' arguments reveals the underlying reason for their requests – Defendants seek here to take advantage of their own wrongful conduct in their representation of Terminix in the San Pedro case by saddling Terminix with the very burden which caused it damage in the first instance. This Court should not countenance such conduct.

WHEREFORE, Terminix respectfully requests that this Honorable Court grant its Motion for a Protective Order.

DATED:      August 30, 2000
            North Miami, Florida

LAW OFFICES • MALMAN & ASSOCIATES • 12955 BISCAYNE BOULEVARD • SUITE 202 • NORTH MIAMI, FLORIDA 33181 • (305) 891-0066

Respectfully submitted,

MALMAN & ASSOCIATES
Attorneys for Plaintiff
12955 Biscayne Boulevard
Suite 202
North Miami, Florida 33181
Tel. (305) 891-0066
Fax. (305) 891-1015

By: _____
      Jonathan H. Rosenthal
      Florida Bar No. 126764

Of Counsel:

Mary L. Wolff
WOLFF ARDIS, P.C.
6055 Primacy Parkway, Suite 360
Memphis, Tennessee  38119
(901) 763-3336

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was sent via United States mail to Isaac

J. Mitrani, Esquire, Mitrani, Rynor, Adamsky, Macaulay & Zorrilla, P.A., 2200 Suntrust

International Center, One Southeast Third Avenue, Miami, Florida 33131 this 30th day

of August, 2000.

BY: _____
      Jonathan H. Rosenthal

THU DEC 28 12:49    HT&T E-S?LINE  FAX    PAGE 1



W. B. Mallory, III
Vice President and General Counsel
The Terminix International Company L.P.
860 Ridge Lake Boulevard
Memphis, TN 38120
(901) 766-1454
FAX (901) 766-1275

## FACSIMILE TRANSMISSION

**to:**      Michael Bennett
**from:**   Bart Mallory
**re:**      San Pedro v. Terminix and Florida Attorney General Investigation
**date:**    December 28, 1995

Thank you for your letter of December 22, 1995.

We are not interested in making any change in the defense of the San Pedro matter.

CONFIDENTIAL AND PRIVILEGED COMMUNICATION.
IF YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, PLEASE CONTACT THE SENDER IMMEDIATELY   COPYING OR
DISTRIBUTION OF THIS DOCUMENT TO PERSONS OTHER THAN THE NAMED RECIPIENT IS PROHIBITED.

BEN2 WPD

**EXHIBIT**

**1**

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

BENEDICTO SAN PEDRO and
NANCY SAN PEDRO,

     Plaintiffs

vs.

THE TERMINIX INTERNATIONAL
COMPANY, L.P., a limited
partnership and
TERMINIX INTERNATIONAL, a
Delaware Corporation.

     Defendants
_____/

Case No: 95-8204-CIV-GONZALEZ
MAGISTRATE JUDGE SNOW

## NOTICE OF APPEARANCE

    NOTICE IS HEREBY GIVEN that the law firm of JAMES M. NICHOLAS, P.A., hereby

enters this appearance for the Defendants, THE TERMINIX INTERNATIONAL COMPANY,

L.P., and TERMINIX INTERNATIONAL, in the above styled case.

    Copies of all future pleadings and correspondence should be sent to the undersigned

counsel at the address written below.

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished

by U.S. Mail to David J. Feingold, FEINGOLD & KAM, 603 Village Blvd., Suite 302, Republic

Security Building, West Palm Beach, Florida, 33409, this _15th_ day of _August_, 1996.

                    JAMES M. NICHOLAS, P.A.

                    JAMES M. NICHOLAS, ESQUIRE
                    1815 South Patrick Drive
                    Indian Harbour Beach, FL 32937
                    (407) 773-2888
                    Florida Bar No. 297658
                    Attorney for the Defendant,
                    The Terminix International Company,
                    L.P.

EXHIBIT

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-8204-CIV-GONZALEZ
Magistrate Judge Snow

BENEDICTO SAN PEDRO and
NANCY SAN PEDRO,

            Plaintiffs,

vs.                                                **NOTICE OF APPEARANCE**

THE TERMINIX INTERNATIONAL
COMPANY, L.P., a limited
partnership and TERMINIX
INTERNATIONAL, a Delaware
corporation,

            Defendants.

_____/

PLEASE TAKE NOTICE that the undersigned hereby appears as co-counsel of record for the Defendants in the above-entitled cause.

Therefore, all counsel of record are hereby requested from this date forward, to furnish copies of all pleadings in this matter to undersigned counsel, as attorneys for Defendants.

WE HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Appearance has been mailed to DAVID J. FEINGOLD, Feingold & Kam, 603 Village Blvd., Suite 302, Republic Security Building, West Palm Beach, Florida 33409 and to JAMES M. NICHOLAS, 1815 South Patrick Drive, Indian Harbour Beach, Florida 32937 this 4th day of March, 1997.

PODHURST, ORSECK, JOSEFSBERG,
EATON, MEADOW, OLIN & PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida  33130
(305) 358-2800 / Fax (305) 358-2382

By: _____
        ROBERT C. JOSEFSBERG
        Fla. Bar No. 040856

EXHIBIT

3

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

# 95-8204

BENEDICTO SAN PEDRO and
NANCY SAN PEDRO,

       Plaintiffs

Case No.

vs.

THE TERMINIX INTERNATIONAL COMPANY
L.P., a limited partnership and
TERMINIX INTERNATIONAL, a Delaware
Corporation.

MAGISTRATE JUDGE

       Defendants

_____/

## COMPLAINT

1.   Plaintiffs are citizens of the State of Florida and reside in Palm Beach County, Florida.  Defendant, The Terminix International Company L.P., is a limited partnership whose general partner is Defendant, Terminix International, which is a corporation incorporated under the laws of the state of Delaware having its principal place of business in a state other than the state of Florida.

2.   The matter in controversy exceeds, exclusive of interest and costs, the sum of fifty thousand dollars.

3.   From approximately February of 1984 until approximately February of 1992 (the "Time Period of Service"), the Defendants provided annual termite inspections (the "Inspections") to the Plaintiffs' home residence (the "Residence") located in Palm Beach County, Florida.

4.   The Inspections were paid for by the Plaintiffs based on

EXHIBIT

4

representations by the Defendants, its agents, employees and representatives, that the Inspections had been done properly and competently.

5. The Inspections were not done properly and competently in that the Residence became infested with termites during the Time Period of Service and Defendants failed to inform the Plaintiffs of said infestation.

6. Plaintiffs did not discover and were not put on notice of the termite infestation of the Residence until April of 1992 when Plaintiff Nancy San Pedro witnessed the infestation and then had an extermination company that was unrelated to the Defendants inspect and confirm the existence of the infestation.

7. Defendants acted deliberately, intentionally and with malice, or in the alternative, the Defendants actions were undertaken with reckless disregard and thereby the Plaintiffs are entitled to punitive damages. The Defendants acted deliberately, intentionally, maliciously or with reckless disregard in that for approximately 8 years Defendants continuously collected monies from Plaintiffs and represented to Plaintiffs that there was absolutely no termite problem. At the point in time when the Plaintiffs actually discovered a termite problem, the infestation was so excessive that the value of the Plaintiffs' house became worthless.

8. As added evidence of the Defendant's deliberate, intentional, malicious or reckless disregard, the State of Florida (Dept. of HRS) has inspected the Residence and indicated that the Defendants could not have inspected the Residence as the termite infestation

is so extensive that the termites were in existence in the Residence for multiple years while the Defendants allegedly inspected the Residence.

## COUNT I - NEGLIGENCE

9.   Plaintiffs reincorporate paragraphs 1 through 8 as if set forth herein.

10.   The Defendants owed Plaintiffs the following duties:

(a) to inspect the residence for the existence of termites;

(b) to notify the Plaintiffs of the existence of termites;

(c) to maintain the residence against the infestation of termites;

(d) to provide exterminating services to rid the Residence of termites in the event of the existence of termites

11.   The Defendants were negligent in that they breached each of the duties that they owed to Plaintiffs as set forth in paragraph number 10 herein.

12.   As a direct and proximate result of the negligence of Defendants, Plaintiffs have been damaged in that the Plaintiffs' Residence is now worthless, the Plaintiffs have expended monies in an attempt to remedy the infestation, the Plaintiffs have expended monies to replace portions of the Residence and the Plaintiffs have suffered mental and emotional anguish.

WHEREFORE, Plaintiffs demand a trial by jury and judgment for damages against the Defendants that include but are not limited to compensatory and punitive damages and the following:

(a) the loss of value of the Residence;

(b) the expenditures made to attempt to remedy the

infestation;

(c) the expenditures made to replace portions of the Residence; and

(d) compensation for mental and emotional anguish.

### COUNT II - FRAUD

13. Plaintiffs reincorporate paragraphs 1 through 8 as if set forth herein.

14. During the Time Period of Service the Defendants would have a representative (the "Representative") go to the Residence for the Inspection of the Residence.

15. During each Inspection, the Representative was acting as a duly authorized agent, representative and/or employee of the Defendants.

16. After each Inspection the Representative would either verbally or in writing make the representation to the Plaintiffs that the Inspection had been completed and that no termites had been found. Said representation was made as a material inducement to cause the Plaintiffs to pay the Defendants for the Inspection.

17. The above referenced representations made by the Representative were false when they were made in that the Representative failed to make a complete and adequate inspection of the Residence.

18. Defendant knew or should have known of the falsity of the representations because the Representative was to inform the Defendants regarding the Inspection and the Representative was acting on behalf of the Defendants when said representations were

made.

19.  Defendants intended that the representations made regarding the inspection being completed and that there were no termites would induce the Plaintiffs to rely and act on said representations.

20.  Plaintiffs justifiably relied on said representations in that Plaintiffs paid money to Defendants for the Inspections.

21.  Plaintiffs have been damaged in that the Plaintiffs' Residence is now worthless, the Plaintiffs have expended monies in an attempt to remedy the infestation, the Plaintiffs have expended monies to replace portions of the Residence and the Plaintiffs have suffered mental and emotional anguish.

WHEREFORE, Plaintiffs demand a trial by jury and judgment for damages against the Defendants that include but are not limited to compensatory and punitive damages and the following damages:

(a) the loss of value of the Residence;

(b) the expenditures made to attempt to remedy the infestation;

(c) the expenditures made to replace portions of the Residence; and

(d) compensation for mental and emotional anguish.

David J. Feingold
Feingold & Kam
603 Village Blvd.
Suite 302
Republic Security Bldg.
West Palm Beach, Fl 33409
Fla. Bar 0892823
(407) 697-0900

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

BENEDICTO SAN PEDRO and NANCY SAN PEDRO

                  Plaintiffs,

-vs-

THE TERMINIX INTERNATIONAL COMPANY, L.P., a limited partnership and TERMINIX INTERNATIONAL, a Delaware corporation

                  Defendants.

_____/

CASE NO. 95-8204-CIV-GONZALEZ
MAGISTRATE JUDGE SNOW

## SETTLEMENT AGREEMENT

Plaintiffs and Defendants agree to settle the above styled cause on the following terms and conditions:

1.      Defendants shall pay to Plaintiffs SIXTY THOUSAND AND NO/100 DOLLARS ($60,000.00) in full satisfaction and accord of all of Plaintiffs' claims asserted in the above styled cause or otherwise in any way related to the incident contract described in Plaintiffs' complaint. Said sum shall be paid within twenty (20) days from the date of this Settlement Agreement and shall be payable to FEINGOLD & KAM Trust Account.

2.      Contemporaneous with said payment being made:

(a)      Plaintiffs to furnish to Defendants a release of all claims relating to the incident contract described in Plaintiffs' complaint; said release (to be prepared by Defendant's undersigned counsel shall be in favor of the Defendants, all of their officers, agents, employees,

EXHIBIT

_5_

successors, predecessors in business, affiliates, parents, subsidiaries and shall also release SERVICEMASTER CORP. and its subsidiaries. THE ATLANTIC EXTERMINATING COMPANY, and WASTE MANAGEMENT CORPORATION, d/b/a AAA UNITED PEST CONTROL;

       (b)     An order of dismissal to be entered whereby Plaintiffs' pending action and complaint shall be dismissed with prejudice;

       (c)     The parties also agree that any and all prior contracts between them, oral or written, are hereby rescinded in their entirety; and

       (d)     The order of dismissal shall also provide that each party shall bear his own costs and attorney's fees.

       3.     All of the terms and conditions of this Settlement are totally confidential and neither the parties nor their undersigned attorneys shall hereafter disclose any of the terms to anyone nor shall any copy of this Settlement Agreement be filed in the above styled cause except that this Settlement Agreement may be filed with the court in any action or motion to enforce the terms of this Settlement Agreement (including but not limited to any action for a future breach by any of the parties of the covenant of confidentiality).

       (a)     In any action or motion to enforce the terms of this Settlement Agreement (including but not limited to any action for a future breach by any of the parties of the covenant of confidentiality), the prevailing party shall be entitled to an award of reasonable attorney's fees, its costs and any damages.

       4.     Provisions Regarding Mediation:

       (a)     Each of the individuals signing this Agreement (regardless of whether

-2-

it is signed by an individual in his own individual capacity or as the representative of a corporation or other entity signing this Agreement) acknowledges and represents to the other parties and to the Mediator that each such individual has read this Agreement which is voluntarily entered into and which is intended by each party to be binding and enforceable under Florida law and subject to the provisions of Chapter 44, Florida Statutes and the Florida Rules of Civil Procedure dealing with mediations. Each person executing this Agreement in a representative capacity, i.e., for and on behalf of a corporation, a partnership, or any other entity, further represents to each of the other parties and to the Mediator that said individual is duly authorized to execute this Agreement on behalf of said corporation, partnership or other entity.

(b)    The parties acknowledge that although Mediator Samuel L. Heller may have prepared the draft of this Settlement Agreement, the Mediator performed these services in his capacity as scrivener for the parties inasmuch as all of the substantive provisions of this Settlement Agreement were provided and dictated to the Mediator by counsel (or insurance representative) for the parties and by the parties. Each of the parties and their counsel also acknowledges that said Mediator has not offered or furnished legal advice to any of the parties or to their counsel and has acted solely in his capacity as Mediator herein.

(c)    The cost of the mediation conference (including, where applicable, Mediator's services following the mediation conference, e.g., phone discussions with counsel for the parties regarding completion of the mediation agreement, securing its execution by all of the parties, etc.) is to be paid as follows: one-half to be paid by Plaintiffs and the remaining one-half to be paid by Defendants.

DATED this ___*17th*___ day of November, 1998.

FEINGOLD & KAM
Attorneys for Plaintiff
Gardens Plaza Office Tower
330 P.G.A. Blvd. - Suite 410
Palm Beach Gardens, FL 33410

By: _____
       David J. Feingold, Esq.
       Fla. Bar No. 0892823

_____
JAMES M. NICHOLAS, ESQUIRE
Attorneys for Defendant
Fla. Bar No. 297658
1815 South Patrick Drive
Indian Harbour Beach, FL 32937

BENEDICTO SAN PEDRO
_____
NANCY SAN PEDRO

THE TERMINIX INTERNATIONAL
COMPANY, L.P.

By _____

TERMINIX INTERNATIONAL

By: _____

Nov'98\SanPedro-TerminixAgt(11-17-98).wpd

-4-

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
299 E. Broward Blvd.
Fort Lauderdale, Florida  33301

BENEDICTO SAN PEDRO and
NANCY SAN PEDRO,                                  Case No:        95-8204-CIV-GONZALEZ
                                                                 MAGISTRATE JUDGE SNOW
        Plaintiffs

- vs.

THE TERMINIX INTERNATIONAL
COMPANY, L.P., a limited
partnership and
TERMINIX INTERNATIONAL, a
Delaware Corporation.

        Defendants
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFFS'
## FIRST AND SECOND REQUEST FOR PRODUCTION

DEFENDANTS hereby respond to Plaintiffs' First Request for Production, titled "Requested Documents,"
and to Plaintiffs' Second Request for Production, titled "Requests," as follows:

Preliminarily, in accordance with Federal Rule of Civil Procedure 34(b), the Defendant will produce for
inspection each item or category of items that the Plaintiffs have requested.  The Defendants will produce such items
"as they are kept in the usual course of business or will organize and label them to correspond with the categories
in the request."  As the Plaintiffs have not specified in their production requests "a reasonable time, place, and
manner of making the inspection and performing the related acts," contrary to Rule 34(b), the Plaintiffs may
schedule such activities by notifying counsel for Terminix, James M. Nicholas.  Counsel for Terminix will
coordinate the reasonable times, places, and manners of making the inspection and performing the related acts.  The
documents requested will be available at the following locations:

TERMINIX INTERNATIONAL CO., LP
HEADQUARTERS
860 Ridge Lake Blvd.
Memphis, TN  38120
and
1575 Two Place
Memphis, TN 38116

EXHIBIT

6

**TERMINIX Branch 2439**
1304 N. Federal Highway
Boyton Beach, FL  33435

**JAMES M. NICHOLAS, P.C.**
1815 South Patrick Drive
Indian Harbour Beach, FL 32937
PHN: (407) 773-2888
FAX: (407) 773-0444

Such locations will be hereinafter referred to as Terminix Headquarters, Branch 2439, and counsel's office,

respectively.

## REQUESTED DOCUMENTS

1.    Any training manuals, brochures, videotapes, movies and film strips used by the Defendant during the last ten years to educate or train service technicians.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

2.    Any documents which state the standards which the Defendant follows regarding its termite control service including, but not limited to, Internal publications and advertisements.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

3.    Any documentation which describes the various services and plans offered by the Defendant and its predecessor entities for the past ten years up, to and including, the date of this production request.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

4.    Any documents, memoranda, correspondence, or policy manuals which reflect, refer to or discuss Defendant's employment agreement with the Plaintiffs.

RESPONSE: To the extent that such documents exist and are not subject to privilege, labeled copies are enclosed.

5.    Any notes, sketches, reports, inspection results or other material prepared by any service technician and/or inspector relating to the Plaintiff's property.

RESPONSE: To the extent that such documents exist and are not subject to privilege, labeled copies are enclosed.

6.    Any invoices and financial records which relate to the Plaintiff's property.

RESPONSE: To the extent that such documents exist and are not subject to privilege, labeled copies are enclosed.

2

7.      Any correspondence directed to or sent by the Defendant which relates to the Plaintiff's property for the past ten years up, to and including, the date of this production request.

RESPONSE: To the extent that such documents exist and are not subject to privilege, labeled copies are enclosed.

8.      Any contracts, service agreements and guarantees concerning the Plaintiffs in this action.

RESPONSE: To the extent that such documents exist and are not subject to privilege, labeled copies are enclosed.

9.      Any documentation relating to pest-control services performed by the Defendant at property located within ten miles of the home of the Plaintiffs.

RESPONSE:      To the extent that such documents exist and are not privileged, such documents are available for inspection at Branch 2439.

10.     Any customer complaint files created with in the last ten years.

RESPONSE:      To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

.11.    Any documents identifying the nature of the Defendants operations, the physical locations, and the corporate organizational structure of the Defendant, including the owners, shareholders, directors, and all other individuals or entities who have any responsibility for the development of corporate policy.

RESPONSE:      To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

12.     Any documents which Defendant intends to introduce into evidence at the trial of this case or may be used to refresh the recollections of witnesses at depositions or trial.

RESPONSE:      To the extent that such documents exist and are not privileged, such documents are available for inspection at counsel's office.

13.     Any statements and memoranda relating to the witnesses or potential witnesses or persons contacted in connection with this case.

RESPONSE:      To the extent that such documents exist and are not privileged, such documents are available for inspection at counsel's office.

14.     Any documents related to lawsuits against the Defendant or related entities which involved allegations of negligence and/or fraud for the past ten years up, to and including the date of production.

RESPONSE:      To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

15.     Any documents related to government investigations of the Defendant or related entities for the past ten years up, to and including the date of production.

RESPONSE:      To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

16.    Copies of any licenses held by the Defendant or related entities for the past ten years up, to and including the date of production.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

17.    A list of the names, last known addresses and phone numbers of past employees of the Defendant for the past ten years up, to and including the date of production.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

18.    A list of the names, last known addresses and phone numbers of present employees of the Defendant.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

19.    A list of the names, last known addresses and phone numbers of any service technicians employed by the Defendant and related entities who worked on the Plaintiff's property for the past ten years up, to and including the date of production.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Branch 2439.

20.    A list of the names, last known addresses and phone numbers of any consulting firm retained by the Defendant and related entities regarding the operation of the Defendant's business during the past ten years up, to and including the date of production.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

21.    Documents relating to the finances of the Defendant and related entities, including, but not limited to annual reports, income statements, profit and loss statements and balance sheets for the past ten years up, to and including the date of production.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

22.    Copies of any statements, reports and memoranda filed by employees of the Defendant and related entities regarding this case, including, but not limited to, reports prepared by service technicians and inspectors following each visit to the Plaintiff's residence for the past ten years up, to and including the date of production.

RESPONSE: To the extent that such documents exist and are not subject to privilege, labeled copies are enclosed.

23.    An account summary of the Defendant's services to the Plaintiffs for the past ten years up, to and including the date of production.

RESPONSE: To the extent that such documents exist and are not subject to privilege, labeled copies are enclosed.

4

## REQUESTS

1.    Copies of all lawsuits filed against Defendants between the period of February of 1984 to February of 1992 in each state in which Defendants conduct business where said lawsuit contains allegations that Defendants acted negligently in failing to inspect residences of customers of Defendants for the existence of termites and/or failing to notify customers of Defendants of the existence of termites and/or failing to maintain the residences of customers of Defendants against the infestation of termites and/or failing to provide exterminating services to rid the residences of customers of Defendants in the event of the existence of termites.

**RESPONSE:**    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

2.    Copies of all documents produced by Defendants during discovery in the lawsuits referred to in paragraph 1 above.

**RESPONSE:**    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

3.    Copies of all lawsuits filed against Defendants between the period of February of 1984 to February of 1992 in each state in which Defendants conduct business where said lawsuits contain allegations that Defendants acted fraudulently in providing services to customers.

**RESPONSE:**    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

4.    Copies of all documents produced by Defendants during discovery in the lawsuits referred to in paragraph 3 above.

**RESPONSE:**    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

5.    Copies of all lawsuits filed against Defendants between the period of February of 1984 to February of 1992 in each state in which Defendants conduct business where said lawsuits contain allegations that Defendants breached the terms of their contract for servicing the residences of Defendants' customer(s) because Defendants failed to inspect the residences for the existence of termites and/or Defendants failed to notify their customer(s) of the existence of termites and/or Defendants failed to maintain the residence of their customer(s) against the infestation of termites and/or the Defendants failed to provide exterminating services to rid the residences of their customer(s) of termites in the event of the existence of termites.

**RESPONSE:**    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

6.    Copies of all documents produced by Defendants during discovery in the lawsuits referred to in paragraph 5 above.

**RESPONSE:**    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

5

7.   Copies of all consumer complaints, consumer advocacy group complaints and/or complaints issued by the attorney general of any state filed against Defendants between the period of February of 1984 to February 1992 in each state in which the Defendants conduct business where said complaints maintain that Defendants acted fraudulently or negligently.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

8.   Copies of all consumer complaints, consumer advocacy group complaints and/or complaints issued by the attorney general of any state filed against Defendants between the period of February 1984 to February of 1992 in each state in which Defendants conduct business where said complaints maintain that Defendants breached the terms of the their contracts for servicing the residences of Defendants' customer(s).

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

9.   Copies of any lawsuits or administrative complaints filed against the Defendants from February of 1984 to present which allege that either Defendants were negligent in the provision of services to customers of defrauded customers.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

10.   Copies of all documents produced by Defendants during discovery for the actions referenced in paragraph 9.

RESPONSE:    To the extent that such documents exist and are not privileged, such documents are available for inspection at Terminix Headquarters.

6

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to

David J. Feingold, FEINGOLD & KAM, 603 Village Blvd., Suite 302, Republic Security Building, West Palm

Beach, Florida, 33409, this ___5th___ day of _September_, 1996.

JAMES M. NICHOLAS, P.A.

JAMES M. NICHOLAS, ESQUIRE
1815 South Patrick Drive
Indian Harbour Beach, FL 32937
(407) 773-2888
Florida Bar No. 297658
Attorney for the Defendant,
The Terminix International Company,
L.P.

7